UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARDELYX, INC., et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>XAVIER BECERRA,<br>Secretary of Health and Human Services, et al.,<br><br>      Defendant. | Civil Action No. 24-2095 (BAH) |

**MEMORANDUM IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    I.    The Medicare Program and Coverage for End-Stage Renal Disease. ...............................2

    II.    Implementation of The Medicare Improvement Act. ..........................................................5

    III.   Transitional Drug Ad on Payment Adjustments. ..............................................................7

    IV.   Factual Background. ........................................................................................................9

    V.    This Lawsuit. ..................................................................................................................10

LEGAL STANDARD ..........................................................................................................11

ARGUMENT…………………………………………………………………………………….11

CONCLUSION ……………………………………………………………………………..16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ............................................................................................... 11

*Ascension Borgess Hosp. v. Becerra*,
  61 F.4th 999 (D.C. Cir. 2023) ............................................................................................ 11, 12

*Ascension Borgess Hosp. v. Becerra*,
  557 F. Supp. 3d 122 (D.D.C. 2021) .................................................................................. 12, 14

*Becerra v. Empire Health Found.*,
  597 U.S. 424 (2022) .................................................................................................................. 3

*Carik v. U.S. Dep't of Health & Human Servs.*,
  4 F. Supp. 3d 41 (D.D.C. 2013) ................................................................................................ 9

*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) ................................................................................................ 11

*Knapp Med. Ctr. v. Burwell*,
  192 F. Supp. 3d 129 (D.D.C. 2016) ........................................................................................ 12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................................ 11

*Ramirez v. Medtronic*,
  961 F. Supp. 2d 977 (D. Ariz. 2013) ........................................................................................ 9

*SEC v. RPM Int'l*,
  282 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................................ 10

*Thomas v. Principi*,
  394 F.3d 970 (D.C. Cir. 2005) ................................................................................................ 11

*Yee v. Jewell*,
  228 F. Supp. 3d 48 (D.D.C. 2017) .................................................................................... 14, 15

**Statutes**

5 U.S.C. §§ 701-06 ........................................................................................................................ 13, 14
28 U.S.C. § 1331 ................................................................................................................................. 13
28 U.S.C. § 1361 ................................................................................................................................. 14
28 U.S.C. §§ 2201 & 2202 .................................................................................................................. 14
42 U.S.C. § 426-1 .................................................................................................................................. 3
42 U.S.C. § 1395 .................................................................................................................................... 2
42 U.S.C. § 1395rr(b) .......................................................................................................................... 15
42 U.S.C. § 1395rr(b)(7) ....................................................................................................................... 4
42 U.S.C. § 1395rr(b)(12) ..................................................................................................................... 4
42 U.S.C. § 1395rr(b)(14) .................................................................................................................. 4, 5
42 U.S.C. § 1395ww(r)(3) ............................................................................................................. 12, 14
42 U.S.C. §§ 1395d(a) ........................................................................................................................... 3
42 U.S.C. §§ 1395ff ............................................................................................................................ 14
Pub. L. 108-173 ..................................................................................................................................... 4

Pub. L. 110-275 ................................................................................................................4
Pub. L. 112-240 ................................................................................................................7
Pub. L. 113—93 ................................................................................................................7
Pub. L. 113-295 ................................................................................................................7
Pub L. 97-35 § 2145(a)(7) ................................................................................................4

**Regulations**

42 C.F.R. § 413.171 ............................................................................................... 9, 10, 14
42 C.F.R. § 413.232 ..........................................................................................................8
42 C.F.R. § 413.234 ......................................................................................................6, 8
42 C.F.R. § 413.237 ..........................................................................................................8
42 CFR 413.171(3) .........................................................................................................13
89 Fed. Reg. 55760 ........................................................................................................13

**Other Authorities**

75 Fed. Reg. ..............................................................................................................4, 5, 7
84 Fed. Reg. .....................................................................................................................8
89 Fed. Reg. .....................................................................................................................7

**INTRODUCTION**

The Medicare program provides health-insurance coverage to individuals who are at least 65 years old and are entitled to Social Security benefits, to disabled individuals who meet certain requirements, and to qualified individuals who suffer from End-Stage Renal Disease ("ESRD") requiring dialysis or a kidney transplant. The Centers for Medicare & Medicaid Services ("CMS" or "the Agency"), an agency within the Department of Health and Human Services, administers the Medicare program on behalf of the Secretary of Health and Human Services.

