# EXHIBIT 3



August 21, 2023

*VIA ELECTRONIC SUBMISSION*

The Honorable Chiquita Brooks-LaSure
Administrator
Centers for Medicare and Medicaid Services
Department of Health and Human Services
Attention: CMS-1782-P, Mail Stop C4-26-05
7500 Security Boulevard
Baltimore, MD 21244-1850

      RE:    Medicare Program; End-Stage Renal Disease Prospective Payment System and Related Provisions Proposed Rule for Calendar Year 2024 [CMS-1782-P]

Dear Administrator Brooks-LaSure:

Ardelyx, Inc. (Ardelyx or "the Company") appreciates the opportunity to submit these comments to the Centers for Medicare and Medicaid Services (CMS or "the Agency") on the "End-Stage Renal Disease [ESRD] Prospective Payment System [PPS], Payment for Renal Dialysis Services Furnished to Individuals with Acute Kidney Injury [AKI], End-Stage Renal Disease Quality Incentive Program [QIP], and End-Stage Renal Disease Treatment Choices [ETC] Model" Proposed Rule for Calendar Year (CY) 2024 ("Proposed Rule").[1] Ardelyx is exceedingly concerned that the Proposed Rule does not appear to account for the operational and treatment challenges and barriers for facilities, providers, and patients posed should oral-only phosphate lowering therapies [PLTs] be included in the ESRD PPS in 2025. Ardelyx strongly urges CMS to expeditiously revise its regulations to continue to exclude oral-only PLTs from the definition of "renal dialysis services" after January 1, 2025 to protect patient access to the full range of oral-only therapies available and needed to effectively treat hyperphosphatemia effectively. Ardelyx also supports the comment letters submitted by Kidney Care Partners (KCP) on broader policy issues included in the Proposed Rule.

**Background on Ardelyx and XPHOZAH**

Ardelyx is a biopharmaceutical company founded in 2007 with a mission to discover, develop, and commercialize innovative first-in-class medicines that meet significant unmet medical needs. Headquartered in Waltham, Massachusetts, Ardelyx is advancing XPHOZAH® (tenapanor), a novel product candidate to control serum phosphorus in adult patients with chronic kidney disease

---

[1] 88 Fed. Reg. 42,430 (June 30, 2023).

(CKD) on dialysis.[2] Ardelyx is also advancing a small molecule potassium secretagogue program, RDX013, for the potential treatment of hyperkalemia, and launched IBSRELA®, the Company's approved treatment for irritable bowel syndrome with constipation (IBS-C) in adults, in April of 2022.

## I. CMS Should Continue to Exclude Oral-only PLTs from the Definition of "Renal Dialysis Services" After January 1, 2025 to Protect Patient Access to These Therapies

Ardelyx urges CMS to continue to exclude oral-only PLTs from the regulatory definition of "renal dialysis services" after January 1, 2025, unless and until an intravenous (IV) or injectable equivalent of a drug is available. We reiterate our view, as in past comments, that the justification for including a drug in the ESRD PPS ("ESRD bundle") when it loses oral-only status does not apply to drugs that cannot and will not be developed into an IV or injectable form. In addition, as we have detailed below, the Agency possesses the authority to provide this extension. Ardelyx is concerned that CMS is not taking steps in this Proposed Rule to exclude oral-only PLTs from the bundle despite extensive advocacy from stakeholders related to the unique operational and treatment challenges that would follow from the inclusion of these drugs.

### A. Inclusion of Oral-only PLTs in the ESRD PPS Will Threaten Patient Access and, Ultimately, Patient Health Outcomes

Ardelyx is exceedingly concerned that patients will experience significant barriers in accessing the most appropriate therapies to manage their elevated serum phosphorus levels (hyperphosphatemia), if oral-only PLTs are transitioned into the ESRD PPS. As CMS is aware, payment bundles provided under prospective payment systems like the ESRD PPS are designed to drive selective use of resources and adoption of lower-cost treatment alternatives during a specific episode of care. Strict financial considerations govern every treatment choice, regardless of what may be the best clinical decision for an individual patient. With the inclusion of oral-only PLTs in the bundle, we fear that decisions on how best to individualize the treatment of hyperphosphatemia would no longer be made by the *primary nephrologist* based on the need of his or her individual patient, but instead restricted by formulary controls established by *dialysis providers*, who will become responsible for funding management of patients' hyperphosphatemia for the first time in 2025.

