# EXHIBIT 4



September 5, 2023

Abigail Ryan, Ph.D.
Deputy Director of Division of Chronic Care Management
Centers for Medicare & Medicaid Services
U.S. Department of Health and Human Services
7500 Security Boulevard
Baltimore, MD 21244-1850
Abigail.Ryan@cms.hhs.gov

    Re:  Follow-up on June 22 Meeting on Oral-only Phosphate-Lowering Therapies

Dear Dr. Ryan:

On behalf of Ardelyx, Inc., thank you for meeting with us on June 22, 2023 to discuss the continued exclusion of orally administered Phosphate-Lowering Therapies (PLTs) from the End Stage Renal Disease (ESRD) Prospective Payment System (PPS) bundle. As we mentioned during that meeting, we believe that there are strong policy reasons that support the continued exclusion beyond 2024, which will bolster better patient access to the full range of therapies available and needed to treat hyperphosphatemia effectively.

Near the end of that meeting, we understood certain feedback as suggesting that the Centers for Medicare & Medicaid Services (CMS) believes the statutory authority underlying the ESRD PPS to *require* the Agency to include orally administered PLTs with no injectable equivalent ("oral-only" PLTs) in the ESRD PPS bundle as "renal dialysis services." We were surprised to hear this statement, as we believe CMS' prior statements on this issue specifically acknowledged that the relevant Social Security Act provisions allowed for alternative interpretations that would exclude oral-only drugs from the category of "renal dialysis services" subject to the ESRD PPS.

To clarify this issue with CMS, we have enclosed a summary of our understanding of the statutory authority underlying the ESRD PPS as adopted by the Medicare Improvements for Patients and Providers Act (MIPPA) and largely implemented through rulemaking in 2009 and 2010. This summary was developed in coordination with outside legal counsel at Latham & Watkins LLP. As described further below, we believe that the language of the statutory provisions, as well as prior statements from CMS and actions of Congress, strongly support a conclusion that CMS is not required to classify oral-only PLTs as "renal dialysis services" under the ESRD PPS. General principles of statutory construction, we believe, suggest that the interpretation most consistent with the language adopted by Congress through MIPPA would, in fact, exclude oral-only drugs from the ESRD PPS.

We appreciate that, twelve years ago, CMS adopted rules that would include oral-only drugs as renal dialysis services, though they have never been implemented. While there has been little cause for CMS to reconsider its view in the past decade (with the development of an injectable form of the only other category of oral-only drugs), it is particularly warranted now as the most

recent extension will end on December 31, 2024. In addition, Ardelyx's new PLT may soon be available to patients, and once available, will offer the first non-binder approach to phosphate lowering, as Ardelyx's medicine acts by specifically blocking the absorption of phosphate through the paracellular pathway. To ensure that chronic kidney disease (CKD) patients on dialysis can successfully access the most appropriate treatment for their hyperphosphatemia, we urge CMS to reconsider its view that it is *required* by MIPPA to include all oral-only drugs within the bundle, and to instead adapt its regulations to exclude oral-only PLTs from the category of "renal dialysis services."

I. **MIPPA DOES NOT REQUIRE CMS TO INCLUDE ORAL-ONLY PLTS IN THE DEFINITION OF "RENAL DIALYSIS SERVICES"**

As CMS is aware, Congress enacted MIPPA on July 15, 2008. In relevant part, MIPPA directs and authorizes CMS to implement a payment system for "renal dialysis services" under which a single payment is made to dialysis providers in lieu of any other separate payment. The statute defines "renal dialysis services" as follows:

> (B) For purposes of this paragraph, the term "renal dialysis services" includes—
>
> (i) items and services included in the composite rate for renal dialysis services as of December 31, 2010;
>
> (ii) erythropoiesis stimulating agents and any oral form of such agents that are furnished to individuals for the treatment of end stage renal disease;
>
> (iii) other drugs and biologicals that are furnished to individuals for the treatment of end stage renal disease and for which payment was (before the application of this paragraph) made separately under this title, and any oral equivalent form of such drug or biological; and
>
> (iv) diagnostic laboratory tests and other items and services not described in clause (i) that are furnished to individuals for the treatment of end stage renal disease.[1]

When implementing MIPPA in its CY 2011 ESRD PPS rulemaking process, CMS ultimately interpreted "renal dialysis services" to encompass all oral-only drugs that are furnished to individuals for the treatment of ESRD.[2] In so doing, however, CMS recognized that its interpretation was one of multiple permissible interpretations of the statutory authority Congress adopted in MIPPA; the Agency never suggested that MIPPA's provisions required this interpretation with respect to oral-only drugs (including PLTs).[3] In fact, to the contrary, CMS

---

[1] Social Security Act (SSA) § 1881(b)(14)(B).

