UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARDELYX, INC., et al.,

               Plaintiffs,

      v.

XAVIER BECERRA,
Secretary of Health and Human Services, et al.,

             Defendants.

Civil Action No. 24-2095 (BAH)

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

   I.    Plaintiffs' Complaint Does Not Challenge the Regulation at 42 C.F.R. § 413.171(3). ................... 2

   II.   Even If Plaintiffs' Complaint is Read to Challenge the Regulation, the Preclusion Provision Bars

Judicial Review. ....................................................................................................................... 5

   III.   Even if Jurisdiction Merges With the Merits, Plaintiffs Cannot Prevail On the Merits ............. 17

CONCLUSION ....................................................................................................................... 19

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*American Hospital Ass'n v. Azar*,
   964 F.3d 1230 (D.C. Cir. 2020) ............................................................... 6, 8
*Amgen, Inc. v. Smith*,
   357 F.3d 103 (D.C. Cir. 2004) ................................................................ passim
*Apple Inc. v. Omni MedSci, Inc.*,
   No. 23-1034, 2024 WL 3084509 (Fed. Cir. June 21, 2024) ..................... 12
*Arbitraje Casa de Cambio v. Postal Serv.*,
   297 F. Supp. 2d 165 (D.D.C. 2003) .......................................................... 4
*Ascension Borgess Hospital v. Becerra*,
   557 F. Supp. 3d 122 (D.D.C. 2021) ......................................................... 14, 15
*DCH Reg'l Med. Ctr. v. Azar*,
   925 F.3d 503 (D.C. Cir. 2019) ................................................... 8, 9, 10, 12
*Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Hum. Servs.*,
   830 F.3d 515 (D.C. Cir. 2016) .................................................................. 12
*Fresno Cmty. Hosp. & Med. Ctr. v. Azar*,
   370 F. Supp. 3d 139 (D.D.C. 2019) ......................................................... 13
*Knapp Medical Center v. Burwell*,
   192 F. Supp. 3d 129 (D.D.C. 2016) ......................................................... 13
*Lamie v. U.S.*,
   *Tr.*, 540 U.S. 526 (2004) ........................................................................... 11
*Palisades Gen. Hosp., Inc. v. Leavitt*,
   426 F.3d 400 (D.C. Cir. 2005) .................................................................. 13
*Scranton Quincy Hosp. Co., LLC v. Azar*,
   514 F. Supp. 3d 249 (D.D.C. 2021) ......................................................... 10
*Tex. All. for Home Care Servs. v. Sebelius*,
   681 F.3d 402 (D.C. Cir. 2012) .................................................................. 12
*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
   389 F.3d 1251 (D.C. Cir. 2004) ................................................................ 5

**Statutes**

42 U.S.C. § 426-1(a)(2) .................................................................................. 16
42 U.S.C. § 1395*l*(t)(2) ................................................................................... 7
42 U.S.C. § 1395*l*(t)(2)(F) .............................................................................. 8
42 U.S.C. § 1395*l*(t)(12)(A) ........................................................................... 7

**Regulations**

42 C.F.R. § 413.171 ....................................................................................... 3, 11
42 C.F.R. § 413.171(3) ................................................................................... passim

Defendants respectfully submit this reply in further support of their motion to dismiss (ECF No. 11, "Motion").

## INTRODUCTION

Defendants' moving papers repeatedly quoted the Complaint, emphasizing the textual overlap between Plaintiffs' claims and a statutory provision precluding administrative or judicial review of "the identification of renal dialysis services included in the bundled payment." 42 U.S.C. § 1395rr(g)(14)(B). Plaintiffs do not, and cannot, dispute this textual overlap. Instead, they try to save their Complaint by magnifying three paragraphs of a fifty-page document and urging this Court to view their Complaint as a challenge to a regulation which, Plaintiffs say, is not precluded. They are twice wrong. Under scrutiny, the portions of the Complaint Plaintiffs now emphasize do not actually constitute a challenge to a regulation at all. And even if they did, the recast version of this lawsuit remains subject to dismissal for the same reason as the original: "There shall be no administrative or judicial review . . . of . . . the identification of renal dialysis services included in the bundled payment." D.C. Circuit precedent forecloses Plaintiffs' various efforts to evade the express preclusion of judicial review. The Court, therefore, should dismiss this case.

