THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARDELYX, INC.,<br>400 Fifth Avenue, Suite 210<br>Waltham, MA 02451<br><br>AMERICAN ASSOCIATION OF KIDNEY PATIENTS,<br>14440 Bruce B. Downs Blvd.<br>Tampa, FL 33613<br><br>NATIONAL MINORITY QUALITY FORUM,<br>1201 15th Street NW # 340<br>Washington, DC 20005<br><br>                Plaintiffs,<br>  v.<br><br>XAVIER BECERRA,<br>*Secretary of Health and Human Services*<br>200 Independence Avenue, SW<br>Washington, DC 20201<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br>200 Independence Avenue, SW<br>Washington, DC 20201<br><br>CHIQUITA BROOKS-LASURE, AND<br>*Administrator of Centers for Medicare and Medicaid Services*<br>7500 Security Boulevard<br>Baltimore, MD 21244<br><br>CENTERS FOR MEDICARE AND MEDICAID SERVICES,<br>7500 Security Boulevard<br>Baltimore, MD 21244,<br><br>                Defendants. | Case No. 1:24-cv-02095-BAH |

<u>DECLARATION OF LAURA WILLIAMS IN SUPPORT OF PLAINTIFFS' REPLY TO THEIR MOTION FOR PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, FOR EXPEDITED SUMMARY JUDGMENT</u>

I, Laura Williams, do hereby declare under penalty of perjury that:

1. I have personal knowledge of the facts I state below and would testify truthfully to them if called upon to do so.

2. My background is described in my previous declaration in this matter (Dkt. No. 14-3).

3. In its October 4, 2024 response to Ardelyx's motion for a preliminary injunction or in the alternative expedited summary judgment, I understand that Defendants have asserted that some of the harms that Ardelyx has alleged in this matter result from Ardelyx's decision not to apply for the Transitional Drug Add-on Payment Adjustment ("TDAPA") program.

4. Defendants' assertion is incorrect and reflects a fundamental misunderstanding of the TDAPA program and its impact on both short- and long-term drug access.

5. Ardelyx's decision not to apply for TDAPA reflected its considered determination that applying for TDAPA would not have helped patients access XPHOZAH, either during or after the TDAPA period.

6. On October 17, 2023, Ardelyx announced that the U.S. Food and Drug Administration ("FDA") approved XPHOZAH for commercialization in the United States.

7. In exploring XPHOZAH's commercial opportunity after FDA approval, Ardelyx began with the assumption that it would apply to include XPHOZAH in the TDAPA program.

8. Indeed, Ardelyx began preparing a TDAPA application for XPHOZAH, which application continued to be drafted until late June 2024.

9. In parallel with preparing its TDAPA application in the first half of 2024, Ardelyx also conducted extensive analysis to more fully understand the impact of TDAPA on XPHOZAH.

10. As Ardelyx further analyzed XPHOZAH's commercial opportunity in the first half

of 2024, Ardelyx determined that even during the TDAPA period, the restrictions placed on XPHOZAH would be such that patient access to this novel therapy would be effectively eliminated for all patients. This was a surprising and disappointing realization, particularly given Ardelyx's expectation that it would apply for the TDAPA program.

11. For example, as part of the exploration of XPHOZAH's commercial opportunity, Ardelyx considered the real-world experience of Korsuva (difelikefalin), an injectable drug for the treatment of pruritus (severe itching) associated with chronic kidney disease in adults undergoing hemodialysis that was subject to TDAPA until March 2024.

12. While Korsuva's manufacturer applied for and received TDAPA, less than 1% of Medicare ESRD patients ultimately accessed Korsuva during the two-year TDAPA period, despite published evidence demonstrating that an estimated 30 to 40% of ESRD patients suffer from CKD-related pruritus.

