**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ARDELYX, INC., AMERICAN ASSOCIATION OF KIDNEY PATIENTS, NATIONAL MINORITY QUALITY FORUM**, <br><br> **Plaintiffs,** <br> **v.** <br><br> **XAVIER BECERRA, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, CHIQUITA BROOKS-LASURE, AND CENTERS FOR MEDICARE AND MEDICAID SERVICES,** <br><br> **Defendants.** | Case No. 1:24-cv-02095-BAH |

**PLAINTIFFS' RULE 59(e) MOTION TO ALTER OR AMEND THE JUDGMENT, OR IN THE ALTERNATIVE, FOR AN INJUNCTION PENDING APPEAL**

Pursuant to Fed. R. Civ. P. 59(e), Plaintiffs Ardelyx, Inc., American Association of Kidney Patients, and National Minority Quality Forum (collectively, "Plaintiffs"), respectfully move to alter or amend the District Court's order granting Defendants' Motion to Dismiss and denying Plaintiffs' Motion for a Preliminary Injunction as moot, entered on November 8, 2024.  In the alternative, Plaintiffs respectfully request that this Court enjoin the Centers for Medicare and Medicaid Services ("CMS") from including oral-only drugs, including XPHOZAH, in the bundle pending appeal.  This motion is accompanied by a Memorandum of Points and Authorities, and a proposed Order.

Pursuant to Local Rule 7(m), counsel for Plaintiffs contacted counsel for Defendants Xavier Becerra, Secretary of Health and Human Services, U.S. Department of Health and Human Services, Chiquita Brooks-Lasure, Administrator of CMS, and CMS (collectively, "Defendants") on November 20, 2024.  Counsel for Plaintiffs did not receive a response, but based on past conferrals, Plaintiffs expect that Defendants will oppose the requested relief.  Should Defendants indicate otherwise, Plaintiffs will promptly inform the Court.

Dated:  November 20, 2024

Respectfully submitted,

*/s/ Michael E. Bern*
Michael E. Bern  (DC Bar No. 994791)
Christine C. Smith (DC Bar No. 1658087)
Delia Tasky (DC Bar No. 1724285)
Alexander G. Siemers (DC Bar No. 900067465)
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email:    michael.bern@lw.com
          christine.smith@lw.com
          alex.siemers@lw.com

delia.tasky@lw.com

Nicholas L. Schlossman (DC Bar No. 1029362)
Latham & Watkins LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (737) 910-7300
Fax: (737) 910-7301
Email:   nicholas.schlossman@lw.com

*Attorneys for Plaintiffs Ardelyx, Inc.,
American Association of Kidney Patients*


James E. McCollum, Jr. (DC Bar. No. 398117)
Amit K. Sharma (D.C. Bar No. 503604)
The McCollum Firm, LLC
7309 Baltimore Avenue, Suite 117
College Park, MD 20740
Tel: (301) 537-0661
Fax: (301) 864-4351
Email:   jmccollum@jmlaw.net
              asharma@jmlaw.net

*Attorneys for Plaintiff National Minority
Quality Forum*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ARDELYX, INC., AMERICAN ASSOCIATION OF KIDNEY PATIENTS, NATIONAL MINORITY QUALITY FORUM**, <br><br> **Plaintiffs,** <br> **v.** <br><br> **XAVIER BECERRA, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, CHIQUITA BROOKS-LASURE, AND CENTERS FOR MEDICARE AND MEDICAID SERVICES,** <br><br> **Defendants.** | Case No. 1:24-cv-02095-BAH |

**<u>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' RULE 59(e) MOTION TO ALTER OR AMEND THE JUDGMENT, OR
IN THE ALTERNATIVE, FOR AN INJUNCTION PENDING APPEAL</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................1

I.     The Court's Construction Of Subpart (B)(iii) Warrants Reconsideration ..........................2

        A.     The Court's Construction Departs From The Government's Own Interpretation Of The Statute And Would Necessitate The Removal Of Drugs From The ESRD PPS Bundle .......................................................2

        B.     The Court's Construction Should Have Led To A Different Result .......................8

II.    Only Plaintiffs' Construction Of Subpart (B)(iii) Can Be Harmonized With MIPPA's Text And Purpose, As Well As The Government's Own Past Practice ...........11

III.   At A Minimum, This Court Should Enjoin CMS From Adding Oral-Only Drugs To The Bundle During Appeal ...........................................................................14

CONCLUSION................................................................................................................15

