UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARDELYX, INC., et al.,<br><br>                Plaintiffs,<br><br>     v.<br><br>XAVIER BECERRA,<br>Secretary of Health and Human Services, et al.,<br><br>            Defendants. | Civil Action No. 24-2095 (BAH) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' RULE 59(e) MOTION TO ALTER OR
AMEND THE JUDGMENT, OR IN THE ALTERNATIVE,
<u>FOR AN INJUNCTION PENDING APPEAL</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW ................................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    I.    The Court's Construction of the Definitional Subparagraph (B) is Consistent with Agency Practice and Would Not Require Any Alterations to the Drugs Included in the Prospective Payment System Bundle ................................................................................................ 4

    II.    This Court Already Has Rejected Plaintiffs' Proffered Construction of the Definitional Subparagraph (B) and Plaintiffs Offer No Grounds for Reconsideration.......................... 14

    III.    Plaintiffs Cannot Obtain an Injunction Pending Appeal Before Noticing an Appeal, and They Have Not Shown Entitlement to Injunctive Relief .................................................... 15

CONCLUSION .................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                           **Page(s)**

*Alcresta Therapeutics, Inc. v. Azar*,
   318 F. Supp. 3d 321 (D.D.C. 2018) ...................................................................... 18
*Amgen, Inc. v. Smith*,
   357 F.3d 103 (D.C. Cir. 2004) ............................................................................. 11
*Ciralsky v. CIA*,
   355 F.3d 661 (D.C. Cir. 2004) ............................................................................... 2
*Clevinger v. Advoc. Holdings, Inc.*, Civ. A.,
   No. 23-1159 (JMC), 2023 WL 5220570 (D.D.C. Aug. 15, 2023) ............................ 2, 14, 15, 17
*Cobell v. Jewell*,
   802 F.3d 12 (D.C. Cir. 2015) .................................................................................. 1
*Kattan v. District of Columbia*,
   995 F.2d 274 (D.C. Cir. 1993) ................................................................................ 3
*Leidos, Inc. v. Hellenic Republic*,
   881 F.3d 213 (D.D.C. 2018)................................................................................. 16
*Lightfoot v. District of Columbia*,
   355 F. Supp. 2d 414 (D.D.C. 2005) ...................................................................... 15
*New York v. United States*,
   880 F. Supp. 37 (D.D.C. 1995) .......................................................................... 2, 14
*Niedermeier v. Off. of Baucus*,
   153 F. Supp. 2d 23 (D.D.C. 2001) ............................................................... 1, 6, 14, 15
*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................................... 18
*U.S. Bank, N.A. ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*,
   583 U.S. 387 (2018) ........................................................................................... 15

**Statutes**

42 U.S.C. § 1395rr ........................................................................................ 5, 6, 9, 12
42 U.S.C. § 1395rr(b)(14)......................................................................................... 3
Pub. L. 113-93............................................................................................................ 6

**Rules**

Fed. R. Civ. P. 59(e) ................................................................................................. 1
Federal Rule of Civil Procedure 62(d)...................................................................... 18

**Regulations**

42 C.F.R. § 413.171 ................................................................................................. 8
42 C.F.R. § 413.171(3) .................................................................................. 3, 5, 11, 12
42 C.F.R. § 413.234 ............................................................................................ 10, 11
42 C.F.R. § 413.234(a)........................................................................................... 7, 8
42 C.F.R. § 413.234(b)(1) (2016) ............................................................................. 8

42 C.F.R. § 413.234(d) ................................................................................................... 9

42 C.F.R. §§ 413.234(a), (b) (2016) ............................................................................... 7

C.F.R. § 413.234(d) ......................................................................................................... 7

## Other Authorities

80 Fed. Reg. .................................................................................................................... 7

83 Fed. Reg. .................................................................................................................... 7

87 Fed. Reg. 67 ............................................................................................................... 7

Defendants respectfully submit this Opposition to Plaintiffs' Rule 59(e) Motion (ECF No. 23, "Motion to Reconsider").