Congress instructed the Secretary to establish "a payment system under which a single payment is made under this subchapter to a provider of services or a renal dialysis facility for renal dialysis services . . . in lieu of any other payment." *Id.* § 1395rr(b)(14)(A)(i). This single payment under the ESRD Prospective Payment System is known as the "bundled payment." *Id.* at §§ 1395rr(b)(14)(F)(i)(I) & 1395rr(b)(14)(G). Congress established a list of things that "the term 'renal dialysis services' includes," 42 U.S.C. § 1395rr(b)(14)(B), and specifically stated that the term "does not include vaccines," *id.*, but it has largely left to the agency the task of determining on a granular level which items and services are included in the bundle and covered by the ESRD Prospective Payment System bundled payment.

Beneficiaries, providers, and others have well-established avenues to obtain administrative and, ultimately, judicial review of many types of claims arising under the Medicare statute. Congress, however, singled out certain agency actions as precluded from review: the Medicare statute provides that "there shall be no administrative or judicial review" of specified decisions, including the "identification of renal dialysis services included in the bundled payment" under Medicare's ESRD Prospective Payment System. *Id.* § 1395rr(b)(14)(G).

CMS recently identified the drug XPHOZAH as a "renal dialysis service" that would be "included in the ESRD [Prospective Payment System] bundled payment" effective January 1, 2025 and so notified XPHOZAH's manufacturer. *See* Pls. Exh. 1. CMS's decision that XPHOZAH is a renal dialysis service was hardly surprising: the Food and Drug Administration ("FDA") approved XPHOZAH only for adults with chronic kidney disease on dialysis, and the drug treats hyperphosphatemia, a common comorbidity of chronic kidney disease that can cause, among other things, loss of bone density.

Undeterred by the clear statutory language precluding judicial review of their claim, Plaintiffs (the manufacturer of XPHOZAH and two nonprofit organizations) bring this suit to challenge, in their words, "CMS's recent determination that XPHOZAH is a renal dialysis service, to be included in the ESRD [Prospective Payment System] bundled payment as of January 1, 2025." Compl. ¶ 33 (ECF No. 1). Plaintiffs attempt to bring this challenge because they would prefer to have XPHOZAH remain eligible for payment under Medicare Part D rather than be part of the bundled payment to dialysis facilities. They seek to challenge precisely the type of action that Congress explicitly precluded from administrative or judicial review. Because statutory preclusion of judicial review over Plaintiffs' claims strips this Court of jurisdiction, Defendants' Motion to Dismiss should be granted.

## BACKGROUND

### I. The Medicare Program and Coverage for End-Stage Renal Disease.

Medicare is a federal health insurance program for the elderly and disabled, *see* 42 U.S.C. § 1395, *et seq.*, and the Secretary administers the Medicare through CMS. Medicare generally provides benefits via four parts: Part A, hospital insurance; Part B, medical insurance covering physician and other outpatient health care services, including renal dialysis performed outside of a hospital; Part C, privately administered Medicare managed care plans; and Part D, which

2

provides subsidized outpatient prescription drug coverage for enrollees.  *See* 42 U.S.C. §§ 1395d(a); 1395o; 1395w-21; 1395w-101.  Since 1973, Medicare has provided health insurance coverage for people suffering from End-Stage Renal Disease ("ESRD") who need either dialysis or kidney transplantation to maintain life.  Pub. L. 92-603, § 299I, 86 Stat. 1463-64; *see also* 42 U.S.C. § 426-1; *see generally* Medicare.gov, End-Stage Renal Disease (ESRD), *available at* https://www.medicare.gov/basics/end-stage-renal-disease.  Under the original law, Medicare paid for dialysis services on a cost basis with an upper limit per treatment, meaning that Medicare paid the reasonable costs incurred by a provider up to the statutory limit.