Today, nearly 80 percent of patients on maintenance dialysis are prescribed a phosphate binder,[3] the only class of therapeutic agents currently approved to treat hyperphosphatemia. We expect that inclusion of these agents in the ESRD bundle will restrict patient access to more novel treatments on the horizon, which may paradoxically further limit a patient's ability to effectively manage their hyperphosphatemia at a time when the opportunity to advance patient care has been made possible

---

[2] On May 17, 2023, Ardelyx announced that the U.S. Food and Drug Administration (FDA) has accepted its resubmission of a New Drug Application (NDA) for XPHOZAH® (tenapanor) for the control of serum phosphate in adult patients with CKD on dialysis who have had an inadequate response or intolerance to a phosphate binder therapy. The FDA has determined that the NDA is a class 2 review, which results in a six-month review period from the date of resubmission. The FDA has set a user fee goal date of October 17, 2023. The company expects XPHOZAH to be commercially available in the fourth quarter of 2023, as soon as possible following an approval from the FDA.
[3] Sawin D, Ma L, Stennett A, Ofsthun N, Himmele R, et al. Phosphates in Medications: Impact on Dialysis Patients. Clin Nephrol. 2020 Apr; 93(4): 163-171.

through innovation. Inclusion of oral-only PLTs in the ESRD bundle will negatively impact critical shared decision-making between physicians and their patients, further eroding the individualized care provided to and required for these patients.

For many dialysis patients who also struggle with other co-morbidities like hypertension, diabetes and heart failure, their physicians must customize treatment, which requires the use of multiple drugs with different mechanisms of action to achieve target treatment goals; for hyperphosphatemia, physicians must also have full access to *all available tools* to manage their patients. For example, when a patient is unable to achieve a target blood pressure level on a certain class of drug, the patient's physician either replaces the current drug or adds a new drug from a different class to the current one. Similarly, when there are additional classes of therapy available to manage hyperphosphatemia, patients should have equal access to those therapies to provide the best opportunity to achieve target treatment goals. Unfortunately, inclusion of these agents in the bundle may create financial pressure to keep a patient on a phosphate-lowering medication that yields suboptimal results for that patient, most likely due to excess calcium, tolerability and burden of treatment as patients are required to take multiple large pills daily with every meal. Furthermore, there have been no agreed upon quality metrics to evaluate the impact that inclusion of oral-only PLTs will have on patients.

### B. Dialysis Facilities are Likely to Face Significant Logistical and Operational Challenges with the Transition of Oral-only PLTs into the ESRD PPS

Ardelyx strongly encourages CMS to continue to exclude oral-only PLTs from the PPS bundle in 2025 and beyond because dialysis facilities—especially rural, small and independent organizations—would face logistical and operational challenges upon including oral-only PLTs in the ESRD PPS that would impose unnecessary costs and undermine patient outcomes. Including drugs that remain oral-only in the ESRD PPS will place additional administrative burdens and financial challenges on dialysis providers who will be responsible for delivering these therapies to patients and managing patients' drug therapy within the bundled payment system. Unlike the burden associated with facilitating the administration of the once-daily calcimimetics, patients prescribed phosphate binders may take as many as three tablets with every meal daily. Further, many patients take multiple types of binders, as approximately 42 percent of patients are unable to achieve target levels in any given month.[4] According to one study, the median overall daily pill burden for dialysis patients prescribed the most commonly used phosphate binder is reported to be upwards of 19 tablets per day with phosphate binders alone representing a median of 9 of those 19 tablets.[5] Most dialysis facilities, which are focused entirely on delivering the complex, time-intensive, and resource-intensive dialysis treatments their patients require, lack the necessary resources to take on the additional administrative tasks associated with managing a high magnitude of pills and their associated complex dosing regimens. This proposed transition will occur at a time when the bundled payment is being stretched to cover a growing set of treatment options.

---

[4] Spherix Global Insights, RealWorld Dynamix: Exploring the Patient Journey (2019).
[5] Chiu Y, Teitelbaum I, Misra M, de Leon EM, Adzize T, and Mehrotra R. Pill Burden, Adherence, Hyperphosphatemia, and Quality of Life In Maintenance Dialysis Patients. Clin J Am Soc Nephrol. 2009; 4:1089-1096.

In contrast, pharmacy benefit plans under Medicare Part D are well-positioned to manage dialysis patients' oral drug therapies, and pharmacies are better positioned to deliver self-administered drugs to patients when they are used outside of the dialysis facility.

Permitting oral-only PLTs to remain in Part D may aid ESRD patients who are often managing multiple chronic conditions, such as diabetes, hypertension and cholesterol. Part D Prescription Drug Plans (PDPs) and Medicare Advantage Prescription Drug Plans (MA-PDs) provide medication therapy management programs, drug utilization review, and geographic access standards and requirements for the numerous other drug therapies a patient with complex conditions may need to administer outside of their dialysis treatment sessions. In addition to these reasons, the change in 2025 to treat oral-only PLTs as bundled, rather than separately paid under Part D, will present unnecessary costs and disruptions for health plans, dialysis facilities and pharmaceutical manufacturers – all of which will have to revisit their contractual relationships and distribution systems.