[2] *See* 42 C.F.R. § 413.171.

[3] *See, e.g.*, 75 Fed. Reg. 49,030, 49,038 (Aug. 12, 2010) ("Several commenters agreed with CMS that clause (iii) of section 1881(b)(14)(B) of the Act *can be interpreted* broadly to encompass all drugs furnished to individuals for the

2

expressly acknowledged that other interpretations of MIPPA were possible, including interpretations that would affirmatively *exclude* oral-only drugs from the ESRD PPS bundle.[4]

According to the discussion in the administrative record, CMS elected to interpret MIPPA to include oral-only drugs within the ESRD PPS bundle not because the statutory language compelled the Agency to do so, but because CMS believed at the time that "the exclusion of oral drugs and biologicals for which there is no injectable (or other non-oral) version does not make sense from a *payment policy perspective*,"[5] reasoning that such a result could "result in the gradual growth of excluded services from the ESRD PPS payment bundle, and the progressive erosion of the payment system."[6]  Congress has likewise understood CMS to be implementing a policy decision to include oral-only drugs in the ESRD PPS, not a mandatory statutory directive; it has on three occasions enacted legislation preventing CMS from implementing what Congress characterized as CMS's "policy" – not Congress's mandate – of incorporating oral-only drugs into the payment system.[7]

In fact, Congress considered and elected *not to adopt* legislation after MIPPA that would have amended Section 1881(b)(14)(B)(iii) of the Social Security Act (SSA) to specifically expand the definition of "renal dialysis services" to include all oral-only drugs, including oral-only PLTs. One year after enactment of MIPPA, the House of Representatives introduced a bill that would have amended clause (iii) to read as follows (**bolded, underlined text** would have been added):

> (iii)  Other drugs and biologicals that are furnished to individuals for the treatment of end stage renal disease and for which payment was (before the application of this paragraph) made separately under this title, and any oral equivalent form of such drug or biological **including oral drugs that are not the oral**

---

treatment of ESRD, including oral drugs.") (emphasis added); 75 Fed. Reg. at 49,039 ("[W]e believe [clause (iv) of section 1881(b)(14)(B)] *can be interpreted* as a residual or catch all category for drugs which do not fall under the scope of those specific renal dialysis services identified in clauses (ii) and (iii).") (emphasis added); *id.* ("We believe that clause (iv) of the definition for renal dialysis services under section 1881(b)(14)(B) of the Act *could include* certain other items and services such as 'oral-only' drugs.") (emphasis added); 74 Fed. Reg.49,922, 49,928  (Sept. 29, 2009) ("[W]e believe the language under clause (iv) addressing 'other items and services not covered in clause (i),' *provides sufficient authority* to include all drugs and biologicals, including oral-only drugs and biologicals, used to treat ESRD in the ESRD PPS payment bundle.") (emphasis added).

[4] *See, e.g.*, 74 Fed. Reg. at 49,928 ("We recognize that an alternative reading of the last part of clause (iii) with respect to the phrase 'and any oral equivalent form of such drug or biological' *could be interpreted to limit the scope of the drugs and biologicals included in the bundle to only oral versions of injectables (or other non-oral routes of administration)*.") (emphasis added).

[5] *Id*. (emphasis added).

[6] *Id*.

[7] *See* American Taxpayer Relief Act of 2012 (ATRA) (Pub. L. 112-240) § 632(b), Protecting Access to Medicare Act of 2014 (PAMA) (Pub. L. 113-93) § 217(a) and § 204, The Stephen Beck, Jr., Achieving a Better Life Experience (ABLE) Act of 2014 (Public Law 113-295).

3

> **equivalent of an intravenous drug (such as oral phosphate binders and calcimimetics).**[8]

Had Congress adopted this measure to expand the definition of renal dialysis services, there would be no dispute that CMS would be required to include oral-only drugs as part of the ESRD PPS bundle. But Congress did not choose to amend Section 1881(b) in this manner. While not dispositive, the fact that Congress considered and rejected a proposal to amend MIPPA to specifically include oral-only PLTs in the bundle reinforces the conclusion that MIPPA's language does not require CMS to include such drugs in the ESRD PPS.

Based on these prior characterizations by CMS and Congress, we believe the administrative record definitively demonstrates that SSA Section 1881(b)(14)(B) does not *require* CMS to include oral-only drugs, especially oral-only PLTs, as "renal dialysis services" under the ESRD PPS.