## ARGUMENT

In their Opposition to Defendants' Motion (ECF No. 17, "Opp'n"), Plaintiffs now attempt to recast their flawed Complaint challenging "CMS's decision to, as of January 1, 2025, prohibit payment under Medicare Part D for Plaintiff Ardelyx's oral-only phosphate-lowering therapy tenapanor (XPHOZAH) for chronic kidney disease patients on dialysis," Complaint (ECF No. 1, "Compl."), as a challenge, first and foremost, to a regulation. This Court should not countenance Plaintiffs' belated effort to modify their Complaint to avoid a preclusion provision that the Complaint did not even acknowledge. Even if the Complaint is deemed to include a challenge to

the regulation at 42 C.F.R. § 413.171(3), dismissal is still warranted because that regulation "identif[ies] . . . renal dialysis services included in the bundled payment" and as a result judicial review is precluded by statute. 42 U.S.C. § 1395rr(b)(14)(G). Citing inapposite authority, Plaintiffs erroneously assert that the preclusion provision at 42 U.S.C. § 1395rr(b)(14)(G) incorporates Congress's description of what "the term 'renal dialysis services' includes," and thus this Court should hear this case because the Court's consideration of jurisdiction necessarily merges with its consideration of the merits. They further ask this Court to assume the truth of the point they are trying to prove: that CMS unlawfully expanded the scope of "renal dialysis services" to include XPHOZAH. But there is no textual basis in subsection (b)(14)(G) to merge jurisdiction and the merits, and Plaintiffs' interpretation of the preclusion provision would render it a nullity.

Above and beyond Plaintiffs' flawed interpretation of the preclusion provision's text, dismissal is warranted because it is well-established in controlling authority that a party cannot avoid a preclusion provision by simply recasting its arguments as a challenge to an agency action allegedly not covered by a preclusion provision. Yet Plaintiffs attempt to do exactly that here.

Finally, this Court should dismiss Plaintiffs' Complaint even if it finds that jurisdiction and the merits do merge because, for reasons articulated in Defendants' opposition to Plaintiffs' motion for a preliminary injunction, the best reading of the statute does not exclude oral-only drugs, such as XPHOZAH, from the End-Stage Renal Disease Prospective Payment System bundled payment.

**I.**  **<u>Plaintiffs' Complaint Does Not Challenge the Regulation at 42 C.F.R. § 413.171(3).</u>**

In response to Defendants' Motion, Plaintiffs insist that their Complaint challenges not only the identification of XPHOZAH as a renal dialysis service but also a regulation, 42 C.F.R. § 413.171(3) (which defines "renal dialysis services" to include "drugs . . . with only an oral form," such as XPHOZAH), that they say unlawfully expanded the scope of the End-Stage Renal Disease

Prospective Payment System bundle. Plaintiffs' new interpretation of their Complaint is unsupported by its text.

Plaintiffs' assertions that the Complaint challenges section 413.171(3) mischaracterizes the Complaint. *See* Opp'n (ECF No. 17) at 16. First, they say that paragraph 215 of the Complaint challenges "CMS's 'definition of Renal dialysis services at 42 CFR 413.171(3)' as in 'excess of statutory jurisdiction and authority.'" *Id.* Not so. Paragraph 215 reads: "Defendants' determination that any new oral-only drug is a 'renal dialysis service' (*see* definition of "Renal dialysis services" at 42 CFR 413.171(3)), that shall be added to the bundled payment system as of January 1, 2025 (*see* 89 Fed. Reg. 55,760, 55,795-96) is . . . in excess of statutory jurisdiction and authority, and short of statutory right." Compl. ¶ 215. It is at a minimum far from obvious that a provision identified by a "see" signal is the object of a challenge, particularly when it is thus cited in a sentence citing another document (i.e., "89 Fed. Reg. 55760, 55795-96") where Plaintiffs do not claim to challenge that other provision, although introduced by the same signal.

Similarly, the request for relief at page 50 of the Complaint does not quite "seek[] an order 'vacating and setting aside' 42 C.F.R. § 413.171 and 'enjoining' its application to oral-only drugs." Opp'n (ECF No. 17) at 16. It instead requests an order with two components. First, "vacating and setting aside Defendants' determinations, *see* 42 C.F.R. § 413.171(3), that oral-only drugs are a 'renal dialysis service' subject to inclusion in the [End-Stage Renal Disease Prospective Payment System] bundle rather than separate drugs covered under Medicare Part D" and second, "enjoining Defendants from treating oral-only drugs as a 'renal dialysis service;' placing oral-only drugs into the End-Stage Renal Disease bundled payment system effective January 1, 2025, or ceasing reimbursement for any oral-only drug under Medicare Part D as of January 1, 2025." Compl. at 50. The first part of the requested order would vacate and set aside "determination*s*"—plural—

that flow from section 413.171(3), but it does not ask the Court to vacate and set aside the regulation itself.  The second part does not cite the purportedly challenged regulation at all.