13. In the course of analyzing Korsuva's recent experience in the lead up to Ardelyx's June 2024 decision not to apply for TDAPA, I came to understand that dialysis facilities increasingly considered TDAPA payments inadequate to support access to needed drugs, both because CMS limits the level of reimbursement that it provides under TDAPA,[1] and because over 40% of Medicare ESRD patients had transitioned to Medicare Advantage plans by mid-2024—plans for which dialysis facilities do not receive any TDAPA payments.

14. In addition, on June 27, 2024, CMS published its proposed PPS rule for 2025, which suggested that reimbursement for XPHOZAH was likely to be at the same level as Korsuva.

---

[1] Under Medicare Part B, Medicare commonly provides payment for Part B drugs at the amount of a drug's Average Sale Price [ASP] + 6%. That additional 6% accounts for the cost to providers of managing the acquisition and dispensing of those drugs to patients. However, like many other drugs subject to TDAPA, Korsuva was reimbursed at a rate of ASP + 0%, which did not support significant market uptake of the drug.

15. I further understand that many dialysis organizations were unwilling to initiate patients on Korsuva, a drug for which they would have had to absorb the full cost of providing under the ESRD PPS after the two-year TDAPA period ended. This effect is known as the "TDAPA cliff," and can reduce patient uptake of drugs even during the TDAPA period.

16. I also learned that, as with Korsuva, providers would have been heavily disincentivized to prescribe XPHOZAH during the TDAPA period in order to avoid having to cease prescribing XPHOZAH at the end of that short period.

17. Despite obtaining TDAPA status, once CMS incorporated Korsuva into the ESRD PPS bundle after March 2024, its usage rapidly declined to near zero.

18. I understand that Korsuva's manufacturer has ceased marketing activities for Korsuva due to its failure to obtain patient access through TDAPA and the ESRD PPS bundle.

19. As a result of its evaluation of TDAPA in the lead up to its mid-2024 decision, Ardelyx concluded that the level of reimbursement available to dialysis facilities even under TDAPA would not financially incentivize dialysis facilities to promote access to XPHOZAH.

20. I also understand that the government has argued that transitioning XPHOZAH into the ESRD PPS bundle will expand patient access for patients lacking Medicare Part D prescription drug coverage. That assertion is incorrect: Doing so will harm patients.

21. I understand that Medicare Part D enrollment among patients with Medicare Part B continues to increase year-over-year, reducing the number of patients without access to an outpatient prescription benefit plan that covers XPHOZAH.

22. I understand that over 40% of Medicare ESRD patients are enrolled in Medicare Advantage plans (which generally cover XPHOZAH through included Medicare Part D coverage), and approximately 80% of the remaining ESRD beneficiaries who remain in Medicare Part B are

also enrolled in a Part D plan, allowing access to XPHOZAH through their Part D coverage.

23. Even for the minority (approximately 20%) of Medicare Part B patients who currently lack a Medicare Part D plan, I understand that these patients typically have other options for coverage of XPHOZAH, including outpatient medication benefits through retiree drug subsidy plans, employer group health plans, other private coverage, or Veterans Health Administration (VHA) benefits. In addition, XPHOZAH is available to many patients through patient assistance and financial hardship programs.

24. I believe that the true number of ESRD patients without current access to XPHOZAH is small, compared to the overwhelming majority of ESRD patients who currently have access to XPHOZAH under Medicare Part D and other options.

25. For these and related reasons, the addition of XPHOZAH to the ESRD PPS Bundle through TDAPA would materially reduce access for the overwhelming majority of Medicare patients with ESRD who do currently have Medicare Part D coverage or other forms of coverage, by creating a reimbursement structure that does not support patient access to XPHOZAH, even for the small minority of patients who might purport to "gain" coverage under the ESRD PPS bundle.

26. Ardelyx's decision in mid-2024 to change its previously assumed path and forgo applying to include XPHOZAH in TDAPA was grounded in a well-studied assessment of market realities and the TDAPA program's structural shortcomings.

I declare under penalty of perjury under the laws of the United States of America that the foregoing declaration is true and correct.

Executed on October 16, 2024

Waltham, Massachusetts

_____
Laura Williams

5