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Ciralsky v. CIA*,
    355 F.3d 661 (D.C. Cir. 2004) ......................................................................................2

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*,
    No. 22-cv-3350, 2024 WL 4286031 (D.D.C. Sept. 25, 2024) ...................................2

*Feld v. Fireman's Fund Ins. Co.*,
    No. 12-cv-1789, 2020 WL 13610563 (D.D.C. May 15, 2020) ...................................1

*\*Financial Planning Ass'n v. S.E.C.*,
    482 F.3d 481 (D.C. Cir. 2007) ..................................................................................7, 8

*\*Liljeberg v. Health Services Acquisition Corp.*,
    486 U.S. 847 (1988) .....................................................................................................8

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024) ...............................................................................................10

*Protect Our Water v. Flowers*,
    377 F. Supp. 2d 882 (E.D. Cal. 2004) .......................................................................15

**STATUTES**

*\*42 U.S.C.
    § 1395rr .......................................................................................................................4
    § 1395rr(b)(14)(B)(ii) ...............................................................................................13
    § 1395rr(b)(14)(B)(iii) ...............................................1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14
    § 1395rr(b)(14)(B)(iv) ............................................................................................7, 8

American Taxpayer Relief Act of 2012, Pub. L. 112-240, 126 Stat. 2313 (2013) ......................10

**RULES**

Fed. R. Civ. P. 59(e) .......................................................................................................................1

Fed. R. Civ. P. 60(b) .......................................................................................................................8

**REGULATIONS**

42 C.F.R.
    § 413.171 ................................................................................................................9, 10
    § 413.174(f)(6) ...........................................................................................................10

74 Fed. Reg. 49,922 (Sept. 29, 2009) ..............................................................................6, 11

75 Fed. Reg. 49,030 (Aug. 12, 2010)..............................................................................10, 11

89 Fed. Reg. 89,084 (Nov. 12, 2024)...................................................................................6

## INTRODUCTION

This Court granted Defendants' motion to dismiss because it believed that oral-only drugs can fall within the scope of Congress's definition of "renal dialysis services" in 42 U.S.C. § 1395rr(b)(14)(B)(iii). Specifically, this Court interpreted 42 U.S.C. § 1395rr(b)(14)(B)(iii) to provide for the "inclusion of oral-only drugs paid for 'separately under this subchapter' prior to subparagraph (B) being applied, i.e., on January 1, 2025." Memorandum Op. ("Op.") at 24, Dkt. No. 22.

Respectfully, this Court should reconsider its interpretation of § 1395rr(b)(14)(B)(iii). Importantly, the Court's construction of subpart (B)(iii) is incompatible with even *the Government's own construction* and longstanding application of that provision, and would necessitate the *removal* from the ESRD PPS Bundle of numerous drugs that CMS has long treated as meeting the definition of "renal dialysis services." In addition, it would create inexplicable dividing lines between what is or is not a "renal dialysis service" that Congress could not possibly have intended—for instance, defining "renal dialysis services" to include oral-only drugs first marketed prior to January 1, 2025, but exclude oral-only drugs first marketed thereafter. Such results—which are incompatible with the statutory text, CMS's own view of subpart (B)(iii), and Congress's intent—would necessitate fundamental changes to the ESRD PPS Bundle, engender substantial confusion within the kidney-care community, and harm patients. For these reasons, Plaintiffs' motion for reconsideration should be granted. At a minimum, this Court should enjoin CMS from adding oral-only drugs, including XPHOZAH, to the bundle during appeal.

## ARGUMENT

"Rule 59(e) motions ... are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law." *Feld v. Fireman's Fund Ins. Co.*, No. 12-cv-1789,

2020 WL 13610563, at *3 (D.D.C. May 15, 2020) (citation omitted).  A court should grant a Rule 59(e) motion in the event of  "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, No. 22-cv-3350, 2024 WL 4286031, at *1 (D.D.C. Sept. 25, 2024) (quoting *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)).

Here, reconsideration is necessary to correct a clear error or prevent manifest injustice. The Court's construction of § 1395rr(b)(14)(B)(iii) is at odds with the government's own construction of the ESRD PPS Bundle, and would result in a checkerboard definition of "renal dialysis services" that does not accord with the statutory text, and could not have been Congress's intent.  Indeed, it would require the removal from the ESRD PPS Bundle of several existing ESRD drugs and impose substantial uncertainty on ESRD stakeholders, including manufacturers, providers, and patients.  *See* Pls.' Mot. for Prelim. Inj. ("PI Mot.") at 37-44, Dkt. No. 14. Reconsideration is warranted.