## INTRODUCTION

The Motion to Reconsider does not identify new evidence or an intervening change in controlling law. It claims that the Court committed "clear error" and a "manifest injustice" in its Memorandum Opinion (ECF No. 22, "Mem. Op.") dismissing their Complaint, yet the Motion conspicuously fails even to describe how courts in this District construe and apply those standards. And the Motion's principal underlying claim—that the Court's construction of the statute describing what the End-Stage Renal Disease bundle "includes" results in the omission of certain categories of drugs deemed by the Centers for Medicare & Medicaid Services ("CMS") to be in the bundle—ignores a statute and regulation that address their putative concerns. Reconsideration is unwarranted and should be denied.

## STANDARD OF REVIEW

"Rule 59(e), understandably, sets a high threshold for parties to raise a new argument for the first time after judgment has already been entered." *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (citations omitted). "Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (cleaned up). "Rule 59(e) motions are not intended to be 'an opportunity to reargue facts and theories upon which a court has already ruled.'" *Clevinger v. Advoc. Holdings, Inc.*, Civ. A. No. 23-1159 (JMC),

2023 WL 5220570, at *1 (D.D.C. Aug. 15, 2023) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)).  "It is also not an opportunity for the losing party to argue new issues that could have been raised earlier."  *Id.* (citing *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993)).

## ARGUMENT

The Court granted Defendants' Motion to Dismiss, concluding that "subparagraph (G) of 42 U.S.C. § 1395rr(b)(14) precludes the exercise of jurisdiction to review the agency's classification of certain oral-only drugs as 'renal dialysis services' and its decision to identify XPHOZAH as qualifying for such classification."  Mem. Op. (ECF No. 22) at 2.  The Motion for Reconsideration fails to acknowledge this procedural posture, repeatedly insisting that the court's Memorandum Opinion construes 42 U.S.C. § 1395rr(b)(14)(B) to "create a complex patchwork quilt of what drugs can be included in the [End Stage Renal Disease Prospective Payment System] Bundle as of January 1, 2025."  Mot. to Reconsider (ECF No. 23) at 3.  This ignores the Court's extensive discussion of the relationship between the "definitional subparagraph (B)" and the "preclusion subparagraph (G)," *see* Mem. Op. at 14-19, and its conclusion that D.C. Circuit precedent requires the district court to "confirm that the agency's action is statutorily authorized."  Plaintiffs' oversight is fatal to its argument, because the Court concluded that it lacked jurisdiction—due to the operation of preclusion subparagraph (G)—over 1) "the regulatory determination, 42 C.F.R. § 413.171(3), that oral-only renal dialysis drugs for which payment was made separately prior to January 2011 are included in the bundle," and 2) "the decision to include XPHOZAH in the bundle, per the XPHOZAH Letter-Decision."  Mem. Op. (ECF No. 22) at 2. The Court did not need to—and appropriately did not—conclusively resolve the scope of the

definitional subparagraph (B) to conclude that the preclusion subparagraph (G) bars Plaintiffs' challenge.

Nor did it address (because Plaintiffs did not challenge them) other regulations, promulgated after Congress directed the agency to do so, that fully resolve Plaintiffs' putative concerns about a "patchwork quilt." Plaintiffs also omit the full statutory context in arguing that the Court should have deemed XPHOZAH excluded from the bundle based on their preferred construction of the phrase "before the application of this paragraph" in 42 U.S.C. § 1395rr(b)(14)(B).

Reconsideration thus is unwarranted; the Court's Memorandum Opinion does not disrupt the government's existing construction of the statute. This would be true even under an ordinary standard of review (i.e., had Plaintiffs raised these arguments—as they could have—during the original briefing). But Plaintiffs do not even try to apply the "clear error" or "manifest injustice" standard to their arguments, and in all events, they have failed to make the required showings.

Plaintiffs' remaining arguments likewise fail. Their argument that their preferred construction of the statute is the only one that works is an explicit rehashing of arguments previously made and rejected. And Plaintiffs request an "injunction pending appeal" despite having noticed no appeal. Even if this were not alone sufficient to reject their request, it is unclear what it would mean for this Court to "enjoin pending appeal" an order dismissing a Complaint for lack of jurisdiction. The relief that Plaintiffs actually seek—an order either preliminarily or permanently enjoining the government from including XPHOZAH in the bundle—should not issue even if this Court grants their motion to reconsider its jurisdictional ruling, for the reasons Defendants already articulated in their Opposition to Plaintiffs' Motion for a Preliminary Injunction. In sum, this Court should deny the Motion to Reconsider in its entirety.