During the 1980s, in part to control costs, Congress began moving away from reasonable cost reimbursement towards prospective payment systems for many aspects of the Medicare program.  Under a prospective payment system, payment is determined in advance based on a formula that can include a patient's diagnosis, geographic wage factors, and other considerations.  For example, under the inpatient prospective payment system, a hospital is paid "a fixed rate for treating each Medicare patient, based on the patient's diagnosis and regardless of the hospital's actual costs."  *Becerra v. Empire Health Found.*, 597 U.S. 424, 429 (2022) (citing 42 U.S.C. § 1395ww(d)(1)-(4)).  Prospective payment is designed to reflect what efficiently run providers or suppliers would expend to treat a patient with a certain diagnosis; it provides an incentive to provide efficient medical service.  Most prospective payment systems include adjustments incorporating various factors that might make a patient's treatment more expensive than the formula predicts.

As part of the Omnibus Budget Reconciliation Act of 1981, Congress instructed the Secretary to "provide by regulation for a method (or methods) for determining prospectively the amounts of payments to be made for dialysis services furnished by providers of services and renal

dialysis facilities to individuals in a facility and to such individuals at home." Pub L. 97-35 § 2145(a)(7), 95 Stat. 800; *see* 42 U.S.C. § 1395rr(b)(7). This system, despite determining amounts prospectively, did not establish a bundled rate for renal dialysis services. In the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Congress mandated a bundled rate for certain renal dialysis service: "beginning with services furnished on January 1, 2005, the Secretary shall establish a basic case-mix adjusted prospective payment system for dialysis services furnished by providers of services and renal dialysis facilities . . .". Pub. L. 108-173, 117 Stat. 2313; *see* 42 U.S.C. § 1395rr(b)(12). The bundled payment established in 2003 did not include, among other things, certain drugs commonly used to treat anemia and vitamin D deficiency, which Medicare paid for separately on a fee-for-service or reasonable cost basis. *See* 75 Fed. Reg. 49,030, 49,032 (Aug. 12, 2010). Congress later expanded what Medicare covers under the ESRD bundle in the Medicare Improvements for Patients and Providers Act of 2008 ("Medicare Improvement Act"), including specifically instructing that the agency include erythropoiesis stimulating agents (a common treatment for anemia caused by severe kidney disease) and drugs and biological products that treat ESRD: "[F]or services furnished on or after January 1, 2011, the Secretary shall implement a payment system under which a single payment is made under this title to a provider of services or a renal dialysis facility for renal dialysis services." Pub. L. 110-275, 122 Stat. 2553; *see* 42 U.S.C. § 1395rr(b)(14). Congress defined the term "renal dialysis services" to include:

(i) items and services included in the composite rate for renal dialysis services as of December 31, 2010;
(ii) erythropoiesis stimulating agents and any oral form of such agents that are furnished to individuals for the treatment of end stage renal disease;
(iii) other drugs and biologicals that are furnished to individuals for the treatment of end stage renal disease and for which payment was (before the application of this paragraph) made separately under this subchapter, and any oral equivalent form of such drug or biological; and

4

 (iv)  diagnostic laboratory tests and other items and services not described in clause (i) that are furnished to individuals for the treatment of end stage renal disease.

42 U.S.C. § 1395rr(b)(14)(B). Congress specifically stated that the term "renal dialysis services . . . does not include vaccines." *Id*. It expressly excluded certain actions by the agency from "administrative or judicial review," including, as relevant here, "the identification of renal dialysis services included in the bundled payment." 42 U.S.C. § 1395rr(b)(14)(G).