## II. Oral-only Drugs that Treat Hyperphosphatemia Should not be Defined to be within "Renal Dialysis Services"

Ardelyx believes care delivery for patients with ESRD could be greatly enhanced if the Agency were to adhere closely to the "renal dialysis services" definition, which excludes services "that are not essential for the delivery of maintenance dialysis[,]"[6] and refrain from incorporating oral-only PLTs into the bundle. Inclusion of oral-only PLTs in the bundle would be inconsistent with their mechanism of action and Congress' intended scope of "renal dialysis services" eligible for payment under the ESRD PPS.

### A. The Mechanism of Action of Oral-Only PLTs and Lack of Association with Renal Dialysis Services Provide Rationale to Exclude These Therapies from the ESRD PPS

Ardelyx urges CMS to exclude oral-only PLTs from the definition of "renal dialysis services" because such drugs have mechanisms of action and dosing regimens that *wholly preclude* the development of injectable and/or IV equivalents that would be delivered during dialysis and, thus, are not suited for a bundle designed around the provision of dialysis services. Given their mechanism of action, which requires delivery to the gastrointestinal (GI) tract to prevent absorption of dietary phosphorus into the bloodstream, no injectable or IV forms of PLTs are currently available, and the development of any such forms cannot reasonably be expected in the future.

PLTs are available only in orally administered forms as they do not work—and could never work—in the bloodstream. Instead, these drugs must be taken several times a day with meals and snacks, making a dosing regimen incident to with dialysis sessions impossible, as meals and snacks are generally not allowed during dialysis. In this way, PLTs are unlike any other oral medication that CMS defines within the scope of "renal dialysis services," all of which may be provided during the dialysis session in either oral, injectable, or intravenous form. As such, PLTs are not part of

---

[6] 42 C.F.R. § 413.171.

400 Fifth Avenue, Suite 210 | Waltham, MA 02451 | 617. 675.2739 | ardelyx.com

the dialysis delivery episode, and should not be considered within the definition of "renal dialysis services."

### B. Congress Did Not Intend "Renal Dialysis Services" to Include All Treatments or Care Provided to Patients With ESRD on Dialysis

Ardelyx believes that oral-only PLTs do not fit within the statutory definition of "renal dialysis services" Congress adopted through the Medicare Improvements for Patients and Providers Act (MIPPA) on July 15, 2008. In relevant part, MIPPA directs and authorizes CMS to implement a payment system for "renal dialysis services," under which a single payment is made to dialysis providers for dialysis-related services and items in lieu of any other separate payment. The statute defines "renal dialysis services" as follows:

> (B) For purposes of this paragraph, the term "renal dialysis services" includes—
>
> (i) items and services included in the composite rate for renal dialysis services as of December 31, 2010;
>
> (ii) erythropoiesis stimulating agents and any oral form of such agents that are furnished to individuals for the treatment of end stage renal disease;
>
> (iii) other drugs and biologicals that are furnished to individuals for the treatment of end stage renal disease and for which payment was (before the application of this paragraph) made separately under this title, and any oral equivalent form of such drug or biological; and
>
> (iv) diagnostic laboratory tests and other items and services not described in clause (i) that are furnished to individuals for the treatment of end stage renal disease.[7]

Other than items already included in the composite rate for renal dialysis services in 2010, the various clauses of subsection (B) set forth above specify that any renal dialysis service must be "furnished to individuals *for the treatment of end stage renal disease*."[8] Oral-only PLTs, which are intended for the treatment of hyperphosphatemia, not ESRD, do not qualify under this criterion. Given the mechanism of action of PLTs, their oral-only mode of administration and the inability to administer them during a dialysis session, PLTs should not be considered a "renal dialysis service."