## II. MIPPA IS BETTER READ TO EXCLUDE ORAL-ONLY DRUGS FROM THE ESRD PPS

In MIPPA, Congress carefully identified the categories of services and items it intended to be encompassed by the term "renal dialysis services."[9] As noted above, Section 1881(b)(14)(B) defines "renal dialysis services" to include four categories of items, identified in clauses (i) through (iv). No one disputes that oral-only drugs, or PLTs in particular, are not encompassed within subsections (i) or (ii) (items included in the prior composite-rate system, or erythropoiesis stimulating agents (ESAs), respectively). In its prior rulemaking, CMS reasoned that oral-only drugs could qualify as "renal dialysis services" under *either* Section 1881(b)(14)(B)(iii) or (iv). We believe that the interpretation most consistent with governing principles of statutory interpretation would conclude that oral-only PLTs should not qualify as "renal dialysis services" under either provision.

### A. Clause (iii) Is Best Interpreted to Exclude Oral-Only Drugs

Section 1881(b)(14)(B)(ii) provides that the definition of renal dialysis services includes ESAs, and any oral form of such agents, that are furnished to individuals for the treatment of end stage renal disease. Section 1881(b)(14)(B)(iii), in turn, provides that renal dialysis services shall also include "other drugs and biologicals that are furnished to individuals for the treatment of end stage renal disease and for which payment was (before the application of this paragraph) made separately under this title, and any oral equivalent form *of such drug or biological*."[10]

By its express language, clause (iii) does not provide for the inclusion of all oral drugs. Rather, clause (iii) speaks to "other drugs and biologicals" furnished for the treatment of ESRD but not included in clause (ii) (*i.e.*, not ESAs) for which payment was made separately under this title, as well as any oral equivalent form *of such drug or biological*. Interpreting this language to

---

[8] H.R.3200 - America's Affordable Health Choices Act of 2009 (emphasis added for the language that this bill would have introduced).

[9] SSA § 1881(b)(14)(B).

[10] SSA § 1881(b)(14)(B)(iii) (emphasis added).

4

encompass all oral drugs, regardless of whether they are the "oral equivalent form" of other ESRD-related drugs or biologicals, would deprive the statutory language of all meaning.[11]

Under CMS's interpretation of clause (iii), it makes no difference whether a treatment for ESRD is administered orally or not, since all drugs and biologicals furnished for the treatment of ESRD would be included. That interpretation is difficult to square with the statutory language, which does not define renal dialysis services to simply include "all drugs and biologicals for the treatment of end stage renal disease," but rather addresses two separate, more specifically defined categories of "other drugs and biologicals … for the treatment of [ESRD]" and, separately, "any oral equivalent for *of such drug or biological.*"

In 2011, CMS suggested that the final language of clause (iii) could be read to apply to all non-ESA, ESRD-related drugs and biologicals. But that interpretation does not give effect to Congress's choice to limit the definition of renal dialysis services to other drugs and biologicals for the treatment of ESRD for which payment was made under this title, and *the oral equivalent form* of such drug or biological. An oral form for which there is no *equivalent* drug or biological for which payment was made under this title ought not qualify under that definition in order to give any meaning to Congress's chosen statutory language.

Other policy-related indicia support interpreting clause (iii) to exclude oral-only drugs. For instance, CMS has acknowledged that "section 1881(b) of the Act addresses payments to dialysis facilities for dialysis services furnished Medicare ESRD beneficiaries."[12] Renal dialysis services naturally encompass services provided by, or in coordination with, a dialysis facility during or in connection with dialysis. The vast majority of treatments provided during or in coordination with dialysis are not provided orally, but are instead injected or infused during dialysis. From a policy perspective, it would be reasonable to treat oral equivalent forms of such infused or injected treatments provided by dialysis facilities during or in coordination of dialysis as "renal dialysis services." By contrast, there is little basis to treat oral medications that have not been traditionally provided by dialysis facilities, nor provided during or in connection with dialysis, within the scope of "renal dialysis services."

Interpreting Section 1881(b)(14)(B)(iii) to exclude oral-only drugs also accords with Congress's choice in subsection (ii) to specifically instruct that ESAs, *and any oral form of such agents*, are encompassed within the definition of renal dialysis services. Had Congress intended for *all* injectable and oral treatments provided to ESRD patients to fall within the scope of "renal dialysis services," there would have been no need to specify that "renal dialysis services" extends to "erythropoiesis stimulating agents and any oral form of *such agents*," a structure that parallels clause (iii), which extends "renal dialysis services" to include other drugs and biologicals (*i.e.*, non-ESA drugs and biologicals) and "any oral equivalent form of *such drug or biological.*" In order to give effect to Congress's decision to separately identify ESAs and other drugs and biologicals, and then to specifically include only oral equivalent forms of *such* agents,

---

[11] "[O]ne of the most basic interpretive canons [is] that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018).