Moreover, Plaintiffs simply do not respond to the rest of the arguments in Defendants' moving papers.  They do not acknowledge the multiple instances in their own Complaint where they describe their challenge to CMS's determination that XPHOZAH is a renal dialysis service to be included in the End-Stage Renal Disease Prospective Payment System bundle.  Open. Br. (ECF No. 11-1) at 13 (citing Compl. ¶¶ 33, 44, 145, 168, 202, 211, 215).  Nor do they explain how a Complaint that identifies as the challenged "final agency action" a letter that announces CMS's identification of XPHOZAH as a renal dialysis service should also be read as challenging a regulation published fourteen years prior.  Open. Br. (ECF No. 11-1) at 14-15 (citing Compl. ¶ 54). And Plaintiffs assert that they are challenging a regulation as invalid both facially and as applied, but their only support for that proposition consists of partial quotations of one paragraph in the Complaint itself and two paragraphs in the request for relief.  Opp'n (ECF No. 17) at 16.

Despite all this, Plaintiffs repeatedly state that Defendants "do not seriously argue" that the preclusion provision covers their purported challenge to the regulation.  Opp'n (ECF No. 17) at 3 ("Defendants do not seriously attempt"), 14, 15, 18 ("Defendants do not seriously contend").  For the avoidance of doubt, now that Plaintiffs have re-packaged their challenge as directed against 42 C.F.R. § 413.171(3), Defendants do in fact argue that the preclusion provision bars consideration of Plaintiffs' recast challenge.  *See infra*.  But Defendants also contend that the Complaint itself does not challenge the regulation that Plaintiffs now insist is the target of their lawsuit.  This Court should not countenance Plaintiffs' effort through their Opposition to modify the Complaint—which nowhere even mentions the statutory preclusion of judicial review—to defeat Defendant's Motion.  *See Arbitraje Casa de Cambio v. Postal Serv*., 297 F. Supp. 2d 165,

170 (D.D.C. 2003) ("'It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (citation omitted)); *accord United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (unless a party offers an "'indication of the particular grounds on which amendment is sought'" and "tender[s] a proposed amendment," the district court properly should decline to consider such a proposal (citations omitted)).

## II.    Even If Plaintiffs' Complaint is Read to Challenge the Regulation, the Preclusion Provision Bars Judicial Review.

Plaintiffs' core contention is that the statute divesting this Court of jurisdiction "'is intertwined with the question of whether the agency has authority for the challenged action.'" Opp'n (ECF No. 17) at 21 (quoting *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004)). They argue that the preclusion statute, which prohibits administrative or judicial review of "the identification of renal dialysis services included in the bundled payment," 42 U.S.C. § 1395rr(b)(14)(G), is intertwined with Congress's statutory description of what "the term 'renal dialysis services' includes," 42 U.S.C. § 1395rr(b)(14)(B).  Plaintiffs are wrong as a textual matter, and their argument is unsupported by D.C. Circuit precedent.  The regulation they now purport to challenge is a definition provision that identifies items and services subject to inclusion in the bundle.   Finally, attempting to justify their insistence on judicial review notwithstanding the preclusion provision, Plaintiffs posit what they acknowledge is an "extreme example," overlooking several factors that make their hypothetical categorically unlike this case.

### A.    Plaintiffs' Interpretation of the Preclusion Provision Would Render It a Nullity.

Plaintiffs, relying principally on two D.C. Circuit cases, argue that this Court must determine the scope of the definition provision at 42 U.S.C. § 1395rr(b)(14)(B) before it can

decide whether the preclusion provision at 42 U.S.C. § 1395rr(b)(14)(G) applies. *See* Opp'n (ECF No. 17) at 20-24. Plaintiffs' reading of the preclusion provision would render it a nullity; they say that judicial review of the agency's "identification of renal dialysis services" is precluded only to the extent that a court determines that items and services are in fact renal dialysis services (i.e., that the agency's identification is correct). In other words, Plaintiffs say that applying the preclusion provision requires an independent judicial analysis of whether items and services are "renal dialysis services included in the bundle." But that judicial review is precisely what the preclusion provision forbids.

Under the statute, "renal dialysis services" are included in the payment bundle, 42 U.S.C. § 1395rr(b)(14)(A)(i), and "the term 'renal dialysis services' includes" four categories of items and services and excludes vaccines, 42 U.S.C. § 1395rr(b)(14)(B). "There shall be no administrative or judicial review . . . of . . . the identification of renal dialysis services included in the bundled payment." *Id.*§ 1395rr(b)(14)(G). The relationship between the definition and preclusion provisions at issue here is different in kind from the relationship between the preclusion and definition provisions in *Amgen*, 357 F.3d at 103, and *American Hospital Ass'n v. Azar*, 964 F.3d 1230 (D.C. Cir. 2020). In both of those cases, the preclusion provision expressly incorporated another provision of the Medicare statute, and the D.C Circuit in both instances held that a reviewing court could not determine whether the bar applied without first determining whether the agency action was included in the category of actions insulated from judicial review. Here, by contrast, the preclusion provision applies to "the identification of renal dialysis services included in the bundled payment." 42 U.S.C. § 1395rr(b)(14)(G).