## I.    THE COURT'S CONSTRUCTION OF SUBPART (B)(iii) WARRANTS RECONSIDERATION

### A.    The Court's Construction Departs From The Government's Own Interpretation Of The Statute And Would Necessitate The Removal Of Drugs From The ESRD PPS Bundle

The Court's construction of 42 U.S.C. § 1395rr(b)(14)(B)(iii) is a stark departure from the government's own historic interpretation of the statute.  The Court divided subpart (B)(iii) into two parts.   It interpreted the first clause of subpart (B)(iii) to "move drugs in all forms that exist under a fee-for-service reimbursement system prior to 'application of this paragraph' into the bundle system."  Op. at 23.   The Court reasoned, however, that because the "*regulation* implementing subpart (B)(iii) … does not go into effect with respect to oral-only drugs until January 1, 2025," "'this paragraph' has not yet been applied to oral-only drugs."  *Id.* (emphasis

2

added).  On that basis, this Court concluded that oral-only drugs that currently exist and are separately reimbursed by CMS prior to January 1, 2025 may be "moved into the bundle."  *Id.* Under that reasoning, "this paragraph" has applied to injectable drugs and biologicals since January 1, 2011.  As a result, this Court's construction of the first clause of divided subpart (B)(iii) permits CMS to include in the ESRD PPS Bundle only injectable drugs and biologicals that existed and were separately reimbursed by CMS prior to January, 1, 2011.

The Court reasoned that the "first clause of subpart (B)(iii) says nothing … about drugs that only come into existence *after* 'application of this paragraph.'"  *Id.*  According to this Court, "[t]hat is where the second part of (B)(iii) does work."  *Id.*  In particular, the Court held that the second clause of (B)(iii) contemplates that "renal dialysis services" include "new, subsequently-developed oral versions of drugs, which were extant in a different form at the time (B)(iii) was applied and were moved into the bundle."  *Id.*  In the Court's view, therefore, subpart (B)(iii) directs the inclusion of new drugs that are "the oral equivalent form" of injectable drugs or biologicals that existed and were separately reimbursed by CMS prior to January 1, 2011.

The Court understood its construction of the statute to avoid creating a superfluity problem. *Id.*  In its view, the first part of subpart (B)(iii) provides for the inclusion of drugs that existed before "application of this paragraph," while the second part of subpart (B)(iii) addresses the inclusion of "drugs that only come into existence *after* 'application of this paragraph,' such that 'payment was' never 'made separately under this subchapter.'"  *Id.*

The upshot of the Court's interpretation of § 1395rr(b)(14)(B)(iii) is to create a complex patchwork quilt of what drugs can be included in the ESRD PPS Bundle as of January 1, 2025.

| | Drugs Approved[1] before Jan. 1, 2011 | Drugs Approved between Jan. 1, 2011 and Jan. 1, 2025 | Drugs Approved after Jan. 1, 2025 |
|---|---|---|---|
| **Injectable** | Yes, in the bundle | No, not in the bundle | No, not in the bundle |
| **Biological** | Yes, in the bundle | No, not in the bundle | No, not in the bundle |
| **Oral-Only** | Yes, in the bundle | Yes, in the bundle | No, not in the bundle |
| **Oral Equivalent Form of an Injectable / Biological Drug Approved Before Jan. 1, 2011** | Yes, in the bundle | Yes, in the bundle | Yes, in the bundle |
| **Oral Equivalent Form of an Injectable / Biological Drug Approved After Jan. 1, 2011** | N/A | No, not in the bundle | No, not in the bundle |

That result cannot be reconciled with Government's own construction and application of 42 U.S.C. § 1395rr—and would *exclude* many drugs that are currently in the bundle. For instance, under the Court's interpretation, CMS may only bring drugs into the bundle under the first clause of subpart (B)(iii) if CMS paid separately for those specific drugs under a fee-for-service reimbursement system prior to the application of the paragraph. But "the paragraph" indisputably

---

[1] Under the Court's definition, the dividing line technically turns not on the date of approval, but on whether CMS *paid* separately under Medicare Part B or D for a given drug prior to January 1, 2011 (or in the case of oral-only drugs, January 1, 2025). Because that roughly corresponds to when the drug was approved, the table above speaks in terms of the date of approval for ease of comprehension.

applied to injectable drugs and biologicals as of January 1, 2011. As a result, the Court's interpretation would *exclude* from the definition of renal dialysis services in subpart (B)(iii) all injectable drugs or biologicals approved by the FDA after January 1, 2011.