I.    **The Court's Construction of the Definitional Subparagraph (B) is Consistent with Agency Practice and Would Not Require Any Alterations to the Drugs Included in the Prospective Payment System Bundle**

Much of Plaintiffs' Motion to Reconsider rests on the mistaken premise that the Court's Memorandum Opinion would require removing from the End-Stage Renal Disease prospective payment system bundle drugs that are already included in that bundle.  This argument cannot sustain Plaintiffs' request for reconsideration.  Plaintiffs' argument simply ignores Section 217(c) of the Protecting Access to Medicare Act of 2014 (codified at 42 U.S.C. § 1395rr note) and the regulations CMS promulgated as instructed by that law.  It also ignores key elements of the Court's holding, which does not purport to describe conclusively the scope of the bundle, consistent with its application of preclusion subparagraph (G) to Plaintiffs' challenge.  And it identifies neither "clear error" nor "manifest injustice" in the District Court's memorandum opinion.

A.    **Plaintiffs' Purported Concerns About a "Patchwork Quilt" Are a Red Herring Because Other Statutory and Regulatory Provisions Ensure Inclusion in the Bundle of the Drugs They Say Would Be Excluded by the Court's Interpretation**

This Court has already held that the "text and structure of definitional subparagraph (B) make clear that this provision does not purport to provide an exhaustive universe or offer a comprehensive set of 'renal dialysis services.'"  Mem. Op. (ECF No. 22) at 21.  Consistent with that holding, the Court determined whether preclusion subparagraph (G) bars judicial consideration of Plaintiffs' challenges to one regulatory provision (42 C.F.R. § 413.171(3)) and to the Letter-Decision including XPHOZAH in the bundle.  *See id.* at 28 ("In short, the best reading of definitional subparagraph (B), based on the text and structure, and confirmed by MIPPA's history and purpose, is that 'renal dialysis services' includes oral-only drugs paid for separately before 2025, like XPHOZAH.").  There is no basis to conclude from this language or from anything else in the Court's Memorandum Opinion—and Plaintiffs notably fail to cite any such

language—that the Court's holding about what the bundle "includes" should be read as excluding other drugs not addressed by Plaintiffs' challenge. Indeed, statutes and regulations unaddressed by Plaintiffs in their Complaint and briefing resolve Plaintiffs' present concerns by clearly including in the bundle the drugs Plaintiffs say would be excluded.

As part of the Protecting Access to Medicare Act of 2014, Pub. L. 113-93, § 217(c), Congress instructed the Secretary to "establish a process for (1) determining when a product is no longer an oral-only drug; and (2) including new injectable and intravenous products into the bundled payment under [the Medicare end stage renal disease prospective payment system]." *See* 42 U.S.C. § 1395rr note (codifying section 217(c)). CMS did so via a Final Rule published in the Federal Register on November 6, 2015. 80 Fed. Reg. 68,968, 69013-24 (Nov. 6, 2015); *see* Opp'n to Mot. for Prelim. Inj. (ECF No. 16, "PI Opp'n") at 5 (discussing drug designation process). While the current version of the regulation defines a "new renal dialysis drug or biological product" as having been approved by the Food and Drug Administration on or after January 1, 2020, *see* 42 C.F.R. § 413.234(a), the regulation as promulgated was effective January 1, 2016, and the definition of "new injectable or intravenous product" originally promulgated did not include a date restriction, 42 C.F.R. §§ 413.234(a), (b) (2016). *See also* 83 Fed. Reg. 56,922, 56,927–32 (Nov. 14, 2018) (applying drug designation process to all new renal dialysis drugs and biological products); 87 Fed. Reg. 67,136, 67,182–191 (Nov. 7, 2022) (further revising and clarifying regulation). Since CMS promulgated the regulation, subsection (d) has read: "An oral-only drug is no longer considered oral-only if an injectable or other form of administration of the oral-only drug is approved by the Food and Drug Administration." 42 C.F.R. § 413.234(d).