## II. Implementation of The Medicare Improvement Act.

After the Medicare Improvement Act's passage, CMS promulgated through notice-and-comment the first of several final rules implementing Congress's directive to establish a bundled payment system for renal dialysis services. In its first post- Medicare Improvement Act final rule, CMS said that Congress's definition of renal dialysis services "viewed as a whole . . . suggests a comprehensive definition that wraps in all items and services related to outpatient renal dialysis that are furnished to individuals for the treatment of ESRD." 75 Fed. Reg. 49,030, 49,040 (Aug. 12, 2010). As part of its development of the final rule, the Agency "performed an extensive analysis of Medicare payments for Part B drugs and biologicals billed on ESRD claims in 2007, 2008, and 2009 to identify drugs or biologicals that are ESRD-related and therefore met the definition of renal dialysis services" under section 1395rr(b)(14)(B). 75 Fed. Reg. at 49,047. The Agency decided to categorize drugs and biological products "on the basis of drug action . . . to determine which categories (and therefore, drugs and biologicals within the categories) would be ESRD-related." *Id.* As a result of its analysis, the Agency determined that certain functional categories were not ESRD-related (even if they were frequently administered to beneficiaries suffering from chronic kidney disease) and therefore excluded them from the bundled base rate. *Id* at 49,048-49. The Agency also determined that a number of drug categories should be classified as renal dialysis services, including the "[b]one and mineral metabolism" category, which the

5

agency described as "[d]rugs used to prevent/treat bone disease secondary to dialysis." *Id.* at 49,050. "Recogniz[ing] that drugs and biologicals used for ESRD-related conditions may change over time based on many factors including new developments," CMS stated that its categorization "based on mechanism of action" would allow it to "account for other drugs and biologicals that may be used for those actions in the future under the ESRD [Prospective Payment System]." The Agency listed specific drugs in an appendix to the final rule and clarified that "any drug or biological furnished for the purpose . . . of bone and mineral metabolism will be considered renal dialysis services under the ESRD [Prospective Payment System]."

The drug designation process was later codified in regulation at 42 C.F.R. § 413.234. For new products, "[i]f the new renal dialysis drug or biological process is used to treat or manage a condition for which there is an ESRD [Prospective Payment System] functional category, the new renal dialysis drug is considered included" in the bundled payment. *Id.* at § 413.234(b)(1). Under this policy, dialysis facilities would not receive a separate payment for administering an injectable drug; instead, administration of the drug would be covered as part of the single bundled payment for performing dialysis. For oral-only drugs covered under the policy, payment would be unavailable under Medicare Part D, and the ESRD bundled payment to the dialysis facility would cover dispensing of the drug through either an in-house or contracted pharmacy.

CMS decided to delay inclusion of oral drugs with no injectable equivalent in the ESRD bundle until January 1, 2014, three years after the effective date of the rest of the payment bundle. 75 Fed. Reg. at 49,044. The Agency provided several reasons for the delay, including that it "would provide sufficient time for ESRD facilities to establish a pharmacy in accordance with state licensure requirements, or establish arrangements with pharmacies to provide oral-only drugs to their patients," *id.* at 49,043, and "provide additional time to evaluate the need for additional

6

clinical indicators applicable to the monitoring of certain patient conditions associated with oral-only drugs," *id.* at 49,044.  This delay was meant to allow ESRD facilities to prepare for dispensing non-injectable drugs that would be included in their bundled payments.

Since the Agency promulgated its final rule in 2010, Congress has further legislated on the issue of the scope of the ESRD Prospective Payment System bundle and the timing of its implementation.  The American Taxpayer Relief Act of 2012 instructed the Secretary to reduce the ESRD prospective payment amount "to reflect the Secretary's estimate of the change in the utilization of drugs and biologicals described in clauses (ii), (iii), and (iv) of [42 U.S.C. § 1395rr(b)(14)(B)] (other than oral-only ESRD-related drugs, as such term is used in the final rule promulgated by the Secretary in the Federal Register on August 12, 2010 (75 Fed. Reg. 49,030)."  Pub. L. 112-240, 126 Stat. 2354.  An adjacent provision delayed the inclusion of "oral-only ESRD-related drugs in the ESRD prospective payment system" until January 1, 2016.

The 2014 Protecting Access to Medicare Act further delayed inclusion of oral-only ESRD-related drugs in the bundle until January 1, 2024.  Pub. L. 113—93, 128 Stat. 1061.  Later that same year, Congress added another year to the delay.  Pub. L. 113-295, § 204, 128 Stat. 4065.  Oral-only drugs will therefore become part of the ESRD bundled payment effective January 1, 2025.  At that point, separate Medicare payment under the Part D program for outpatient drugs will no longer be available for drugs that are part of the bundle.  In a recent proposed rule, CMS stated: "We anticipate that the incorporation of oral-only drugs into the ESRD [Prospective Payment System] will increase access to those drugs for beneficiaries."  89 Fed. Reg. 55,760, 55,797 (July 5, 2024).