As CMS is aware, many oral medications are commonly prescribed to ESRD patients for other comorbidities but are not considered renal dialysis services. For instance, the prevalence of

---

[7] Social Security Act (SSA) § 1881(b)(14)(B).
[8] *Id.* at § 1881(b)(14)(B)(iv) (emphasis added).

hypertension in ESRD patients on dialysis is about 86 percent;[9] by comparison, hyperphosphatemia occurs in about 80 percent of ESRD patients on dialysis.[10] In spite of the similar correlation between hypertension and ESRD and hyperphosphatemia and ESRD, CMS does not classify hypertension drugs as renal dialysis services. Additionally, medications that treat hyperkalemia, a common occurrence in patients with ESRD, are not classified as renal dialysis services. When implementing MIPPA in its CY 2011 ESRD PPS rulemaking process, CMS indicated that oral-only drugs would qualify as "renal dialysis services," but CMS also stated the following:

> Drugs and biologicals that are generally not ESRD-related (for example drugs and biologicals used to treat diabetes, cardiac conditions and hypertension), would not be renal dialysis services and would be excluded from the ESRD bundled base rate.[11]

While many ESRD patients can benefit from hyperphosphatemia drugs, the same is true of drugs used to treat diabetes and hypertension. We respectfully request that CMS treat oral-only PLTs in a manner similar to other oral-only drugs that are not intended to treat ESRD, but rather address comorbidities common among ESRD patients.

### III. CMS Possesses Discretion to Continue to Exclude Drugs Remaining as Oral-only After 2025 to Ensure Patient Access to Oral-only Therapies

Congress has expressly prohibited CMS from including oral-only drugs in the ESRD bundle prior to January 1, 2025.[12] But Congress did not require CMS to include oral-only drugs after that date. Ardelyx urges CMS to exercise its discretion to continue excluding oral-only drugs after January 1, 2025, or even better, to reconsider its interpretation of "renal dialysis services" as including oral-only therapies.

As CMS is aware, the inclusion of oral-only drugs in the ESRD PPS is the result of its interpretation of "renal dialysis services" at the outset of implementation of the bundle in the ESRD Final Rule for CY 2011.[13] This Final Rule delineates the Agency's interpretation of Sections 1881(b)(14)(B)(iii) and (iv) of the Social Security Act (SSA) pertaining to "renal dialysis services" as *permitting* inclusion of oral-only drugs despite lack of direct language requiring this interpretation. According to the discussion in the administrative record in a 2009 proposed rule, CMS elected to interpret MIPPA to include oral-only drugs within the ESRD PPS bundle not because the statutory language compelled the Agency to do so, but because CMS believed at the time that "the exclusion of oral drugs and biologicals for which there is no injectable (or other non-oral) version does not make sense from a *payment policy perspective*,"[14] reasoning that such a

---

[9] Agarwal R. Hypertension in chronic kidney disease and dialysis: pathophysiology and management. Cardiol Clin. 2005;23(3):237-248. doi:10.1016/j.ccl.2005.03.003; *see also* Malliara M. The management of hypertension in hemodialysis and CAPD patients. Hippokratia. 2007;11(4):171-174.
[10] Sawin D, Ma L, Stennett A, Ofsthun N, Himmele R, et al. Phosphates in Medications: Impact on Dialysis Patients. Clin Nephrol. 2020 Apr; 93(4): 163-171.
[11] 75 Fed. Reg. 49,030, 49,047 (Aug 12, 2010).
[12] *See* 42 U.S.C. § 1395rr note.
[13] 75 Fed. Reg. at 49,037-48.
[14] 74 Fed. Reg. 49,922, 49,928 (Sept. 29, 2009) (emphasis added).

result could "result in the gradual growth of excluded services from the ESRD PPS payment bundle, and the progressive erosion of the payment system."[15] Congress has likewise understood CMS to be implementing a policy decision, not a mandatory statutory directive, by proposing to include oral-only drugs in the ESRD PPS; on three occasions it has enacted legislation preventing CMS from implementing what Congress characterized as CMS' "policy"—not Congress' mandate—of incorporating oral-only drugs into the payment system.[16]

Ardelyx urges CMS to use its discretion to permanently exclude or further extend the exclusion of oral-only drugs from the ESRD bundle unless and until an IV or injectable equivalent of a drug is available.

**Conclusion**

Ardelyx appreciates CMS' consideration of these comments on the CY 2024 ESRD PPS Proposed Rule. The Company looks forward to continuing to engage with CMS on policy proposals to enhance quality of care and treatment choices for patients with ESRD. We urge CMS to take action immediately to extend or make permanent exclusion of phosphate lowering oral-only therapies from the ESRD PPS. We would be pleased to discuss any issues raised in this letter or answer any questions.

Sincerely,

*[signature]*

Michael Raab
President and Chief Executive Officer
Ardelyx, Inc.

---

[15] *Id.*
[16] *See* American Taxpayer Relief Act of 2012 (ATRA) (Pub. L. 112-240) § 632(b), Protecting Access to Medicare Act of 2014 (PAMA) (Pub. L. 113-93) § 217(a) and § 204, The Stephen Beck, Jr., Achieving a Better Life Experience (ABLE) Act of 2014 (Public Law 113-295).