[12] 75 Fed. Reg. at 49,038.

5

drugs, or biologicals, the statute is best interpreted to exclude oral-only drugs for which there is no equivalent, non-oral agent, drug, or biological.[13]

### B. Interpreting Clause (iv) to Include Oral-Only Drugs Would Effectively Nullify Other Provisions of MIPPA

Clause (B)(iv) directs CMS to include in the ESRD PPS "diagnostic laboratory tests and other items and services not described in clause (i) that are furnished to individuals for the treatment of end stage renal disease."[14] In its CY 2011 rulemaking, CMS suggested that this language "can be interpreted as a residual or catch all category for drugs which do not fall under the scope of those renal dialysis services identified in clauses (ii) and (iii)," including oral-only drugs.

That reading of clause (iv), however, would negate Congress's choice to enumerate specific categories of ESRD drugs and biologicals as falling within the definition of "renal dialysis services." If Congress intended *all* drugs and biologicals furnished to individuals for the treatment of ESRD to qualify as "renal dialysis services," there would have been no need to more narrowly define other certain drugs, biologicals, and oral equivalent forms of such drugs and biologicals in clauses (ii) and (iii).

Interpreting clause (iv) to operate as a residual catch-all for "drugs which do not fall under the scope of those renal dialysis services identified in clauses (ii) and (iii)" is also difficult to square with fact that Congress defined clause (iv) to encompass "diagnostic laboratory tests and other items and services not described in *clause (i)*"—rather than items and services not described in clauses (ii) and (iii). CMS interpreted "services" in a manner consistent with how CMS interprets Medicare regulation under Section 400.202 of Title 42 of the Code of Federal Regulations, so as to mean "medical care or services and items, … drugs and biologicals." That is problematic in two respects. First, interpreting "services" in that expansive manner would render the use of "items" in clause (iv) redundant, by expanding the scope of renal dialysis services to include "diagnostic laboratory tests and other items and ['medical care or services and *items*, … drugs and biologicals'] not described in clause (i)." Second, that definition of services would expressly make clauses (ii) and (iii) redundant and superfluous, because any drug, biological, or oral equivalent form that falls within clauses (ii) and (iii) necessarily would qualify as "diagnostic laboratory tests and other items and ['medical care or services and items, … *drugs and biologicals'*] not described *in clause (i).*" (emphasis added).

CMS itself recognized that the clause (iv) should not be interpreted to "violate[] a principle of statutory construction, by making clauses (ii) and (iii) otherwise redundant."[15] As just explained, however, CMS's current interpretation of the statute does just that. If Congress had intended for section (iv) to have such a broad sweep, there would be no need for clauses (ii) or (iii) at all. We believe that the best interpretation of the statute would not render two clauses of Section 1881(b)

---

[13] *See Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013)) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

[14] SSA § 1881(b)(14)(B)(iv).

[15] 75 Fed. Reg. at 49,039.

6

superfluous, nor fail to give effect to Congress's choice to enumerate only certain drugs and biologicals as falling within the scope of "renal dialysis services." [16]

## III. CONCLUSION

In sum, we believe that the plain language of the statutory authority, the prior statements from CMS, and additional actions from Congress all strongly support a conclusion that CMS is not *required* to interpret "renal dialysis services" to encompass oral-only PLTs. Instead, the interpretation of the statute most consistent with principles of statutory construction, and the interpretation that gives better effect to Congress's choices and the ordinary meaning of "renal dialysis services," would exclude oral-only drugs from the definition of renal dialysis services.

\*　　\*　　\*　　\*　　\*

Ardelyx, Inc. appreciates CMS's time and remains available to further discuss these issues at your convenience. We look forward to continued engagement with you on these important issues.

Sincerely,

*Elizabeth Grammer*

Elizabeth Grammer
Chief Legal and Administrative Officer
Ardelyx, Inc.

Cc:　Meena Sheshamani, M.D., Ph.D., Dep. Administrator and Director, Center for Medicare
　　Douglas Jacobs, M.D., M.P.H., Chief Transformation Officer, Center for Medicare
　　Jeanette Kranacs, Dep. Director, Chronic Care Policy Group, Center for Medicare

---

[16] "It is an ancient and sound rule of construction that each word in a statute should, if possible, be given effect." *Crandon v. United States*, 494 U.S. 152 (1990).