This Court's task on a motion to dismiss is simply to determine whether the challenged agency action is an "identification of renal dialysis services included in the bundled payment."

Doing so does not require any antecedent judicial determination of whether XPHOZAH specifically or oral-only drugs generally are a "renal dialysis service." Both the letter announcing XPHOZAH's inclusion and the regulation Plaintiffs now purport to challenge clearly are "identification[s] of renal dialysis services included in the bundled payment," albeit at different levels of generality, and therefore the preclusion provision applies. Neither of the cases Plaintiffs rely upon requires a different outcome.

Plaintiffs rely on *Amgen*, which involved a supplemental pass-through payment under the Outpatient Prospective Payment System for the then-new drug Aranesp. *Amgen*, 357 F.3d at 106-07. CMS adjusted the payments in a way that "effectively eliminat[ed]" the supplemental pass-through payment. *Id.* at 107. Amgen, Aranesp's manufacturer, challenged the adjustment, and the agency asserted statutory preclusion among other defenses. *Id.* at 107, 111. The preclusion provision at issue in *Amgen* reads: "'There shall be no administrative or judicial review under section 1395ff of this title, section 1395*oo* of this title, or otherwise of . . . [t]he development of the [prospective payment] classification system under paragraph (2), including the establishment of groups and relative payment weights for covered [outpatient department] services, wage adjustment factors, other adjustments, and methods described in paragraph (2)(F).'" *Id.* at 111 (quoting 42 U.S.C. § 1395*l*(t)(12)(A)). The *Amgen* court held that interpreting the scope of that provision required a determination of whether the agency action at issue was something the agency was authorized to do under the cross-referenced paragraph (2), i.e., 42 U.S.C. § 1395*l*(t)(2). *Id.* The explicit textual cross reference in the preclusion provision was central to the *Amgen* Court's analytical approach: "Proceeding, then, on the basis that § (t)(12)(A) precludes judicial review of any adjustment made by the Secretary pursuant to the equitable adjustment authority under § (t)(2)(E), but not of those for which authority is lacking, the court

7

turns to the question of whether § (t)(2)(E) authorizes the type of adjustment the Secretary, acting through CMS, made here." *Id.* at 113. The *Amgen* court held that the preclusion provision divested the court of jurisdiction. *Id.* at 118.

*American Hospital Association* involves the same preclusion provision as *Amgen*, but this time the relevant cross reference is 42 U.S.C. § 1395*l*(t)(2)(F). *Am. Hosp. Ass'n*, 964 F.3d at 1237-38. And once again, the court determined that it could not preclude judicial review without first determining whether the agency action at issue was contemplated by the cross-referenced paragraph. *Id.* at 1238. *American Hospital Association* held that "[s]ubparagraph 12(A) therefore is a preclusion-of-review provision that merges consideration of the legality of agency action with consideration of the court's jurisdiction in cases in which the challenge to the agency's action raises the question of the agency's statutory authority." *Id.* (internal quotation marks omitted).

But not all preclusion-of-review provisions merge the jurisdictional question with the legality question. *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 510 (D.C. Cir. 2019) (discussing cases that determined "relevant statutory bar, in the circumstances of each case, was effectively coextensive with the merits"). Plaintiffs repeatedly assert that § 1395rr(b)(14)(G) is like § 1395*l*(t)(12)(A). Opp'n (ECF No. 17) at 21 ("Where, as here, the determination of whether the court has jurisdiction is intertwined with the question of whether the agency has authority for the challenged action"); 23 ("So too here"); 24 ("this case is in the vein of *Amgen* and *American Hospital Association*"). Their assertions—unsupported by the kind of textual analysis of the preclusion provision at issue that the *Amgen* and *American Hospital Association* courts engaged in—are wrong.