CMS, however, currently includes in the bundle multiple injectable drugs that were first approved for use by the FDA *after* 2011 and for which CMS never paid separately under a fee-for-service system. Take, for example, Parsabiv and Korsuva. Those injectable drugs were first approved by the FDA in 2017 and 2021, respectively. *See* NDA 208325, Letter from Curtis J. Rosenbraugh, M.D., M.P.H., FDA, to Juliana Sholter, KAI Pharmaceuticals, Inc., (February 7, 2017)[2]; NDA 214916, Letter from Julie Beitz, M.D., FDA, to Edward Liao, Cara Therapeutics, Inc. (August 23, 2021).[3] Therefore, under the Court's interpretation, they would not fall under the first clause of subpart (B)(iii). And because they are injectable drugs, rather than the "oral equivalent form" of another drug, they would not fall under the second clause of subpart (B)(iii) either. Accordingly, under the Court's interpretation, CMS incorrectly included those injectable drugs in the bundle.

In addition, the court's interpretation of subpart (B)(iii) is irreconcilable with CMS's treatment of Sensipar, an oral calcimimetic first approved in 2004. Following MIPPA, CMS initially excluded Sensipar from the ESRD PPS bundle because Sensipar was an oral-only drug. When an injectable calcimimetic was approved in 2017, however, CMS concluded that Sensipar was now the oral equivalent form of an injectable treatment for ESRD and included it within the

---

[2] Available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2017/208325Orig1s000ltr.pdf.

[3] Available at
https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2021/214916Orig1s000ltr.pdf.

ESRD PPS Bundle beginning in January 2018.[4]  Under this Court's construction of subpart (B)(iii),

that too was error.  According to the Court, the second part of subpart (B)(iii), addressing "oral

equivalent form[s]," reaches only "new, *subsequently-developed* oral versions of drugs, *which*

*were extant in a different form at the time (B)(iii) was applied and were moved into the bundle*."

Op. at 23 (emphasis added).  Because the injectable analog of Sensipar was developed later than

the oral form, and the oral form was not "extant in a different form at the time (B)(iii) was applied

and [was] moved into the bundle," Sensipar should not have qualified.  *Id.*

      Moreover, the Court's construction would—counterintuitively—include in the bundle

oral-only drugs that exist today, while excluding from the bundle all oral-only drugs approved by

the FDA *after* January 1, 2025.  Again, that is because they would not fall under the first clause

(because they would not have been paid for separately prior to the application of the paragraph

under the Court's interpretation), and they would not fall under the second clause (because they

are not, in the Court's terms, "subsequently-developed oral versions of drugs, which were extant

in a different form at the time (B)(iii) was applied and were moved into the bundle," *id.*).  That too

conflicts with the construction of subpart (B)(iii) CMS long ago adopted.  *See* 74 Fed. Reg. 49,922,

49,928 (Sept. 29, 2009) (rejecting interpretation of subpart (B)(iii) that would exclude "*new* oral-

only drugs and biologicals for the treatment of ESRD [as they] emerge") (emphasis added).

      In summary, the Court's construction of subpart (B)(iii) is significantly at odds with CMS's

own historical construction of that provision.  As subpart (B)(iii) has been interpreted by this Court,

CMS may add new treatments to the ESRD PPS Bundle after January 1, 2025 only when they are

the "oral equivalent form" of an injectable drug or biological for which separate payment was

---

[4] *See* 89 Fed. Reg. 89,084, 89,148 (Nov. 12, 2024) (noting that Sensipar was reimbursable only
under Medicare Part D before 2018).

made prior to January 1, 2011.  CMS would also need to remove from the bundle injectable and biological drugs approved after January 1, 2011.  And CMS could not add to the bundle any oral-only drugs newly launched after January 1, 2025.   There is no conceivable reason why Congress would have intended to legislate that confusing patchwork, which is totally at odds with the purposes underlying MIPPA.  *See infra* at 11-12.