Plaintiffs identify three specific drugs that, they say, would need to be removed from the bundle under the Court's interpretation of the definitional subparagraph (B). More generally, they

argue that the Court's interpretation of subpart (B)(iii) implies that injectable drugs and biologicals approved after January 1, 2011 must be excluded from the bundle.  *See* Mot. to Reconsider (ECF No. 23) at 5-6.  They also say that oral-only drugs approved in the future for the treatment of End-Stage Renal Disease would not be in the bundle.  *Id.* at 6.  Plaintiffs are wrong in each case—each is (or will be) properly in the bundle under regulations that Plaintiffs do not acknowledge, much less challenge, that CMS promulgated in compliance with Congress's instructions in the Protecting Access to Medicare Act.

Start with Parsabiv and Korsuva, two injectable drugs approved after January 1, 2016.  *See* Mot. to Reconsider (ECF No. 23) at 5.  Parsabiv, an intravenous calcimimetic, entered the bundle by operation of 42 C.F.R. § 413.234(b)(1) (2016).  It satisfied the then-operative regulatory definition of "[n]ew injectable or intravenous product," *see* 42 C.F.R. § 413.234(a) (2016) because the FDA approved it under section 505 of the Food, Drug, and Cosmetic Act, *see* Mot. to Reconsider (ECF No. 23) at 5 n.2, and CMS designated it a renal dialysis service under 42 C.F.R. § 413.171.  Calcimimetics, like phosphate binders, are part of the "Bone and Mineral Metabolism" functional category.  *See* 80 Fed. Reg. at 69,015.  And, for avoidance of any doubt, the regulation CMS used to add Parsabiv to the bundle was promulgated following Congress's instruction to "establish a process for . . . including new injectable and intravenous products into the bundled payment."  42 U.S.C. § 1395rr note.  Contrary to Plaintiffs' insistence that "CMS would also need to remove from the bundle injectable and biological drugs approved after January 1, 2011," Mot. to Reconsider (ECF No. 23) at 7, Congress instructed CMS to establish a process for including such drugs in the bundle.

Korsuva entered the bundle through a similar route as Parsabiv.  The FDA approved it after January 1, 2020, so the current version of section 413.234(b) applies, rather than the former

version.  *See* Mot. to Reconsider (ECF No. 23) at 5 n.3.  Korsuva is an injectable antipruritic, a different functional category from bone and mineral metabolism drugs.  *See* 80 Fed. Reg. at 69015.  But there is no doubt that the same logic applies to Korsuva as to Parsabiv: Congress told CMS to establish a process for adding appropriate drugs to the bundled payment, CMS did so through notice-and-comment rulemaking, and the drugs Plaintiffs identify properly entered the bundle through application of those regulations (which Plaintiffs do not challenge).

The story with Sensipar is also similar.  In the same statute that instructed CMS to establish a process for adding new injectable and intravenous products to the bundle, Congress told CMS to "establish a process for . . . determining when a product is no longer an oral-only drug."  CMS did so in the same 2015 rulemaking discussed above.  *See* 42 C.F.R. § 413.234(d); 80 Fed. Reg. at 69,027 ("We are also finalizing our process at 42 CFR 413.234(d) for determining that an oral only drug is no longer considered oral-only when a non-oral version of the oral-only drug is approved by the FDA.").  Consistent with that process, when the first intravenous calcimimetic (Parsabiv, *see supra*) received FDA approval, CMS determined that calcimimetics were no longer oral-only drugs and, consistent with the process established following Congress's direction, added Sensipar (an oral calcimimetic) to the bundle.  Once again, Plaintiffs are wrong that the law applies differently to drugs with a non-oral version that is developed after the oral version.  Congress has resolved the issue.

The current version of 42 C.F.R. § 413.234 ensures that any new renal dialysis drug or biological product (defined as an "injectable, intravenous, oral or other form or route of administration drug or biological . . . approved . . . on or after January 1, 2020") is added to the bundle as appropriate.  There is thus no basis for Plaintiffs' argument that the Court's interpretation of definition subparagraph (B) bundle *excludes* drugs approved after January 1, 2025.  Nor have

Plaintiffs ever claimed that section 413.234 is inconsistent with the statute.  Such a hypothetical claim would, in any event, be futile: CMS promulgated the regulation following Congress's instruction in Section 217(c) of the Protecting Access to Medicare Act.