### III.     Transitional Drug Add-On Payment Adjustments.

The ESRD Prospective Payment System statute, 42 U.S.C. § 1395rr(b)(14)(D), and regulations include several provisions providing for adjustments to the base rate (i.e., the

7

prospectively determined rate for performing dialysis) to facilities in designated circumstances. For example, the "Outliers" provisions at 42 C.F.R. § 413.237 are designed to "protect an ESRD facility from significant financial losses due to unusually high costs." CMS.gov, ESRD PPS Outlier Services, *available at* https://www.cms.gov/medicare/payment/prospective-payment-systems/end-stage-renal-disease-esrd/esrd-pps-outlier-services. Adjustments to the base rate are also available for other circumstances, including for low-volume facilities, 42 C.F.R. § 413.232, rural facilities, § 413.233, and patients with "characteristics that result in higher costs for ESRD facilities," § 413.235.

Recognizing the value of supporting "high-value innovation" and giving practitioners "the ability to evaluate the appropriate use of a new product and its effect on patient outcomes," 84 Fed. Reg. 60,648, 60,654 (Nov. 8, 2019), CMS has also established an ESRD Prospective Payment System add-on payment adjustment for certain transitional drugs, meaning that a facility administering a drug covered by the policy can receive extra Medicare funds for using that drug in its treatment of a dialysis patient. *See* 42 C.F.R. § 413.234. As applied to drugs within an existing functional category, this add-on is meant "to help ESRD facilities to incorporate new drug and biological products and make appropriate changes in their businesses to adopt such products; provide additional payment for such associated costs, [and] promote competition among drugs and biological products within the ESRD [Prospective Payment System] functional categories." 84 Fed. Reg. at 60,654. Under this policy, a new renal dialysis drug or biological product as defined at § 413.234(a) that fits within one of the functional categories that the Agency established in implementing the ESRD Prospective Payment System can receive a transitional add-on payment adjustment for two years. § 413.234(c)(1). Thereafter, a further post-transitional drug add-on payment adjustment may be made for a further three years. § 413.234(c)(3). Because the add-on

payment adjustments are based on a drug's average sales price, § 413.234(c), the Agency issued guidance directing manufacturers how and when to provide the required data. *See* Pls. Ex. 2.

## IV. Factual Background.

Plaintiff Ardelyx, Inc. developed the drug XPHOZAH (tenapanor), which according to its FDA label "is indicated to reduce serum phosphorus in adults with chronic kidney disease on dialysis as add-on therapy in patients who have an inadequate response to phosphite binders or who are intolerant of any dose of phosphate binder therapy." Def's Exh. A (XPHOZAH FDA Label).[1] The FDA approved XPHOZAH in October 2023. Compl. ¶ 74. Following its approval and in response to a request from Ardelyx to exclude its drug from the ESRD bundled payment, CMS determined that XPHOZAH, which the FDA approved to treat patients "with chronic kidney disease *on dialysis*," (emphasis added) is a "renal dialysis service" under 42 U.S.C. § 1395rr(b)(14)(B) and 42 C.F.R. § 413.171. As the Agency explained in its letter to the Chief Medical Officer of Ardelyx, XPHOZAH "is used as an add-on therapy in patients with chronic kidney disease who are on dialysis who have an inadequate response to phosphate binders or who are intolerant of any dose of phosphate binder therapy." Pls. Exh. 1. CMS further explained that XPHOZAH meets the "regulatory definition of an oral-only drug at [42 C.F.R.] section 413.234(a)," meaning that it would be included in the ESRD Prospective Payment System bundled payment effective January 1, 2025. *Id.* In the same letter, CMS described to Ardelyx the process to apply to include XPHOZAH in the Transitional Drug Add-on Payment Adjustment and directed the company to agency guidance on the issue. The Agency reiterated its determination that

---

[1] Under Federal Rule of Evidence 201(b)(2), courts may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Under that provision, courts in this Circuit have taken judicial notice of statements on the Food and Drug Administration's website, *see Carik v. U.S. Dep't of Health & Human Servs.*, 4 F. Supp. 3d 41, 48 n.4 (D.D.C. 2013), and district courts in other circuits have taken judicial notice of FDA labels, *see Ramirez v. Medtronic*, 961 F. Supp. 2d 977, 984 (D. Ariz. 2013).