8

The preclusion provision at issue here, subsection (b)(14)(G), is structurally unlike the preclusion provision at issue in *Amgen* and *American Hospital Association* in a critical way that renders those two cases inapposite.  In those cases, the preclusion language at issue explicitly required analysis of a separate statutory provision.  In contrast, subsection (b)(14)(G) requires no such analysis of any cross-reference; it directly forbids "administrative or judicial review [under Medicare statute review provisions] or otherwise of . . . the identification of renal dialysis services included in the bundled payment."  42 U.S.C. § 1395rr(b)(14)(G).  Notably, every other portion of subsection (b)(14)(G) does have a textual cross-reference.  *Id.* (precluding review of "payment amounts under subparagraph (A), the establishment of an appropriate unit of payment under subparagraph (C), the identification of renal dialysis services included in the bundled payment, the adjustments under subparagraph (D), the application of the phase-in under subparagraph (E) and the establishment of the market basket percentage increase factors under subparagraph (F).") So, for example, if the Secretary had asserted preclusion of judicial review because Plaintiffs challenged an "adjustment[] under subparagraph D," *id.*, a court applying *Amgen* and *American Hospital Association* would naturally refer to subparagraph (D) to determine whether the Secretary's action was in fact such an adjustment.  Congress could have included such a cross-reference in the portion of subsection (b)(14)(G) at issue here by, for example, precluding judicial review of the application of subsection (b)(14)(B) to the identification of a specific item or service as a "renal dialysis service."  But it did not; instead, it precluded judicial review of "the identification of renal dialysis services included in the bundled payment."

Whether judicial review is precluded here thus turns on whether the actions challenged in the Complaint fall into the category of "the identification of renal dialysis services included in the bundled payment."  And it is clear from the face of Plaintiffs' Complaint that they do.  *See*

*generally* Mot.  There is no need for this Court to examine whether oral-only End-Stage Renal Dialysis-related drugs are renal dialysis services within the meaning of subsection (b)(14)(B) as part of its jurisdictional analysis because, unlike in *Amgen* and *American Hospital Association*, the preclusion provision does not cross-reference or incorporate Congress's definition of what "the term 'renal dialysis services' includes."  Plaintiffs are wrong to say that the jurisdictional analysis here requires this Court to impute an atextual cross reference to subsection (b)(14)(B). This Court need only review the agency actions challenged in the Complaint.  *See, e.g., DCH*, 925 F.3d at 506 (reviewing relief sought in complaint).

It is pellucid from Plaintiffs' Complaint that they are challenging the "identification of renal dialysis services included in the bundled payment."  Their Opposition does not respond to Defendants' catalogue of the numerous statements in the Complaint that track the language of the preclusion provision almost precisely.  *See* Open. Br. (ECF No. 11-1) at 13 (quoting Complaint); *see also Scranton Quincy Hosp. Co., LLC v. Azar*, 514 F. Supp. 3d 249, 262 (D.D.C. 2021) (reviewing complaint to determine applicability of preclusion provision).  And their arguments that the preclusion provision does not reach "Plaintiffs' particular challenges to the XPHOZAH decision" (Opp'n (ECF No. 17) at 37-39) apply the same flawed syllogism as their argument for narrowing the preclusion provision: because subsection (b)(14)(G) somehow incorporates (despite the lack of text so indicating) subsection (b)(14)(B), this Court should merge jurisdiction and the merits and decide, in the first instance, whether XPHOZAH satisfies the requirements in subsection (b)(14)(B).  Nor does Plaintiffs' inclusion of a claim that CMS has violated a regulation (Opp'n (ECF No. 17) at 39-41) change this analysis because, again, Plaintiffs allege that CMS violated its own regulation while identifying XPHOZAH as a renal

dialysis service included in the bundled payment.  *See, e.g.,* Compl. ¶ 208-11.[1]  Judicial review thus is statutorily foreclosed.

Therefore, even if this Court determines that Plaintiffs' Complaint should be read to include a challenge to the CMS regulation at 42 C.F.R. § 413.171(3) (*but see supra*) insofar as the regulation includes oral-only drugs in the bundle, that challenge is precluded because the regulation's inclusion of oral-only drugs in the bundle itself constitutes "the identification of renal dialysis services included in the bundled payment."  This is clear from the regulatory text, which is captioned "Definitions," 42 C.F.R. § 413.171, and provides that "the following items and services are considered 'renal dialysis services' and paid under the [End-Stage Renal Disease] prospective payment system," *id.*  In other words, the regulation Plaintiffs seek to challenge literally identifies the items and services that are renal dialysis services included in the bundle. Plaintiffs' challenge thus is precluded by statute.

Plaintiffs' main argument to the contrary (*see* Mot. for Prelim. Inj. (ECF No. 14, "PI Mot.") at 16-17) once again disregards the text of the preclusion provision.  They say the preclusion provision applies only to "the agency's identification of a specific drug or treatment as falling within the statutory definition of 'renal dialysis services.'"  PI Mot. (ECF No. 14) at 16. The preclusion provision by its terms is not restricted to identification of "a specific drug or treatment" nor does it say anything about "falling within the statutory definition."  *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (refusing to "read an absent word into the statute").  Plaintiffs insist that "[t]he term 'identification' instead connotes the classification of a specific object."  *Id.* at 17. But "identify" can also mean "to recognize as belonging to a particular category or kind."