The consequences of this Court's construction of subpart (B)(iii) cannot be avoided by embracing the government's fallback position that *all* ESRD drugs may be swept into the bundle by virtue of subpart (B)(iv), which addresses "diagnostic laboratory tests and *other items and services* not described in *clause (i)* that are furnished to individuals for the treatment of end stage renal disease."  42 U.S.C. § 1395rr(b)(14)(B)(iv) (emphasis added).  As Plaintiffs have argued, subpart (B)(iv) cannot be read to encompass all drugs for the treatment of ESRD not incorporated by *clause (i)* because that would render clauses (ii) and (iii) wholly superfluous.  PI Mot. at 26-30. It would also negate Congress' choice—under this Court's construction of subpart (B)(iii)—to make nuanced decisions about the kinds of drugs that qualify as "renal dialysis services" under subpart (B)(iii).  *See supra* at 4 (Table).  Indeed, it would have been nonsensical for Congress to create the complex patchwork of rules this Court has endorsed for when drugs qualify as "renal dialysis services" under subpart (B)(iii), if *all* drugs for the treatment of ESRD qualify as "renal dialysis services" under subpart (B)(iv).

D.C. Circuit and Supreme Court precedent reinforce that subpart (B)(iv) cannot be read in that counterintuitive manner.  In *Financial Planning Ass'n v. S.E.C.*, for instance, the D.C. Circuit interpreted the Investment Advisers Act.  482 F.3d 481, 490-91 (D.C. Cir. 2007).  Pursuant to that statute, Congress defined an "investment advisor" to exclude six categories of persons, including (C) certain specified types of "broker[s] or dealer[s]" and (F) "such other persons not within the

intent of this paragraph, as the [Securities and Exchange Commission ("SEC")] may designate." *Id.* at 484 (citation omitted). The D.C. Circuit rejected the SEC's attempt to use subpart (F) to expand on the types of brokers or dealers exempted from the definition of "investment advisor." As the court explained, subpart (F) could not be construed to allow the SEC to "redefine or *otherwise avoid specific requirements in* [*the*] *existing statutory exceptions*." *Id.* at 489 (emphasis added). Similarly, in *Liljeberg v. Health Services Acquisition Corp.*, the Supreme Court noted that where Federal Rule of Civil Procedure 60(b) contained five explicit grounds for relief from final judgments, and one non-specific "any other reason" clause, the structure of the clauses suggested that the final clause could not be used to elude or enlarge the first five—that "clause (6) and clauses (1) through (5) are mutually exclusive." 486 U.S. 847, 864 n.11 (1988). As the Court recognized, interpreting Rule 60(b) in any other manner would "circumvent" the clear line-drawing done by other parts of the Rule. *Id.* So too here.

In summary, this Court's construction of subpart (B)(iii) would result in a patchwork definition of "renal dialysis services" that cannot be reconciled with the government's own construction of that provision and would profoundly disrupt the ESRD PPS Bundle. The government cannot avoid that result by adopting an untenably broad definition of subpart (B)(iv) that violates settled principles of statutory construction and binding precedent. As such, this Court's construction of § 1395rr(b)(14)(B)(iii) should be reconsidered.

**B.    The Court's Construction Should Have Led To A Different Result**

Even assuming this Court's construction of subpart (B)(iii) was correct, and Congress intended to exclude from its scope any individual, non-oral-equivalent drugs approved after the application of subpart (B)(iii) (which, as Plaintiffs explain further below, it did not), that reasoning should have led this Court to grant Plaintiffs' requested relief with respect to XPHOZAH.

8

If the Court is right to conclude that the statutory definition of "renal dialysis services" in the first clause of subpart (B)(iii) includes oral-only drugs, then subpart (B)(iii) has defined "renal dialysis services" to include oral-only drugs from the moment MIPPA took effect—in January 2011. Were that the case, under this Court's reading of subpart (B)(iii), the definition of "renal dialysis services" should *exclude* XPHOZAH, a drug for which CMS did not make payment "before the application of this paragraph"—*i.e.*, January 2011.

The Court reached a different result by reasoning that "the application of this paragraph" to oral-only drugs should be construed to mean January 1, 2025—when CMS's *regulation* adding oral-only drugs to the bundle will go into effect. That approach is unsustainable, however. There is no dispute that subpart (B)(iii) took effect in January 2011. "[B]efore the application of this paragraph" therefore unambiguously refers to the time before January 2011—the time before MIPPA took effect. The statute does not speak in terms of a time before "the application of this paragraph *to a particular drug*" but simply a time before "the application of this paragraph." In any event, it is inaccurate to state that "this paragraph" does not apply to oral-only drugs today, or will not apply until January 1, 2025.[5] To the contrary, CMS applies the definition to *all* drugs in order to evaluate whether they meet the statutory requirements of a renal dialysis service.[6] Oral-

---

[5] To the extent this Court understood Plaintiffs to agree that "paragraph 14 [of § 1395rr(b)] will not be applied to oral-only drugs until January 1, 2025," Op. at 23 n.6, it misunderstood Plaintiffs' position. Plaintiffs argue that Congress has delayed "*CMS's plan* to place oral-only drugs into the bundled payment system," and that CMS has updated its *regulations* to reflect those developments. PI Mot. at 14 (emphasis added). Plaintiffs do not agree that the time "before the application of this paragraph," in § 1395rr(b)(14)(B)(iii), can be read to refer to the time before January 1, 2025.