Plaintiffs once again press the argument that subpart (B)(iv), which the agency cited as an alternative basis for including certain oral-only drugs in the bundle, does not support the government's position because it would render "wholly superfluous" subclauses (ii) and (iii). They admit that they have already made these arguments, *see* Mot. to Reconsider (ECF No. 23) at 7 (citing PI Mot. (ECF No. 14) at 26-30), but do not acknowledge Court's discussion of the clause, *see* Mem. Op. at 24 n.7.  The Court found that, even under Plaintiffs' proposed reading of the statute, "[t]his redundancy [i.e., drugs and biologicals covered by subpart (B)(iii) also being covered by subpart (B)(iv)] exists . . . regardless of whether 'other drugs and biologicals' in subpart (B)(iii) is read to include or exclude oral-only forms." *Id.*  Plaintiffs, in their effort to excise any possible redundancy across subparts (B)(iii) and (B)(iv) would have the court hold that "items and services" in subpart (B)(iv) cannot include "drugs and biologicals" at all—an atextual interpretation unsupported by the precedents they cite.  Therefore, even should this Court reconsider its holding with respect to subpart (B)(iii), Plaintiffs are wrong to argue that subpart (B)(iv) cannot sustain the agency's regulation.

In short, Plaintiffs' chart (Mot. to Reconsider (ECF No. 23) at 4) and its discussion of specific drugs (*id.* at 5-7) omits statutory and regulatory provisions that resolve their putative concerns.  The Court's construction of definitional subparagraph (B) does not require any adjustment to the bundle, and Plaintiffs' arguments to the contrary fail.

**B.    Plaintiffs Ignore the Posture of this Case and the Court's Holding About the Text and Structure of the Statute Establishing the Bundle**

Even if this Court concludes that Section 217(c) of the Protecting Access to Medicare Act and its corresponding regulations do not resolve Plaintiffs' concerns, Plaintiffs cannot prevail on their Motion to Reconsider because they misconstrue the Court's holding.  This Court held that Plaintiff's Complaint, which it construed liberally, *see* Mem. Op. at 20, as including challenges to the regulation at 42 C.F.R. § 413.171(3) and the XPHOZAH Letter-Decision, should be dismissed for lack of jurisdiction under the preclusion subparagraph (G), because neither the challenged regulation nor inclusion of XPHOZAH in the bundle violated the definitional subparagraph (B).

The Court, in other words, had no cause to engage in a comprehensive construction of the precise metes and bounds of definitional subparagraph (B).  Doing so would have been directly contrary to the preclusion subparagraph (G).  *See Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004) ("If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective, but it must determine whether the *challenged agency action* is of the sort shielded from review." (emphasis added)).  Plaintiffs moreover do not address the Court's holding that the "text and structure of definitional subparagraph (B) make clear that this provision does not purport to provide an exhaustive universe or offer a comprehensive set of 'renal dialysis services.'"  Mem. Op. (ECF No. 22) at 21.  Instead, Plaintiffs refer repeatedly in their Complaint to "the Court's construction of" definitional subparagraph (B) generally and subpart (B)(iii) specifically, as if the Court had itself described the scope of the End-Stage Renal Disease prospective payment system bundle.  Plaintiffs are wrong.  That the term "renal dialysis services" includes the items and services described in 42 C.F.R. § 413.171(3), as well as XPHOZAH itself, does not imply that it

includes nothing else.  Plaintiffs' Motion to Reconsider ignores both the jurisdictional posture and this aspect of the Court's holding.

Even if Plaintiffs were correct about the scope of the bundle, their Motion to Reconsider would lack merit for its failure to address the procedural posture and the Court's discussion of the text and structure of definitional subparagraph (B).  Nothing in the Court's Memorandum Opinion implies that it affects drugs like Korsuva, Parsabiv, and Sensipar that are already in the bundle. Nor does it affect drugs that may be approved by the FDA and added by CMS to the bundle after January 1, 2025.  The Court's Memorandum Opinion applies the language of the preclusion provision—"There shall be no administrative or judicial review . . . of . . . the identification of renal dialysis services included in the bundled payment."  42 U.S.C. § 1395rr.  Notwithstanding this clear language, Plaintiffs urge this Court to conduct a wholesale review of the drugs included in the bundle.  Consistent with Congress's instructions, this Court should decline this unwarranted invitation.