XPHOZAH is a renal dialysis service in the Calendar Year 2025 ESRD Prospective Payment System proposed rule, stating that "CMS has identified XPHOZAH to be a renal dialysis service because it is used to treat or manage a condition associated with ESRD" and that it "meets the current regulatory definition of an oral-only drug as defined at § 413.234(a)." 89 Fed. Reg. at 55,796.

On July 2, 2024, Ardelyx announced that it had decided against submitting an application for XPHOZAH to receive the Transitional Drug Add-on Payment Adjustment. Def's Exh B (Ardelyx Form 8-K Dated July 2, 2024).[2]

## V. This Lawsuit.

Plaintiffs filed their Complaint on July 17, 2024. Compl. Plaintiffs challenge "CMS's recent determination that XPHOZAH is a renal dialysis service, to be included in the ESRD bundled payment as of January 1, 2025." *Id.* ¶ 33. The complaint identifies as the "final agency action" at issue CMS's determination "in a letter decision issued on May 13, 2024 that 'CMS has identified XPHOZAH to be a renal dialysis service under 42 CFR 413.171' and will be included in the ESRD [Prospective Payment System] bundled payment system effective January 1, 2025." *Id.* ¶ 54 (quoting Pls. Exh. 1). Plaintiffs' three claims for relief allege that the "May 13, 2024 determination that XPHOZAH is a 'renal dialysis service' that shall be added to the bundled payment system as of January 1, 2025" violates the Administrative Procedure Act and the Medicare statute, *id.* ¶¶ 202, 211, and challenge "Defendants' determination that any new oral-only drug is a 'renal dialysis service' . . . that shall be added to the bundled payment system as of January 1, 2025." *Id.* ¶ 215. They seek declaratory and injunctive relief stating that XPHOZAH is not a renal dialysis service and is not subject to inclusion in the ESRD Prospective Payment

---

[2] Courts routinely take judicial notice of Securities and Exchange Commission filings under Federal Rule of Evidence 201. *See SEC v. RPM Int'l*, 282 F. Supp. 3d 1, 10 n.4 (D.D.C. 2017).

System bundle, vacating Defendants' determinations to the contrary, and enjoining Defendants from treating XPHOZAH as a renal dialysis service or placing it into the bundled payment system. They also seek an order vacating Defendants' determinations that oral-only drugs are a "renal dialysis service" subject to inclusion in the bundle and enjoining Defendants from so treating oral-only drugs or placing them into the bundled payment system.

## LEGAL STANDARD

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## ARGUMENT

This Court lacks jurisdiction over Plaintiffs' claims because Congress has decreed that "[t]here shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise of . . . the identification of renal dialysis services included in the bundled payment." 42 U.S.C. § 1395rr(b)(14)(G). The general presumption in favor of judicial review "may be overcome by, *inter alia*, specific language that is a reliable indicator of congressional intent to preclude judicial review." *Ascension Borgess Hosp. v. Becerra*, 61 F.4th 999, 1003 (D.C. Cir. 2023) (cleaned up). Plaintiffs challenge "CMS's recent determination that XPHOZAH is a renal dialysis service, to be included in the ESRD [Prospective Payment System]