---

[1]      As Defendants explained in their Opposition to Plaintiffs' Motion for a Preliminary Injunction, the claim is also meritless. *See* Opp'n PI Mot. (ECF No. 16) at 41-44.

*Identify*, Oxford English Dictionary, available at www.oed.com/dictionary/identify_v.  While it is clearly possible to identify or recognize a particular thing (say, a red, two-legged, winged animal in a tree) as belonging to the category "cardinal," it is equally possible to recognize a group of things (say, cardinals, robins, and jays in the backyard) as all belonging to the category "bird."  Indeed, Plaintiffs rely on a case that discusses what it means "to identify an object."  PI Mot. (ECF No. 14) at 17 (citing *Apple Inc. v. Omni MedSci, Inc.*, No. 23-1034, 2024 WL 3084509, at *5 (Fed. Cir. June 21, 2024)).  The statute at issue here says nothing about identifying "an object" as a renal dialysis service.  There is no textual basis to conclude that "identification," as used in the statute, cannot apply to a set of items with similar characteristics—like oral drugs with no injectable or intravenous equivalent.  At bottom, 42 C.F.R. § 413.171(3) is a regulation that identifies the kinds of renal dialysis services included in the bundled payment, and this Court thus lacks jurisdiction over Plaintiffs' challenge to it.

**B.     Under D.C. Circuit Precedent, a Plaintiff May Not Evade a Jurisdictional Bar by Redefining the Scope of Its Challenge**

Plaintiffs attempt to evade the jurisdictional bar by insisting that their challenge is to a regulation that purportedly redefines a phrase ("renal dialysis services") to include things (oral-only drugs) that Congress excluded from the category.  *See, e.g.*, Opp'n (ECF No. 17) at 19, 20.  As Defendants demonstrated in their moving papers, the true object of Plaintiffs' Complaint is the identification of XPHOZAH as a renal dialysis service.  The D.C. Circuit repeatedly has cautioned that a party cannot overcome a preclusion provision by "recasting its challenge . . . as an attack on the underlying methodology."  *DCH*, 925 F.3d at 508; *see also Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Hum. Servs.,* 830 F.3d 515, 519 (D.C. Cir. 2016) ("scope of congressional directive that there be 'no administrative or judicial review'" depends on "the relationship between the challenged decision and the agency action shielded from review"); *Tex.*

*All. for Home Care Servs. v. Sebelius*, 681 F.3d 402, 410 (D.C. Cir. 2012) (statute prohibiting judicial review of "the awarding of contracts" precludes review of "formulation and application of financial standards"); *Palisades Gen. Hosp., Inc. v. Leavitt*, 426 F.3d 400, 405 (D.C. Cir. 2005) ("when a procedure is challenged solely in order to reverse an individual reclassification decision, judicial review is not permitted."). Plaintiffs' effort to recast their objection to CMS's treatment of XPHOZAH as a challenge to a CMS regulation similarly fails.

*Knapp Medical Center v. Burwell*, 192 F. Supp. 3d 129, 134 (D.D.C. 2016), *aff'd*, 875 F.3d 1125 (D.C. Cir. 2017), which Defendants cited in their moving papers and which Plaintiffs do not attempt to distinguish, is instructive. *See* Open. Br. (ECF No. 11-1) at 12. In *Knapp*, unlike here, the plaintiffs acknowledged the relevant preclusion provision in their Complaint and attempted to plead around it, challenging the Department's "faulty and arbitrary application of the congressionally-mandated criteria and its own rules to" plaintiffs' application. *Id.* at 135 (internal quotation marks omitted). The court found that "[p]laintiffs cannot survive a motion to dismiss by attempting to separate the process itself from a decision arrived at through that process." *Id.*

In a case cited twice by Plaintiffs (Opp'n (ECF No. 17) at 18, 21), the district court explained why a challenger cannot modify its challenge to avoid a preclusion provision. "If the Court were to allow parties to evade the preclusion statute simply by alleging that the Secretary's determination or adjustment violated the statute in some way, the preclusion statute would apply to only a narrow and limited number of claims." *Fresno Cmty. Hosp. & Med. Ctr. v. Azar*, 370 F. Supp. 3d 139, 150 (D.D.C. 2019). So too here. Plaintiffs assert that, under their interpretation of the preclusion principle, this Court must make its own determination of whether an item or service (or a category of items and services, such as oral-only drugs) is a "renal dialysis service"

13

under 42 U.S.C. § 1395rr(b)(14)(B).  On their theory, if the Court conducts that merits inquiry and concludes that the thing at issue qualifies as a renal dialysis service, then and only then may it grant a motion to dismiss.  In all other cases, Plaintiffs contend, the jurisdiction and merits merge, and a motion to dismiss cannot succeed. Opp'n (ECF No. 17) at 15-16. Under this flawed reasoning, the preclusion statute "would be robbed of much of its power."  *Fresno*, 370 F. Supp. at 150.