[6] For instance, on May 13, 2024—a date before January 1, 2025—CMS informed Ardelyx that "CMS has identified XPHOZAH *to be* a renal dialysis service under 42 CFR 413.171." Dkt. 14-11 (emphasis added). As this Court has acknowledged, CMS uses 42 C.F.R. § 413.171 to apply the statutory definition in 42 U.S.C. § 1395rr(b)(14)(B). Op. at 6; *compare* 42 C.F.R.

only drugs are excluded from the bundle not because CMS has concluded that subpart (B)(iii) of MIPPA is inapplicable as a statutory matter until January 1, 2025, but because CMS has provided *by regulation*, that oral-only drugs shall not enter the prospective payment system until 2025. *See* 42 C.F.R. § 413.174(f)(6).[7]

In any event, the agency has no power to alter the date on which occurred "the application of this paragraph" in subpart (B)(iii). As the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo* made clear, there is no statutory gap in subpart (B)(iii) for the agency to fill. 144 S. Ct. 2244, 2273 (2024). Either the first clause of subpart (B)(iii) applied to oral-only drugs when it took effect in 2011, or it did not. The date of the paragraph's application cannot be made to depend on CMS's subsequent rulemaking.[8]

Thus, even taking the Court's interpretation on its own terms, XPHOZAH should not be part of the bundle because XPHOZAH was not marketed and sold as of January 2011. Therefore, the Court's interpretation of subpart (B)(iii) does not indicate that the Court lacks jurisdiction over

---

§ 413.171(3), *with* 42 U.S.C. § 1395rr(b)(14)(B)(iii) (different only in that CMS's regulatory definition expands the statutory definition to include oral-only drugs).

[7] As an original matter, CMS itself adopted a regulation providing that oral-only drugs shall be incorporated into the bundle, but not until January 1, 2014. 75 Fed. Reg. 49,030, 49,038 (Aug. 12, 2010). Congress, in turn, has delayed the date on which CMS's *policy* to incorporate oral-only drugs into the bundle will take effect. *See, e.g.*, American Taxpayer Relief Act of 2012, Pub. L. 112-240, sec. 632(b), § 1881(b), 126 Stat. 2313, 2354 (2013) ("The Secretary of Health and Human Services may not *implement the **policy** under section **413.174(f)(6) of title 42, Code of Federal Regulations** (relating to oral-only ESRD-related drugs in the ESRD prospective payment system*), prior to January 1, 2016.") (emphasis added). None of those congressional enactments, however, have purported to amend MIPPA or alter the date of subpart (B)(iii)'s application.

[8] Indeed, CMS's own regulation appears to recognize as much, providing that renal dialysis services include "[o]ther drugs and biologicals that are furnished to individuals for the treatment of ESRD and for which payment was *(prior to January 1, 2011)* made separately under Title XVIII of the Act (*including drugs and biologicals with only an oral form*) . . . ." 42 C.F.R. § 413.171(3) (emphasis added).

10

this challenge, and instead shows that CMS lacks statutory authority to incorporate XPHOZAH into the bundle.

## II.    ONLY PLAINTIFFS' CONSTRUCTION OF SUBPART (B)(iii) CAN BE HARMONIZED WITH MIPPA'S TEXT AND PURPOSE, AS WELL AS THE GOVERNMENT'S OWN PAST PRACTICE

As explained above, the Court's construction of subpart (B)(iii) would result in a complex collage of what drugs qualify as "renal dialysis services."  Moreover, by excluding from the definition of subpart (B)(iii) all non-oral drugs that enter the market after January 1, 2011, and all but a handful of new drugs that enter the market after January 1, 2025, the Court's definition of subpart (B)(iii) would frustrate CMS's goal to *prevent* "the gradual growth of excluded [drugs] from the ESRD PPS payment bundle."  74 Fed. Reg. at 49,928.