### C.    The Court's Construction of "The Application of This paragraph" Was Correct

This Court held that the "simplest interpretation of the plain language [of definitional subparagraph (B)] indicates that oral-only drugs currently separately reimbursed are included in the definition of 'renal dialysis services.'"  Mem. Op. (ECF No. 22) at 22.  Plaintiffs complain that the statutory phrase "the application of this paragraph" means the date on which the statute containing the paragraph took effect, i.e., January 1, 2011.  Mot. to Reconsider (ECF No. 23) at 9. Plaintiffs are wrong.  For one thing, if Congress had meant "before the effective date of this statute" or "before January 1, 2011," it would have said so.

Even worse for Plaintiffs, the full text of the statute does what Plaintiffs insist Congress should have done, but purportedly did not.  Subpart (B)(iii) pulls into the bundle "other drugs and

biologicals that are furnished to individuals for the treatment of end stage renal disease and for which payment was (before the application of this paragraph) made separately under this subchapter, and any oral equivalent form of such drug or biological."    42 U.S.C. § 1395rr(b)(14)(B)(iii).  Plaintiffs say that if the statute was meant to be read as the Court read it (as including drugs paid separately before January 1, 2025), the statute should have read "before the application of this paragraph to a particular drug."  Mot. to Reconsider (ECF No. 23) at 9.  But the statute applies to "drugs . . . for which payment was (before the application of this paragraph) made separately under this subchapter."  42 U.S.C. § 1395rr(b)(14)(B)(iii).  So for any given drug, the statute says to determine whether payment was made separately before applying the paragraph.  Congress did not need to add the prepositional phrase "to a particular drug" because the statute requires an inquiry into how payment (for a particular drug) was made—not, as Plaintiffs suggest, when the statute as a whole went into effect.

The key question—plain from the full text of the statute—is how Medicare paid for a particular drug before application of the statutory provision pulling it into the bundle.  And Plaintiffs cannot dispute that payment for oral-only drugs for the treatment of End-Stage Renal Disease has always, at all times prior to January 1, 2025, been "made separately under this subchapter."  Indeed, Plaintiffs do not cite any aspect of the Court's holding with respect to "the application of this subparagraph" they say merits reconsideration.  The Court held that it lacked jurisdiction because Plaintiffs' challenge to the regulation and to the XPHOZAH letter-decision were barred by the preclusion subparagraph (G), and Plaintiffs do not explain why one or both jurisdictional holdings would change even if the Court agreed with Plaintiffs' position that "before the application of this paragraph" means January 1, 2011.  Reconsideration accordingly is unwarranted.

### D.    Plaintiffs Do Not Satisfy the "High Threshold" For Motions to Reconsider

As the previous sections have shown, Plaintiffs' Motion to Reconsider lacks merit even under an ordinary standard of review.  Of course, motions under Rule 59(e) are granted only upon a showing of "extraordinary circumstances."  *Niedermeier*, 153 F. Supp. 2d at 28.  Plaintiffs do not acknowledge this standard, much less attempt to satisfy it.  Plaintiffs also bring up "new issues that could have been raised earlier." *Clevinger v. Advoc. Holdings, Inc.*, Civ. A. No. 23-1159 (JMC), 2023 WL 5220570, at *1 (D.D.C. Aug. 15, 2023) (citation omitted).  For example, the parties discussed in their original briefing the inclusion of Sensipar, Korsuva, and Parsabiv in the bundle.  Defendants discussed Parsabiv in their opposition to Plaintiffs' motion for a preliminary injunction (*see* PI Opp'n (ECF No. 16) at 24-25) and discussed Sensipar's addition to the bundle in the same document (*id.* at 37).  Plaintiffs discussed Korsuva in their reply in support of their motion for a preliminary injunction, but they did not raise the issue that Korsuva might be excluded from the bundle.  PI Reply (ECF No. 20) at 22-23.  More broadly, Defendants argued that the phrase "before the application of this paragraph" in subpart (B)(iii) allows including in the bundle oral-only drugs for which Medicare paid separately before January 1, 2025. *Id.* at 33-34.  Plaintiffs could have contested this argument in their Reply; as the Court held, they failed to do so.  *See* Mem. Op. (ECF No. 22) at 23 n.6; PI Reply (ECF No. 20) at 9-10.  Defendants now accuse the Court of "misunderst[anding] Plaintiffs' position."  Mot. to Reconsider (ECF No. 23) at 9 n.5.  Yet even in their Motion to Reconsider, they do not cite the section of their Reply relied upon by the Court for their decision not to contest Defendants' interpretation of the statutory text.  There is little doubt that the argument "could have been raised earlier," *Clevinger*, 2023 WL 5220570, at *1 (citation omitted)—namely, in Plaintiffs' reply.  They accordingly cannot raise it now.