11

bundled payment as of January 1, 2025." Compl. ¶ 33.  The Agency action that Plaintiffs here seek to challenge is precisely the sort of decision that Congress has insulated from "administrative or judicial review."  42 U.S.C. § 1395rr(b)(14)(G).  Plaintiffs do not even acknowledge this preclusion provision in their Complaint.  "When it comes to judicial review of agency action, [a federal court's subject-matter] jurisdiction may be as wide or as narrow as Congress chooses." *Knapp Med. Ctr. v. Burwell*, 192 F. Supp. 3d 129, 134 (D.D.C. 2016), *aff'd*, 875 F.3d 1125 (D.C. Cir. 2017).  And where Congress has "expressly foreclosed judicial review . . . the Court must dismiss Plaintiffs' challenge to HHS's final decision." *Id.*  "In interpreting a provision precluding judicial review, the court must determine whether the challenged agency action is of the sort shielded from review and may not inquire whether a challenged agency action is arbitrary, capricious, or procedurally defective unless sure of its subject matter jurisdiction." *Ascension Borgess Hosp. v. Becerra*, 557 F. Supp. 3d 122, 129 (D.D.C. 2021), *aff'd*, 61 F.4th 999 (internal quotation marks omitted).

The above cited cases involved the preclusion prevision at 42 U.S.C. § 1395ww(r)(3), which states that "[t]here shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise of the following" and then lists two items.  The operative language (i.e., "[t]here shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise") of the preclusion provision at issue in this case is identical in material respects to the language addressed by this Court and the D.C. Circuit in the *Ascension Borgess* cases, and Plaintiffs seek to challenge exactly the type of action (namely, the "identification" of XPHOZAH as a "renal dialysis service included in the bundled payment," 42 U.S.C. § 1395rr(b)(14)(G)) that Congress precluded from judicial review.  This case accordingly may proceed no further and should be dismissed at the outset.

Plaintiffs' Complaint is clear about the object of their purported challenge: "CMS's recent determination that XPHOZAH is a renal dialysis service, to be included in the ESRD [Prospective Payment System] bundled payment as of January 1, 2025." Compl. ¶ 33; *see also* ¶¶ 44 ("CMS's action placing XPHOZAH into the ESRD [Prospective Payment System] bundle was arbitrary, capricious, contrary to law, and short of statutory right, and therefore must be set aside."); *id.* ¶ 145 ("CMS's inclusion of oral-only drugs, including XPHOZAH, into the bundled payment system is therefore arbitrary, capricious, contrary to law, and in excess of statutory jurisdiction."); *id.* ¶ 168 ("CMS's May 13, 2024 letter nonetheless sweeping XPHOZAH into the ESRD [Prospective Payment System] bundle is therefore arbitrary, capricious, and contrary to law."); *id.* ¶ 202 (claim for relief challenging "[d]efendants' May 13, 2024 determination that XPHOZAH is a 'renal dialysis service' that shall be added to the bundled payment system as of January 1, 2025"); *id.* ¶ 211 (same); *id.* ¶ 215 (claim for relief challenging "[d]efendants' determination that any new oral-only drug is a 'renal dialysis service,' (*see* definition of 'Renal dialysis services' at 42 CFR 413.171(3)), that shall be added to the bundled payment system as of January 1, 2025 (*see* 89 Fed. Reg. 55760, 55795-96)"). Plaintiffs would prefer to have their drug remain eligible for payment under Medicare Part D, rather than having it covered as part of a bundled payment to the facilities that dispense the drug. But the relief they seek faces an insurmountable jurisdictional obstacle established by Congress: "There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise of . . . the identification of renal dialysis services included in the bundled payment." 42 U.S.C. § 1395rr(b)(14)(G).

Plaintiffs base their claim for jurisdiction on the general federal question jurisdiction statute, 28 U.S.C. § 1331, "because this action arises under the APA, 5 U.S.C. §§ 701-06." Compl. ¶ 52. But the APA does not apply "to the extent that . . . statutes preclude judicial review."

13

5 U.S.C. § 701. Plaintiffs therefore lack a cause of action under the APA—and this Court has no jurisdiction—because the Medicare statute explicitly precludes judicial review of their claims. The other statutory provisions (namely, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202, and the Mandamus Act, 28 U.S.C. § 1361) cited in Plaintiffs' Complaint do not confer alternate bases for jurisdiction. "[S]imply put, the Declaratory Judgment Act is not a jurisdiction-conferring statute." *Yee v. Jewell*, 228 F. Supp. 3d 48, 53 (D.D.C. 2017). And Plaintiffs, despite citing the Mandamus Act in the jurisdiction section of their Complaint, do not mention it again and do not attempt to "meet the stringent standard for establishing mandamus jurisdiction." For example, they make no claim that "the defendant owes [them] a clear nondiscretionary duty." *Id.*[3] Whether this Court has subject-matter jurisdiction over this matter therefore depends on whether the Medicare statute precludes judicial review.