Perhaps cognizant of this issue, Plaintiffs offer reassurance that they do not mean "to say that the preclusion provision has no teeth."  Open. Br. (ECF No. 11-1) at 23 ("[i]f a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective" (quoting *Amgen*, 357 F.3d at 113)).  This rings hollow.  Plaintiffs take the position that Defendants' Motion should be denied in its entirety, meaning that notwithstanding the preclusion provision, this Court should exercise jurisdiction over the entire Complaint.  Plaintiffs nowhere explain how this result would be consistent with their Complaint itself, which in each claim for relief and count alleges "[a]gency action that is arbitrary, capricious[.]"  Compl. at 46-48; *see also id.* ¶¶ 202, 211, 215. The Complaint would render the unacknowledged preclusion provision a nullity and would have this Court exercise jurisdiction despite Congress's preclusion of it.

Plaintiffs advance a flawed reading of this Court's decision in *Ascension Borgess Hospital v. Becerra*, 557 F. Supp. 3d 122, 129 (D.D.C. 2021), in support of their position.  *See* Opp'n (ECF No. 17) at 23.  In particular, Plaintiffs suggest that this Court in *Ascension* determined that "jurisdiction and the merits did not merge."  Opp'n (ECF No. 17) at 23.  But *Ascension* is silent on the question of whether jurisdiction and the merits merge; indeed, the parties ultimately agreed "that the only issue properly before the Court is whether the [the Board] erred in dismissing

plaintiffs' complaint for lack of jurisdiction." *Ascension*, 557 F. Supp. 3d at 127 n.4.  In the face of a preclusion provision, plaintiffs in that case "frame[d] their challenge as a procedural one." The government responded that regardless of how the plaintiffs characterized their challenge, the "claims are precluded because plaintiffs' ultimate aim is to force [the Department] to recalculate one of the factors articulated in" a paragraph covered by the relevant preclusion provision.  *Id.* The Court, citing plaintiffs' complaint (*id.* at 130) and their request for relief (*id.* at 131), agreed, concluding that the challenged audit protocol was inextricably intertwined with the resulting uncompensated care estimates.  "Where the ultimate relief sought is recalculation of the estimates used to determine . . . payments—which are themselves precluded from review—the statute precludes review regardless of whether the challenge is characterized as substantive or procedural, or whether the estimates themselves are directly challenged." *Id.* at 131.  Similarly, here the ultimate relief sought is a reversal of certain CMS identifications of renal dialysis services included in the bundled payment, which are precluded from review.

In short, Plaintiffs' position in this litigation fails to overcome a number of decisions in this Circuit and this District holding that plaintiffs cannot evade preclusion provisions via clever pleading—or, as applicable here, an attempt to redefine the target of their Complaint via an opposition to a dispositive motion.[2]  This Court should give effect to Congress's decision to preclude judicial review of "the identification of renal dialysis services included in the bundled payment" and dismiss Plaintiffs' Complaint.

---

[2]     Plaintiffs' injury-in-fact for standing purposes in this action is based on CMS's decision to include XPHOZAH in the payment bundle, not on the existence of a regulation permitting the inclusion of other oral-only drugs in the bundle.  Therefore, if the Court determines—as it should— that judicial review of the decision to include XPHOZAH in the bundle is statutorily precluded, it does not need to address Plaintiffs' purported challenge to the regulation, because a decision that the regulation is inconsistent with the statute would not redress Plaintiffs' alleged injuries.

**C.     Plaintiffs' Asserted Policy Concerns Rest on What they Acknowledge is an "Extreme Example" That Highlights the Shortcomings of Their Claim**

As Defendants explained in their moving papers, the FDA approved XPHOZAH for use on "adults with chronic kidney disease on dialysis."  Open. Br. (ECF No. 11-1) at 9.  In other words, XPHOZAH is indicated to treat the patient population—people who suffer from End-Stage Renal Disease—that meet a statutory qualification for receiving Medicare benefits regardless of age or disability.  42 U.S.C. § 426-1(a)(2).  XPHOZAH (a phosphate blocker) serves as a second-line therapy when another class of drugs (namely, phosphate binders) already slated for inclusion in the End-Stage Renal Disease Prospective Payment System bundle are ineffective or contraindicated because XPHOZAH achieves the same result—namely, the lowering of serum phosphorus—as phosphate binders.  It is hardly surprising that Congress would intend for a drug indicated for use only in adults receiving dialysis to be included in a bundled payment covering "renal dialysis services."