This Court need not accept those results.  Plaintiffs' construction of MIPPA continues to offer the only convincing way to attend to MIPPA's purpose and text, while avoiding the practical problems with the Court's interpretation discussed above.

As all parties agree, MIPPA was designed to promote the cost-effective provision of renal dialysis services by dialysis facilities.  When MIPPA was enacted, however, drugs and biologics furnished to patients by dialysis facilities for the treatment of ESRD were generally administered intravenously or by injection during dialysis, not orally.  *See* PI Mot. at 7-8, 10-11.  Thus, the inclusion of oral-only drugs would not have advanced Congress's goals of deterring dialysis facilities from "overus[ing] [then-]profitable separately billable drugs" or of promoting "operational efficiency" at such facilities.  75 Fed. Reg. at 49,032.  So it would have made little sense to define "renal dialysis services" to encompass oral-only drugs neither provided by dialysis

facilities, nor administered as part of renal dialysis services.[9]

By the same token, it would have made little sense for Congress to define subpart (B)(iii) as this Court has done: namely, to encompass all injectable drugs and biological drugs for which CMS made payment separately before January 1, 2011, but *no* such drugs after January 1, 2011. That would lead to the gradual erosion of the ESRD PPS system, by creating significant financial incentives for dialysis facilities to prioritize the use of new post-2011 injectable or intravenous treatments outside the bundle—exacerbating, rather than ameliorating, the cost-efficiency concerns underlying MIPPA in the first place. Neither party—not Defendants, nor Plaintiffs— thinks Congress intended that result.

There is a far better and more straightforward way to read subpart (B)(iii). Congress intended to promote operational efficiency at dialysis facilities by incorporating into the definition of "renal dialysis services" the kinds of drugs that were then employed at those dialysis facilities: *i.e.* injectable drugs and biologicals (or their equivalents). Accordingly, subpart (B)(iii) should be read to include *all* injectable and biological drugs (other than those in clause i or ii) which are furnished to individuals for the treatment of end stage renal disease—as well as any oral equivalent forms of *those* injectable and biological drugs. *See* PI Mot. at 23; Pls.' Reply in Supp. of Mot. for Prelim. Inj. ("Reply") at 9-10, Dkt. No. 20.

Subpart (B)(iii)'s text comports with that more intuitive reading. Subpart (B)(iii) defines "renal dialysis services" to include "other drugs and biologicals that are furnished to individuals for the treatment of end stage renal disease and *for which payment was* (*before the application of*

---

[9] By contrast, extending the bundled payment to encompass the "oral equivalent form" of an injectable drug or biological administered by a dialysis facility during renal dialysis serves MIPPA's purpose by facilitating the use of generally less expensive oral equivalents to drugs that a dialysis facility would otherwise administer during dialysis.

*this paragraph) made separately under this subchapter*."   42 U.S.C. § 1395rr(b)(14)(B)(iii) (emphasis added). The italicized language, in Plaintiffs' view, simply provides for the inclusion of *types* of drugs for which payment was made separately under the *system* that existed prior to MIPPA (*i.e.* the payment system that existed "before the application of this paragraph").   Since injectable and biological drugs were paid for separately under the prior system, they are covered by the first clause.  Properly understood, therefore, the first clause of subpart (B)(iii) includes all injectable drugs and biologicals outside of the composite rate system, whenever first marketed— because the system provided for separate payment of such drugs before the application of MIPPA. The second clause of subpart (B)(iii), by extension, extends the definition of "renal dialysis services" to cover the oral equivalent forms of all injectable drugs and biologicals outside the composite rate system, rather than only some fraction thereof.

Although the first clause of subpart (B)(iii) includes injectable drugs and biologicals, it necessarily *excludes* oral-only drugs.  *See* PI Mot. at 2-3, 22-23; Reply at 9-10.  That follows from the fact that subpart (B)(iii) applies to "drugs and biologicals … *and any oral equivalent form of such drug or biological*."   42 U.S.C. § 1395rr(b)(14)(B)(iii) (emphasis added).  If "drugs and biologicals" included orally administered drugs, the italicized text would make no sense and be wholly unnecessary.  Under that interpretation, subpart (B)(iii) would read: "oral drugs … and any oral equivalent form of such drugs"—a nonsensical sentence.  Thus, oral drugs must be excluded from the first clause of subpart (B)(iii).[10]  And, as Plaintiffs have explained, *see, e.g.*, PI Mot. at

---

[10] Plaintiffs' reading also aligns the definition of subpart (B)(iii) with subpart (B)(ii), which defines "renal dialysis services" to include "erythropoiesis stimulating agents *and any oral form of such agents*."  42 U.S.C. § 1395rr(b)(14)(B)(ii) (emphasis added).  That complete phrasing makes sense only if the phrase "erythropoiesis stimulating agents" is understood not to include oral forms, even though the words standing alone could be construed to include them absent the language that follows.  So too with subpart (B)(iii).