Plaintiffs admit, albeit implicitly, that there has been no intervening change of controlling law or newly available evidence justifying reconsideration. Mot. to Reconsider (ECF No. 23) at 2 (requesting reconsideration to "correct a clear error or prevent manifest injustice"). The Supreme Court has held in a slightly different context that clear error review entails "a serious thumb on the scale" for the original decision. *See U.S. Bank, N.A. ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018). Under Rule 59(e), "clear error should conform to a very exacting standard and district courts should have a clear conviction of error before finding that a final judgment was predicated on clear error." *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 422 (D.D.C. 2005) (cleaned up). Plaintiffs do not acknowledge this standard, which in any event they cannot meet. The Court in its Memorandum Opinion applied D.C. Circuit precedent in *Amgen*, *COMSAT*, and *American Hospital Association* to conclude that it lacked jurisdiction over Plaintiffs' challenge to the identification of XPHOZAH as a renal dialysis service and to a regulation identifying certain oral-only drugs as renal dialysis services. There is no doubt Plaintiffs disagree with the Court's decision, but they cannot show clear error.

So too for "manifest injustice." Once again, Plaintiffs do not acknowledge the requirements imposed by this standard. "Manifest injustice requires at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 218 (D.D.C. 2018) (cleaned up). The "governing law" here is 42 U.S.C. § 1395rr(b)(14)(G), under which "[t]here shall be no administrative or judicial review . . . of . . . the identification of renal dialysis services included in the bundled payment." Plaintiffs cannot explain how the application of a no-review provision to their challenge to the identification of a renal dialysis service is "fundamentally unfair" in light of this statute, nor do they articulate a "clear and certain prejudice" arising therefrom.

To summarize: even putting aside the heightened standard for motions for reconsideration, Plaintiffs' arguments fail. They ignore statutes and regulations that obviate their concerns about a "patchwork quilt" of what is in the bundle. They do not address either the jurisdictional posture of the Memorandum Opinion or the Court's discussion of the structure of the statute at issue, both of which undermine their arguments for reconsideration. And they press an interpretation of the statutory text "before the application of this paragraph" that is unmoored from context and would not, in any event, entitle them to the relief they seek. Further, none of Plaintiffs' arguments demonstrates either "clear error" or "manifest injustice"—tellingly, Plaintiffs nowhere even articulate the standards' requirements. The Court should deny the Motion for Reconsideration.

## II.    This Court Already Has Rejected Plaintiffs' Proffered Construction of the Definitional Subparagraph (B) and Plaintiffs Offer No Grounds for Reconsideration

Plaintiffs are quite explicit that that already have presented to this Court their argument in favor of their preferred construction of subpart (B)(iii). *See* Mot. to Reconsider (ECF No. 23) at 11-14 (citing PI Mot. (ECF No. 14) at 2-3, 7-8, 10-11, 22-23; PI Reply (ECF No. 20) at 9-10. Moreover, Plaintiffs in this section of the brief do not cite the Court's Memorandum Opinion at all. "Rule 59(e) motions are not intended to be an opportunity to reargue facts and theories upon which a court has already ruled." *Clevinger*, 2023 WL 5220570, at *1 (internal quotation marks omitted). This Court already has ruled on Plaintiffs' arguments. *See* Mem. Op. (ECF No. 22) at 25 ("MIPPA was intended to make a change, which supports reading definitional subparagraph (B) expansively); 26 ("The legislative history also lends some support to this understanding of Congress's expansive purpose"). Plaintiffs disagree with the Court's result, but they offer nothing satisfying the requirements for a successful motion to reconsider under Rule 59(e), instead explicitly reiterating previous claims that the Court already has considered.