This Court has recognized that its role "[i]n interpreting a provision precluding judicial review" is to "determine whether the challenged agency action is of the sort shielded from review." *Ascension Borgess*, 557 F. Supp. 3d at 129. Much like the provision at issue in that case, *see id.* at 125 (quoting 42 U.S.C. § 1395ww(r)(3)), the preclusion statute at issue here bars review under 42 U.S.C. §§ 1395ff and 1395oo "or otherwise" of a list of agency actions, one of which is relevant here: "the identification of renal dialysis services included in the bundled payment." 42 U.S.C. § 1395rr(b)(14)(G). The "challenged agency action" here is precisely CMS's determination "in a letter decision issued on May 13, 2024 that 'CMS has *identified* XPHOZAH to be a *renal dialysis service* under 42 CFR 413.171' and will be *included* in the ESRD [Prospective Payment Service] *bundled payment* system effective January 1, 2025." Compl. ¶ 54 (emphasis added) (quoting Pls.'

---

[3] In any event, this Court has previously concluded that a statute precluding jurisdiction under the Medicare statute "or otherwise" bars Mandamus Act jurisdiction. *See Ascension Borgess*, 557 F. Supp. 3d at 135 n.7.

14

Exh. 1). The textual overlap between what Congress precluded from judicial review and what Plaintiffs seek to challenge here could hardly be more complete. Lest there be any doubt, Plaintiffs' claims for relief target the "determination that XPHOZAH is a 'renal dialysis service' that shall be added to the bundled payment system," *id.* ¶¶ 202 & 211, and the "determination that any new oral-only drug is a 'renal dialysis service' . . . that shall be added to the bundled payment system." *Id.* ¶ 215.

Moreover, Plaintiffs' prayer for relief seeks, *inter alia*, a declaratory judgment that "XPHOZAH is not a 'renal dialysis service" and is "not subject to inclusion in the ESRD [Prospective Payment System] bundle," along with vacatur of "Defendants' determinations that XPHOZAH is a 'renal dialysis service' subject to inclusion in the ESRD [Prospective Payment System] bundle." *Id.* at p. 49. They also seek an order "vacating and setting aside Defendants' determinations . . . that oral-only drugs are a 'renal dialysis service' subject to inclusion in the ESRD [Prospective Payment System] bundle" and an injunction prohibiting Defendants from including oral-only drugs in the bundle in the future. *Id.* at p. 50. Of course, Plaintiffs identify no "oral-only drug" other than XPHOZAH that might be included in the bundle, now or in the future, and Plaintiffs' sole claim for relief that does not mention XPHOZAH nonetheless specifically challenges "the identification of renal dialysis services included in the bundled payment." 42 U.S.C. § 1395rr(b)(14(G). In short, Plaintiffs' claims fall squarely within the plain text of the preclusion statute. Accordingly, Plaintiffs' complaint should be dismissed.

\*   \*   \*

## CONCLUSION

For the above reasons, this Court should dismiss Plaintiffs' Complaint.

Dated: September 17, 2024
       Washington, DC

Respectfully submitted

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:       /s/ *John J. Bardo*
    JOHN J. BARDO D.C. Bar #1655534
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 870-6770

*Attorneys for the United States of America*

OF COUNSEL:

ALEXANDER R. WHITE
Attorney
U.S. Dept. of Health & Human Services
330 Independence Ave., S.W.
Washington, D.C. 20201
(202) 619-0182
alexander.white@hhs.gov

SAMUEL R. BAGENSTOS
General Counsel

JANICE L. HOFFMAN
Associate General Counsel

SUSAN MAXSON LYONS
Deputy Associate General Counsel for Litigation
U.S. Dept. of Health & Human Services

*Attorneys for the United States of America*