Perhaps recognizing this, Plaintiffs resort to the "extreme example" of a purely hypothetical regulation defining "renal dialysis services" to mean "all drugs provided to ESRD patients."  Opp'n (ECF No. 17) at 20.  First, Plaintiffs ignore CMS's data-driven analysis of the items and services provided to patients suffering from End-Stage Renal Disease—an effort that resulted in the classification of drugs by "functional category" based on patterns of administration.  75 Fed. Reg. 49,030, 49,047-50 (Aug. 12, 2010).  Second, Plaintiffs ignore that Congress approvingly acknowledged the regulations, including the oral-only drug provisions that CMS promulgated after Congress created the End-Stage Renal Disease bundle—which constitutes strong evidence that Congress would have intervened to override regulations if they were inconsistent with the statute.  Opp'n PI Mot. (ECF No. 16) at 27-30.  Thus, had CMS violated Congress's instructions in identifying inclusions in the bundle, Congress presumably

would have intervened—and, importantly, it retains the authority to intervene.  Plaintiffs' purely hypothetical invocation of a slippery slope ignores the congressional backstop.

To recap: Plaintiffs insist on an interpretation of the preclusion provision that renders it meaningless by requiring the Court to determine whether items and services are "renal dialysis services included in the bundled payment" in direct contravention of a prohibition on judicial review of exactly that.  They ignore caselaw holding that parties cannot evade preclusion provisions by recasting their challenges.  And they deploy an admittedly "extreme example" to suggest that, if this Court does not review the identification at issue here, agencies (or at least CMS) might violate congressional directions and deploy preclusion provisions to evade judicial oversight.  This argument ignores both what CMS actually did and Congress's ongoing oversight of the implementation of the End-Stage Renal Disease Prospective Payment System bundle.  This Court should dismiss this case because, as Defendants demonstrated in their moving papers, Plaintiffs' Complaint challenges the identification of XPHOZAH as a renal dialysis service included in the bundled payment, and subsection (b)(14)(G) squarely forbids judicial review of that decision.

III.    **Even if Jurisdiction Merges With the Merits, Plaintiffs Cannot Prevail On the Merits**

Much of Plaintiffs' Opposition makes an argument to which Defendants have already responded in their opposition to Plaintiffs' motion for a preliminary injunction—namely, that the statute describing what "the term 'renal dialysis services' includes" bars the agency from placing oral-only drugs in the End-Stage Renal Disease bundle.  *See* Opp'n (ECF No. 17) at 24-37; Opp'n PI Mot. (ECF No. 16) at 26-39.  To conserve the Court's resources, Defendants incorporate those arguments here by reference.

Plaintiffs have added an argument that nothing in the Medicare statute authorizes the agency to "expand upon the definition of 'renal dialysis services' that Congress itself enacted."

PI Mot. (ECF No. 14) at 26; *see also id.* at 24-27.  This only begs the question.  Defendants'
position is that neither the identification of XPHOZAH as a renal dialysis service nor the
regulation at 42 C.F.R. § 413.171(3) expands upon the definition enacted by Congress.  Should
this Court decide that the jurisdictional issue raised by Defendants' Motion requires
consideration of the merits, it should nonetheless dismiss this case because the best reading of
the statute includes certain oral-only drugs generally and XPHOZAH specifically as "renal
dialysis services."

*   *   *

**CONCLUSION**

For the above reasons, and those stated in Defendants' moving papers, this Court should

dismiss this action.

Dated: October 16, 2024                    Respectfully submitted,
       Washington, DC

                                                    MATTHEW M. GRAVES, D.C. Bar #481052
                                                  United States Attorney

                                                  BRIAN P. HUDAK
                                                Chief, Civil Division

                                                  By: _____*/s/ John J. Bardo*_____

                                                     JOHN J. BARDO, D.C. Bar #1655534
                                                   Assistant United States Attorney
                                                   601 D Street, NW
                                                   Washington, DC 20530
                                                   (202) 870-6770

                                                  *Attorneys for the United States of America*

OF COUNSEL:

ALEXANDER R. WHITE
Attorney
Department of Health & Human Services
330 Independence Ave., S.W.
Washington, D.C. 20201
(202) 619-0182
alexander.white@hhs.gov

SAMUEL R. BAGENSTOS
General Counsel

JANICE L. HOFFMAN
Associate General Counsel

DAVID L. HOSKINS
Acting Deputy Associate General Counsel
for Litigation

*Department of Health & Human Services*

19