23, that result aligns with the fact that dialysis facilities did not administer oral-only drugs as part of their renal dialysis services.

Reading the statute in the manner for which Plaintiffs have advocated produces a far more straightforward and intuitive result, which better accords with the government's past practice:

| | Approved before Jan. 1, 2011 | Approved between Jan. 1, 2011 and Jan. 1, 2025 | Approved after Jan. 1, 2025 |
|---|---|---|---|
| **Injectable** | Yes, in the bundle | Yes, in the bundle | Yes, in the bundle |
| **Biological** | Yes, in the bundle | Yes, in the bundle | Yes, in the bundle |
| **Oral-Only** | No, not in the bundle | No, not in the bundle | No, not in the bundle |
| **Oral Equivalent of an Injectable / Biological Drug** | Yes, in the bundle | Yes, in the bundle | Yes, in the bundle |

Unlike the Court's construction of subpart (B)(iii), Plaintiffs' construction would not require CMS to withdraw drugs from the ESRD PPS bundle that are currently included, nor would it hamstring CMS from including future injectable drugs or biologicals in the bundle. Rather, it would just exclude oral-only drugs, a result which is entirely consistent with MIPPA's text, as well as its purpose to promote operational efficiencies within dialysis facilities.

Accordingly, the Court should grant reconsideration and amend its judgment to deny the Government's motion to dismiss and grant Plaintiffs' motion for a preliminary injunction or expedited summary judgment.

## III. AT A MINIMUM, THIS COURT SHOULD ENJOIN CMS FROM ADDING ORAL-ONLY DRUGS TO THE BUNDLE DURING APPEAL

If this Court is disinclined to grant this motion, Plaintiffs respectfully request that this Court, at minimum, enjoin CMS from adding oral-only drugs, including XPHOZAH, to the ESRD

PPS Bundle pending appeal.  As the instant motion underscores, the Court's construction of §1395rr(b)(14)(B)(iii) would substantially disrupt the ESRD PPS bundle, and create deep uncertainty for providers and patients.  Moreover, Plaintiffs' motion demonstrates—at minimum—that serious questions can be raised regarding the merits of this Court's decision.  *See also* PI Mot. at 20-37.  In such cases "[a]n injunction is 'frequently issued where the trial court is charting a new and unexplored ground and the court determines that a novel interpretation of the law may succumb to appellate review.'"  *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004).  Absent an injunction, moreover, Plaintiffs and patients will suffer irreparable harm because inclusion of oral-only drugs in the bundle will diminish patients' access to XPHOZAH and other oral-only drugs and will precipitate worse health outcomes.  *See* PI Mot. at 37-44.

## CONCLUSION

For these reasons, Plaintiffs' motion to alter or amend the judgment should be granted.  In the alternative, Plaintiffs respectfully request that this Court enjoin CMS from including oral-only drugs, including XPHOZAH, in the bundle pending appeal.

Dated:  November 20, 2024

Respectfully submitted,

*/s/ Michael E. Bern*
Michael E. Bern  (DC Bar No. 994791)
Christine C. Smith (DC Bar No. 1658087)
Delia Tasky (DC Bar No. DC Bar No. 1724285)
Alexander G. Siemers (DC Bar No. 900067465)
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email:   michael.bern@lw.com
          christine.smith@lw.com
          alex.siemers@lw.com
          delia.tasky@lw.com

Nicholas L. Schlossman
(DC Bar No. 1029362)
Latham & Watkins LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (737) 910-7300
Fax: (737) 910-7301
Email:   nicholas.schlossman@lw.com

*Attorneys for Plaintiffs Ardelyx, Inc.,*
*American Association of Kidney Patients*

James E. McCollum, Jr. (DC Bar. No. 398117)
Amit K. Sharma (D.C. Bar No. 503604)
The McCollum Firm, LLC
7309 Baltimore Avenue, Suite 117
College Park, MD 20740
Tel: (301) 537-0661
Fax: (301) 864-4351
Email:    jmccollum@jmlaw.net
          asharma@jmlaw.net

*Attorneys for Plaintiff National Minority*
*Quality Forum*

16