To the extent that Plaintiffs offer new arguments, those too fail. As discussed previously, Plaintiffs do not address the Court's holding that "[t]he text and structure of definitional subparagraph (B) make clear that this provision does not purport to provide an exhaustive universe or offer a comprehensive set of 'renal dialysis services.'" Mem. Op. (ECF No. 22) at 21 (quoting 42 U.S.C. § 1395rr(b)(14)(B)). Nor do Plaintiffs address the Court's discussion of the subsequent legislative enactments that, the Court held, "indeed suggest Congress understood MIPPA to be consistent with the inclusion of oral-only drugs." Mem. Op. (ECF No. 22) at 27. Plaintiffs cannot claim to find "clear error" in an opinion that they do not quote or cite.

## III.    Plaintiffs Cannot Obtain an Injunction Pending Appeal Before Noticing an Appeal, and They Have Not Shown Entitlement to Injunctive Relief

Plaintiffs argue that, even if this Court denies their Motion to Reconsider its order dismissing their Complaint, it nonetheless should "enjoin CMS from adding oral-only drugs, including XPHOZAH, to the ESRD PPS Bundle pending appeal." Mot. to Reconsider (ECF No. 23) at 14-15. This Court should not issue the requested injunction for two reasons. *First*, a party seeking to obtain an injunction pending appeal must first notice an appeal. *Second*, injunctive relief pending appeal would nonetheless be inappropriate because, for the reasons described in Defendant's Opposition to Plaintiffs' Motion for a Preliminary Injunction, Plaintiffs cannot satisfy the requisite "irreparable harm" standard.

Federal Rule of Civil Procedure 62(d) permits a district court to grant an injunction "[w]hile an appeal is pending from . . . a final judgment that . . . refuses . . . an injunction." Fed. R. Civ. P. 62(d). This Court's Order (ECF No. 21), which denied as moot Plaintiffs' request for a preliminary injunction, might ordinarily qualify for an injunction pending appeal, but there is no appeal pending. Therefore, under the plain text of Rule 62(d), there is no basis for an injunction pending appeal. Plaintiffs do not identify an alternate basis for one, nor do they

acknowledge the governing rule.  This alone is sufficient basis for the Court to deny Plaintiffs' requested relief.

However, Plaintiffs have announced that, if their reconsideration request is denied, they intend to file an appeal and seek an injunction pending appeal.  *See* Resp. to Mot. to Extend (ECF No. 25).  The government would oppose such an injunction.  An "injunction pending appeal is an extraordinary remedy." *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 324 (D.D.C. 2018) (internal quotation marks omitted).  And while the "standards for evaluating a motion for an injunction pending appeal are substantially the same as those for issuing a preliminary injunction," *id.* (internal quotation marks omitted), a "stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant," *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up).  The parties have already briefed a motion for a preliminary injunction in this matter, which the Court denied as moot.  As Defendants showed in their Opposition to Plaintiffs' Motion for a Preliminary Injunction, Plaintiffs cannot show the requisite irreparable harm.  Plaintiff Ardelyx has in fact contributed to its own alleged economic injury—and to alleged injuries to patients resulting from a lack of access to XPHOZAH—by stridently refusing to participate in a payment adjustment under which Medicare makes increased payments to End-Stage Renal Disease facilities when they provide certain novel treatments to patients.  Under these circumstances, the "extraordinary remedy" of an injunction or stay pending appeal would be unwarranted, if and when Plaintiffs satisfy the threshold requirement of noticing an appeal.

\*    \*    \*

## CONCLUSION

For the above reasons, and those stated in Defendants' previous briefing in this matter, this

Court should deny Plaintiffs' Motion for Reconsideration.

Dated: December 10, 2024        Respectfully submitted,
       Washington, DC

                                MATTHEW M. GRAVES, D.C. Bar #481052
                                United States Attorney

                                BRIAN P. HUDAK
                                Chief, Civil Division

                                By:        /s/ John J. Bardo
                                    _____
                                    JOHN J. BARDO, D.C. Bar #1655534
                                    Assistant United States Attorney
                                    601 D Street, NW
                                    Washington, DC 20530
                                    (202) 870-6770

                                *Attorneys for the United States of America*

OF COUNSEL:

ALEXANDER R. WHITE
Attorney
Department of Health & Human Services
330 Independence Ave., S.W.
Washington, D.C. 20201
(202) 619-0182
alexander.white@hhs.gov

SAMUEL R. BAGENSTOS
General Counsel

JANICE L. HOFFMAN
Associate General Counsel

DAVID L. HOSKINS
Deputy Associate General Counsel for
Litigation

*Department of Health & Human Services*