# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ARDELYX, INC., AMERICAN ASSOCIATION OF KIDNEY PATIENTS, NATIONAL MINORITY QUALITY FORUM**,<br><br>      **Plaintiffs,**<br>  v.<br><br>**XAVIER BECERRA, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, CHIQUITA BROOKS-LASURE, AND CENTERS FOR MEDICARE AND MEDICAID SERVICES,**<br><br>      **Defendants.** | Case No. 1:24-cv-02095-BAH |

## PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' RULE 59(e) MOTION TO ALTER OR AMEND THE JUDGMENT, OR IN THE ALTERNATIVE, FOR AN INJUNCTION PENDING APPEAL

## TABLE OF CONTENTS

Page

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................3

    I.    THE COURT'S CONSTRUCTION OF SUBPARAGRAPH (B) WOULD EXCLUDE NUMEROUS DRUGS FROM THE BUNDLE..................................3

        A.    Defendants Do Not Contest That The Court's Construction Of § 1395rr(b)(14)(B)(iii) Would Exclude All Injectable Drugs Or Biologicals Approved After 2011, Or Oral-Only Drugs Approved After 2025 ........................................................................................................4

        B.    The Procedural Posture Of The Case Does Not Render Reconsideration Unnecessary Or Undermine The Significance Of The Court's Interpretation..........................................................................10

        C.    Ardelyx Should Not Be Included In The Bundle Because The Paragraph First "Applied" In 2011 And Ardelyx Was Not Approved Until Much Later........................................................................11

    II.    PLAINTIFFS' ARGUMENTS IN FAVOR OF THEIR INTERPRETATION ARE NOT IMPROPER. ....................................................13

    III.    THIS COURT HAS THE POWER TO ENJOIN THE EFFECTIVE DATE OF THE ORAL-ONLY DRUGS REGULATION PENDING APPEAL. ......................................................................................................14

CONCLUSION.............................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*,
  No. 15-cv-03415, 2016 WL 9184999 (N.D. Cal. June 7, 2016)..............................................14

*Amgen, Inc. v. Smith*,
  357 F.3d 103 (D.C. Cir. 2004) ................................................................................................10

*Ciralsky v. CIA*,
  355 F.3d 661 (D.C. Cir. 2004) ................................................................................................12

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*,
  No. 22-cv-3350, 2024 WL 4286031 (D.D.C. Sept. 25, 2024).................................................12

*\*Financial Planning Ass'n v. S.E.C.*,
  482 F.3d 481 (D.C. Cir. 2007) ..........................................................................................2, 7, 9

*Fischer v. United States*,
  144 S. Ct. 2176 (2024) ..............................................................................................................8

*In re Grand Jury Subpoena No. 7409*,
  2018 WL 8334866 (D.D.C. Oct. 5, 2018) (Howell, J.) ...........................................................14

*\*Liljeberg v. Health Services Acquisition Corp.*,
  486 U.S. 847 (1988)...................................................................................................................8

*Loper Bright Enterprises v. Raimondo*,
  144 S. Ct. 2244 (2024).........................................................................................................4, 11

### **STATUTES**

5 U.S.C. § 8452....................................................................................................................................12

*42 U.S.C.
  § 1395rr(b)(14)(B) .......................................................................................5, 6, 7, 8, 15
  § 1395rr(b)(14)(B)(iii) ......................................................................1, 2, 4, 5, 6, 9, 10, 11
  § 1395rr(b)(14)(B)(iv) ................................................................................................2, 7, 9

*Pub. L. 113-93, § 217(c) ......................................................................................................5

### **TREATISES**

* C. Wright & A. Miller, 11 Fed. Prac. & Proc. Civ. § 2904 (3d ed.)..........................................14

## REGULATIONS

42 C.F.R. § 413.171 ..................................................................................................................12

## FEDERAL REGISTER NOTICES

74 Fed. Reg. 49,922 (Sept. 29, 2009) .........................................................................................15

75 Fed. Reg. 49,030 (Aug. 12, 2010).......................................................................................7, 9

**INTRODUCTION**

Defendants' opposition confirms why reconsideration is necessary. In challenging this Court's construction of 42 U.S.C. § 1395rr(b)(14)(B)(iii), Plaintiffs argued that the Court's reading would exclude from that category numerous drugs that CMS has treated as "renal dialysis services," as well as most new drugs for the treatment of ESRD going forward. Tellingly, *Defendants do not disagree.* Although they spill considerable ink trying to distract from that takeaway, they do not contest that Plaintiffs are right about the Court's reading of § 1395rr(b)(14)(B)(iii), nor even try to justify why Congress would have intended § 1395rr(b)(14)(B)(iii) to provide for such patchwork results.

Instead, Defendants devote most of their opposition to denying that this Court's construction of § 1395rr(b)(14)(B)(iii) *matters*. But their arguments fundamentally miss the point. For instance, Defendants rely heavily on a 2014 statutory provision confirming that Congress anticipated that new injectable and intravenous drugs would enter the ESRD PPS Bundle. But that understanding comports with *Plaintiffs*' construction of § 1395rr(b)(14)(B)(iii), not the Court's. *Compare* Pls.' Rule 59(e) Mot. ("Mot.") at 14, Dkt. No. 23 (discussing Plaintiffs' reading of subpart (B)(iii), under which such drugs are included in the bundle), *with id.* at 4 (discussing the Court's reading, under which such drugs are excluded). Far from helping Defendants, therefore, the statutory provision on which they rely bolsters the case for reconsideration. Defendants also emphasize that CMS's regulations provide for the inclusion of "new injectable or intravenous product[s]." Defs.' Opp. to Pls.' Rule 59(e) Mot. ("Opp.") at 6, Dkt. No. 26. But CMS's regulations must be rooted in a valid statutory basis. Defendants repeatedly ignore that only Plaintiffs' reading of the statute—not the Court's—construes § 1395rr(b)(14)(B)(iii) to define "renal dialysis services" to include new injectable and intravenous drugs. That reading of

§ 1395rr(b)(14)(B)(iii), however, would exclude oral-only drugs like those at issue here. Accordingly, reconsideration is warranted.

Defendants half-heartedly suggest that § 1395rr(b)(14)(B)(iv) could also "sustain the agency's regulation" of oral-only drugs. Opp. at 8. But Defendants do not deny that construing § 1395rr(b)(14)(B)(iv) to cover all drugs (and therefore all oral-only drugs) would render subparts (B)(ii) and (B)(iii) superfluous. Nor do Defendants have any answer to the Supreme Court and D.C. Circuit authorities that Plaintiffs cited, which make clear Defendants cannot read subpart (B)(iv) (or otherwise construe "renal dialysis services") to "redefine or otherwise avoid specific requirements" in subpart (B)(iii). *See* Mot. at 7-8 (quoting, *inter alia*, *Financial Planning Ass'n v. S.E.C.*, 482 F.3d 481, 489 (D.C. Cir. 2007)). As such, this Court's reading of subpart (B)(iii) *matters*. And for all the reasons Plaintiffs have explained, it cannot be reconciled with Congress's actions or intent, nor CMS's actual practice since MIPPA's enactment.

Defendants' alternative arguments are no more persuasive. Defendants attempt to downplay the significance of this Court's interpretation, casting the opinion as a jurisdictional ruling only. But as the Court explained, jurisdiction and the merits "merge" in this case. Memorandum Op. ("Op.") at 14, Dkt. No. 22. The Court held that it lacked jurisdiction only because it interpreted subparagraph (B) to authorize CMS's oral-only drug regulation. That statutory interpretation will reverberate across other cases, and as explained in Plaintiffs' motion, will prompt numerous challenges to the bundle today and in the future.

Defendants also paradoxically object both that Plaintiffs are rehashing old arguments and making new ones. But Defendants' Catch-22 fails. Plaintiffs appropriately filed this motion for reconsideration to bring to the Court's attention the presumably unintended consequences of its

construction of subpart (B)(iii)—consequences that will profoundly disrupt the ESRD PPS Bundle and reinforce why Plaintiffs' contrary reading of the statute is the better one.

Finally, Defendants insist that this Court cannot enter an injunction pending appeal because Plaintiffs have not yet filed a notice of appeal. But this Court has entered stays pending appeal in similar circumstances in the past, as have other courts. If this Court does not grant the motion for reconsideration, it should at least enjoin CMS from adding oral-only drugs to the bundle pending appeal to prevent irreparable harm in the interim to patients and Ardelyx.

## ARGUMENT

### I. THE COURT'S CONSTRUCTION OF SUBPARAGRAPH (B) WOULD EXCLUDE NUMEROUS DRUGS FROM THE BUNDLE

The Court's construction of subparagraph (B) is fundamentally at odds with CMS's actual practice and, if applied consistently, would require the removal of numerous drugs from the bundle, and prohibit the inclusion of oral-only drugs approved after January 1, 2025. Defendants try to downplay this result by casting the Court's decision as limited to a narrow jurisdictional issue regarding oral-only drugs alone, which has no bearing on the many other intravenous, injectable, and biological drugs that CMS includes in the bundle. But Defendants fundamentally misunderstand this Court's decision and Plaintiffs' argument.

Plaintiffs' argument is not that the Court's decision itself orders CMS to remove drugs from the bundle. Rather, Plaintiffs' point is that the Court's construction of subpart (B)(iii) would attribute to Congress the intent to enact a complicated, patchwork quilt of coverage that would exclude from the definition of "renal dialysis services" drugs that CMS has long included, along with future drugs that Congress surely intended to include. Because those results cannot be reconciled with Congress's intent or CMS's actual practice, the necessary implication is that the Court's statutory interpretation merits reconsideration. If the Court's interpretation stands, it will

3

wreak havoc as parties line up to challenge the inclusion of various drugs in the bundle as inconsistent with the Court's construction. Getting that construction right is thus essential.

### A. Defendants Do Not Contest That The Court's Construction Of § 1395rr(b)(14)(B)(iii) Would Exclude All Injectable Drugs Or Biologicals Approved After 2011, Or Oral-Only Drugs Approved After 2025

Defendants do not dispute that the Court's interpretation of § 1395rr(b)(14)(B)(iii) would not allow for the inclusion of injectable or intravenous drugs approved after 2011, like Korsuva and Parsabiv—much less any future intravenous, injectable, biological, or oral-only drugs. Instead, Defendants candidly admit that, under the Court's interpretation, the "key question" is "how Medicare paid for a particular drug before application of the statutory provision pulling it into the bundle." Opp. at 11. But Defendants do not contest that CMS "*never* paid separately" for Parsabiv and Korsuva before adding them to the bundle. Mot. at 5 (emphasis added); *see* Opp. at 6-7. Nor do Defendants dispute that CMS will not have paid separately for *any* new intravenous, injectable, biological, or oral-only drug that CMS adds to the bundle in the future. Defendants offer no theory for how any such drugs would qualify as renal dialysis services under § 1395rr(b)(14)(B)(iii).

Instead, Defendants simply assert that "*other regulations*" cover those drugs. Opp. at 3 (emphasis added). But Defendants cannot promulgate regulations without statutory authority, and under this Court's decision, § 1395rr(b)(14)(B)(iii) offers none. *See, e.g.*, *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261 (2024). As a result, Defendants are left to try to identify some other statutory hook that would allow CMS to include such drugs in the ESRD PPS Bundle. That effort fails.

4

**Protecting Access to Medicare Act**: Defendants principally rely on a provision of the Protecting Access to Medicare Act of 2014 ("PAMA"), which is codified as a "note" in the U.S. Code. That provision states:

> As part of the promulgation of annual rule for the Medicare end stage renal disease prospective payment system under . . . 42 U.S.C. 1395rr(b)(14)[] for calendar year 2016, the Secretary . . . shall establish a process for—
>     (1) determining when a product is no longer an oral-only drug; and
>     (2) including new injectable and intravenous products into the bundled payment under such system.

Pub. L. No. 113-93, § 217(c). Defendants entirely misconstrue the significance of this provision.

To begin with, PAMA post-dates Congress's enactment of § 1395rr(b)(14)(B) by several years. Thus, it cannot answer the question of why Congress would have purportedly enacted the complicated and counterproductive patchwork interpretation of § 1395rr(b)(14)(B)(iii) adopted by this Court.

Second, PAMA does not purport to alter the scope of "renal dialysis services" under § 1395rr(b)(14). Rather, all the provision does is direct the Secretary to "establish a process" for annually adding new drugs to the bundle *when* those drugs qualify for the ESRD PPS bundle "under . . . 42 U.S.C. § 1395rr(b)(14)." Pub. L. 113-93, § 217(c). PAMA does not, therefore, purport to expand the definition of "renal dialysis services;"[1] it simply codifies how new drugs

---

[1] While Defendants are wrong to suggest that PAMA expands the definition of "renal dialysis services," it would not "obviate" the patchwork consequences of this Court's construction of § 1395rr(b)(14)(B)(iii) in any event. Nothing in PAMA, for instance, purports to address new oral-only drugs. Thus, even under Defendants' reading, there would be no statutory basis to add any new oral-only drugs to the bundle after January 1, 2025. Interpreting PAMA to expand the definition of "renal dialysis services" would also mean that Congress implausibly intended *not* to add future injectable or oral-only drugs to the bundle when enacting MIPPA, but then changed its mind a few years later when enacting PAMA—but only with respect to injectable, as opposed to oral-only drugs. Defendants offer no theory that would explain that farfetched interpretation of Congress' intent.

5

that meet that definition shall be added to the bundle.  Accordingly, Defendants' identification of a drug as a "renal dialysis service" must be valid under § 1395rr(b)(14)(B), or not at all.

Third, and most importantly, Defendants ignore that PAMA confirms that Congress expected that "new injectable and intravenous products" would qualify as "renal dialysis services" under § 1395rr(b)(14).  As Plaintiffs have explained, however—and as Defendants do not dispute—the Court's construction of § 1395rr(b)(14)(B)(iii) would exclude such drugs from that definition.  *See* Mot. at 2-7; *see also id.* at 12 ("[I]t would have made little sense for Congress to define subpart (B)(iii) as this Court has done: namely, to encompass all injectable drugs and biological drugs for which CMS made payment separately before January 1, 2011, but no such drugs after January 1, 2011.").  PAMA reinforces, therefore, that the Court's interpretation of subpart (B)(iii) is not the best reading of MIPPA.  And if that interpretation is wrong, then the Court wrongly determined that CMS's oral-only drug rule is lawful under the statute, and thus, wrongly determined that the Court lacked jurisdiction.

In short, Defendants make no effort to harmonize this Court's construction of subpart (B)(iii) with what all parties seem to agree was Congress's goal: to include all injectable drugs and biological products for the treatment of ESRD in the ESRD PPS bundle, regardless of when they were approved.  Because this Court's construction does not accord with that goal, it is fundamentally flawed and should be reconsidered.

**Other Statutory Arguments**: Perhaps recognizing that PAMA does not do the trick, Defendants offer two alternative statutory arguments that they claim would fix the problems that otherwise follow from this Court's construction of subpart (B)(iii).  But the fundamental problems with the Court's interpretation cannot be fixed by reading subpart (B)(iv) to sweep in all ESRD drugs, or by reading subparts (B)(i)-(iv) as non-exclusive.  *See* Opp. at 8, 10-11.

**Subpart (B)(iv):** As Defendants explained in their opening motion, the consequences of this Court's construction of subpart (B)(iii) cannot be avoided by embracing the government's fallback position that *all* ESRD drugs are covered by subpart (B)(iv). *See* Mot. at 7-8. Subpart (B)(iv) covers "diagnostic laboratory tests and other items and services not described in clause (i) that are furnished to individuals for the treatment of end stage renal disease." 42 U.S.C. § 1395rr(b)(14)(B)(iv). If that clause were read to encompass *all* ESRD drugs not incorporated by clause (i), that would render clauses (ii) and (iii) wholly superfluous—an outcome that CMS itself contemporaneously appeared to recognize was impermissible. 75 Fed. Reg. 49,030, 49,039 (Aug. 12, 2010); *see also* Pls.' Mot. for Prelim. Inj. ("PI Mot.") at 26-30, Dkt. No. 14.[2] Worse still, it would negate Congress' choice—under this Court's construction of subpart (B)(iii)—to carefully define which drugs qualify for inclusion in the bundle based on whether they were previously paid for separately. *See* Opp. at 11 ("The key question—plain from the full text of the statute—is how Medicare paid for a particular drug before application of the statutory provision pulling it into the bundle.").

Defendants do not meaningfully respond to this argument. Indeed, Defendants do not discuss, or even cite, the D.C. Circuit and Supreme Court authority that Plaintiffs discussed in their motion, which makes clear that subpart (B)(iv) cannot be read to defeat what this Court found to be Congress's carefully constructed limitations in subpart (B)(iii). *See, e.g.*, *Financial Planning Ass'n v. S.E.C.*, 482 F.3d 481, 489 (D.C. Cir. 2007) (agency cannot use a catch-all provision to

---

[2] Defendants acknowledge that Plaintiffs' reading of subpart (B)(iv) would avoid any superfluity, and therefore allow each subpart of § 1395rr(b)(14)(B) to cover a discrete set of drugs, items, or services. Opp. at 8. But rather than offer any meaningful response, Defendants just dismiss Plaintiffs' reading as "atextual" and "unsupported" by their precedents. Not so. *See* Mot. At 7-8; PI Mot. at 26-30.

"redefine or otherwise avoid specific requirements in [the] existing statutory exceptions"); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 n.11 (1988) (litigant cannot interpret a rule's catch-all provision to "circumvent" clear line-drawing done by other parts); *see* Opp. at 8 (ignoring these cases).

Instead, Defendants simply accuse Plaintiffs of improperly repeating arguments about subpart (B)(iv) that this Court already rejected. *See* Opp. at 8. As an initial matter, this Court did not reject those arguments. Because the Court concluded that subpart (B)(iii) supported CMS's oral-only drug rule, the Court stated that "there [was] no need to analyze the vaguer text of 'other items and services' in (B)(iv)." Op. at 24 n.7.[3] Regardless, as Plaintiffs explained, those arguments have *greater* force when stacked against the Court's interpretation, which holds that Congress made fine distinctions between what drugs may be included in the bundle (or not) under subpart (B)(iii) based on when they were approved. There is no reason for Congress to have engaged in such complex line-drawing if it meant to eviscerate that line-drawing in the very next clause. *See Fischer v. United States*, 144 S. Ct. 2176, 2185 (2024) ("Congress would not go to the trouble of spelling out [a detailed] list in [one provision] if a neighboring [provision] swallowed it up.").

**"Includes"**: The same is true with respect to Defendants' suggestion that MIPPA should be read to afford Congress statutory authority to expand the definition of "renal dialysis services" to include categories of drugs excluded from subpart (B)(iii). Subparagraph (B) opens by stating: "For purposes of this paragraph, the term 'renal dialysis services' includes [four enumerated categories]." 42 U.S.C. § 1395rr(b)(14)(B). As Defendants note, this Court inferred that

---

[3] The Court briefly suggested that "redundancy exist[ed]" in the statute regardless of whether subpart (B)(iii) was read to include oral-only drugs. Op. 24 n.7. But no such redundancy exists if "items and services" does not include drugs at all, as Plaintiffs have consistently argued. *See* Pls.' Mot. for Prelim. Inj. ("PI Mot.") at 26-30, Dkt. No. 14; *supra* n.2.

8

subparagraph (B) "does not purport to provide an exhaustive universe or offer a comprehensive set of 'renal dialysis services.'" Opp. at 4, 9 (quoting Op. at 21). Rather, it opined that "[t]he word 'includes' indicates that the enumerated categories [i.e., the four clauses of subparagraph (B)] are not exhaustive and others are not foreclosed." Op. at 21 (quoting 42 U.S.C. § 1395rr(b)(14)(B)).

As an initial matter, CMS expressly justified its regulation defining "renal dialysis services" to encompass "oral-only drugs" solely on § 1395rr(b)(14)(B)(iii) and § 1395rr(b)(14)(B)(iv), not some freestanding power to *expand* on Congress's definition beyond the four enumerated categories. *See* 75 Fed. Reg. at 49,038-39. And several D.C. Circuit cases have rejected the view that "includes" should be read to convey such authority in situations such as these, where Congress spoke specifically to the kinds of drugs that qualify as "renal dialysis services." *See* Pls.' Reply in Supp. of Mot. for Prelim. Inj. ("Reply") at 2, Dkt. No. 20 (citing cases)

Even assuming, however, that Congress's use of "includes" could be read to afford CMS some sort of residual authority to expand on the four clauses of subparagraph (B), CMS cannot use that authority to define "renal dialysis services" to encompass drugs necessarily *excluded* from those four clauses, as that would negate the limitations that Congress imposed in those clauses. *See, e.g.*, *Financial Planning Ass'n*, 482 F.3d at 489. Again, if this Court is correct that Congress made nuanced determinations about what drugs were covered and what drugs were not covered under subpart (B)(iii) based on "how Medicare paid for a particular drug," Opp. at 11, it would be absurd to read the addition of "includes" in the introduction to subparagraph (B) as granting the agency free rein to ignore Congress's nuanced decisions. Defendants offer no explanation for why Congress would have set up such a complicated framework in subpart (B)(iii) only for that

9

framework to be rendered meaningless by the agency's unbridled authority to define other drugs as "renal dialysis services" under the introductory clause to subparagraph (B).

In summary, all agree that the Court's reading of § 1395rr(b)(14)(B)(iii) would provide for a patchwork framework of what drugs would or would not qualify under that provision as "renal dialysis services" that is fundamentally at odds with Congress's intent. Defendants attempt to elide those consequences by pointing to other statutory theories. But settled principles of statutory interpretation prevent any reading of subpart (B)(iv) or the use of "includes" to negate the lines drawn by subpart (B)(iii). And PAMA reinforces that this Court's reading of subpart (B)(iii) is at odds with the results that Congress expected. Again—Plaintiffs' construction of (B)(iii) avoids these incongruities and hard-to-understand results. Plaintiffs therefore respectfully request this Court reconsider its decision.

### B. The Procedural Posture Of The Case Does Not Render Reconsideration Unnecessary Or Undermine The Significance Of The Court's Interpretation

Defendants argue that the procedural posture of this case confines the Court's interpretation to the facts of this case, but statutory interpretation is not normally a ticket good for one ride only.

Defendants initially suggest that the Court did not construe the "metes and bounds" of subparagraph (B) at all, because the Court dismissed the case for lack of jurisdiction. Opp. at 9; *see id.* at 2-3, 9-10. But as the Court itself explained, the jurisdictional inquiry and the merits "merge" in this case because Plaintiffs' "'challenge to the agency's action raises the question of the agency's statutory authority.'" Op. at 14 (quoting *Amgen, Inc. v. Smith*, 357 F.3d 103, 113-14 (D.C. Cir. 2004)) (brackets omitted). The Court expressly rejected Defendants' argument that it need not "consult definitional subparagraph (B)" to determine whether it had jurisdiction, explaining that the jurisdictional question "turns on how *Congress*, not the *agency*, defines 'renal dialysis services' in definitional subparagraph (B)." Op. at 15-16. Thus, although the Court

dismissed the case for lack of jurisdiction, it did so precisely *because* it construed the statute to allow CMS to include oral-only drugs in the bundle under subpart (B)(iii). That construction is a merits determination that will have implications for future cases concerning this statute.

Of course, the Court's decision does not directly adjudicate whether "drugs like Korsuva, Parsabiv, and Sensipar that are already in the bundle" were properly included because those drugs are not the subject of this litigation. Opp. at 10. But the Court's construction certainly indicates that they would not have satisfied this Court's definition of "'renal dialysis services' in definitional subparagraph (B)." Op. at 15-16. And while the Court's decision obviously does not enjoin CMS from adding new oral-only drugs to the bundle after January 1, 2025, *see* Opp. at 10, faithful application of this decision would make such future challenges successful. Again, that is because this Court's interpretation of subparagraph (B) cannot be squared with the inclusion in the bundle of drugs that were never paid for separately prior to the "application of this paragraph." 42 U.S.C. § 1395rr(b)(14)(B)(iii). It is that interpretation that Plaintiffs seek to correct.

**C.    Ardelyx Should Not Be Included In The Bundle Because The Paragraph First "Applied" In 2011 And Ardelyx Was Not Approved Until Much Later.**

Even accepting the Court's two-part construction of subpart (B)(iii), Ardelyx should not be included in the bundle because it was not paid for separately by Medicare prior to January 1, 2011, when the paragraph first "applied." The Court reached a different result by reasoning that "the application of this paragraph" to oral-only drugs should be construed to mean January 1, 2025—when CMS's *regulation* adding oral-only drugs to the bundle will go into effect. But there is no dispute that subpart (B)(iii) took effect in January 2011. "[B]efore the application of this paragraph" therefore refers to the time before January 2011, when MIPPA took effect. CMS is not empowered to alter the date on which "the application of this paragraph" occurred. *See Loper Bright Enterprises*, 144 S. Ct. at 2273. Simply put, a regulation cannot delay the application of a

11

statute. At most, it can delay the application of the agency's rulemaking or enforcement authority, as CMS did here with the oral-only drug rule.

Defendants do not meaningfully respond to this argument. They contend that if Congress meant "before the effective date of this statute" or "before January 1, 2011," it would have said so. Opp. at 10. But they offer no explanation for why "before the application of this paragraph" should be interpreted to mean anything other than those phrases. And of course, that is how CMS itself contemporaneously interpreted MIPPA's language. *See* 42 C.F.R. § 413.171 ("Effective January 1, 2011, the following items and services are considered 'renal dialysis services,'[:] Other drugs and biologicals … (including drugs and biologicals with only an oral form)."). That is hardly surprising. Congress frequently uses the construction "before the application of this paragraph" to mean when the relevant statutory language (i.e., the paragraph) came into effect. *See, e.g.*, 5 U.S.C. § 8452 ("[T]he amount of the annuity under this subchapter which is considered shall be the amount of the annuity as determined before the application of this paragraph."). Defendants do not explain why that is not so here.

For all those reasons, even if the Court is correct that subpart (B)(iii) applies only to drugs that were paid for separately prior to the application of the paragraph, Ardelyx was not paid for separately prior to January 1, 2011, and thus, does not fall under subpart (B)(iii).

\* \* \*

To sum up, reconsideration is needed to "correct a clear error or prevent manifest injustice." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, No. 22-cv-3350, 2024 WL 4286031, at \*1 (D.D.C. Sept. 25, 2024) (quoting *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)). If allowed to stand, the Court's decision will invite unending challenges to the existing ESRD PPS bundle—and to CMS's future efforts to include new drugs in the bundle.

Plaintiffs recognize that the Rule 59(e) reconsideration standard is high, but it is not insurmountable. Plaintiffs did not move for reconsideration merely to repeat arguments made in their prior briefing; rather, Plaintiffs moved for reconsideration because this Court adopted a novel interpretation of subpart (B)(iii) that, if applied faithfully, is incompatible with the future addition of new oral-only, intravenous, injectable, and biological drugs to the bundle. Because that cannot be what Congress intended, Plaintiffs sought reconsideration to allow this Court to correct that interpretation. Had Plaintiffs merely wished to advance the same arguments they already made, they could have gone straight to the D.C. Circuit. Defendants' suggestion that it was somehow unreasonable for Plaintiffs to first offer this Court an opportunity to address the consequences of its interpretation misses the mark. That is exactly what reconsideration is for.[4]

## II. PLAINTIFFS' ARGUMENTS IN FAVOR OF THEIR INTERPRETATION ARE NOT IMPROPER.

As Plaintiffs explained in their motion, Plaintiffs' interpretation of subpart (B)(iii) offers the only way to attend to MIPPA's text and purpose, while avoiding the practical problems with the Court's interpretation discussed above. *See* Mot. at 11-14. Defendants contend that these arguments are improper because this Court already rejected Plaintiffs' reading of subpart (B)(iii). *See* Opp. at 14-15. But, as explained above, it did so based on an interpretation of that provision that would render the bundle unrecognizable from its current form. If this Court agrees that its novel reading of subpart (B)(iii) has that effect, it should reconsider Plaintiffs' reading of subpart (B)(iii), which resolves the practical problems posed by the Court's interpretation and best accords

---

[4] Defendants are also wrong that Plaintiffs could have raised these arguments earlier. Defendants did not—and still have not—embraced the Court's interpretation of subpart (B)(iii). Nor did Plaintiffs ever agree that subparagraph (B) should be read as not applying to oral-only drugs until January 1, 2025. *See* Mot. at 9 n.5. Defendants raised their objections to the Court's new interpretation of subpart (B)(iii) at the earliest possible time after this Court laid out that interpretation.

with MIPPA's text, structure, and purpose of promoting operational efficiencies at dialysis facilities.

### III. THIS COURT HAS THE POWER TO ENJOIN THE EFFECTIVE DATE OF THE ORAL-ONLY DRUGS REGULATION PENDING APPEAL.

Finally, even if this Court declines to grant reconsideration, it should enjoin CMS from adding oral-only drugs to the bundle pending appeal. Defendants primarily argue that this Court cannot issue an injunction pending appeal because Plaintiffs have not yet filed a notice of appeal. But as the Wright & Miller treatise explains:

> Rule 62(c) says that the district court may act in connection with injunctions "while an appeal is pending." It may be argued that this means that the court may not make an order under Rule 62(c) before the appeal has been taken, and further, that after the taking of the appeal the district court no longer has jurisdiction of the case. However, those arguments would make the rule a nullity and are unsound. When there is reason to believe that an appeal will be taken, there is no reason why the district court should not make an order preserving the status quo during the expected appeal. The order can be conditioned on an appeal being taken by a stated date.

C. Wright & A. Miller, 11 Fed. Prac. & Proc. Civ. § 2904 (3d ed.). Consistent with that explanation, this Court has previously granted a stay pending appeal "provided" that the non-prevailing party "files a notice of appeal" by a stated deadline. *See In re Grand Jury Subpoena No. 7409*, No. 18-41, 2018 WL 8334866, at *3 (D.D.C. Oct. 5, 2018) (Howell, J.); *see also Am. Beverage Ass'n v. City & Cnty. of San Francisco*, No. 15-cv-03415, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016) (granting injunction pending appeal after denying motion for preliminary injunction and before notice of appeal was filed, explaining that "[a]lthough the Court believe[d] it correctly decided the issues presented, it recognize[d] that the Ninth Circuit ha[d] not squarely decided" the issue and "there [was] at least a close question as to whether Plaintiffs ha[d] raised serious questions on the merits"). The Court can do the same here.

14

On the merits, Defendants contend that this Court should not grant injunctive relief because Plaintiffs have failed to show irreparable harm. But Plaintiffs' prior briefing amply demonstrates the significant harms that patients and Ardelyx will face if the oral-only drug regulation is permitted to go into effect. PI Mot. at 37-43; Reply at 20-24. And, at minimum, Plaintiffs have demonstrated that the statutory issues here are not free from substantial doubt. Even CMS, after all, originally acknowledged that § 1395rr(b)(14)(B) "could be interpreted [as Plaintiffs advocate] to limit the scope of the drugs and biologicals included in the bundle to only oral versions of injectables (or other non-oral routes of administration)." 74 Fed. Reg. 49,922, 49,928 (Sept. 29, 2009). In light of all that, Plaintiffs respectfully request that this Court at least grant an injunction pending appeal, which would enable the D.C. Circuit to address the statutory interpretation question at issue, on full briefing, before patients and Ardelyx are harmed by CMS's oral-only drug rule.

## CONCLUSION

For these reasons, Plaintiffs' motion to alter or amend the judgment should be granted. In the alternative, Plaintiffs respectfully request that this Court enjoin CMS from including oral-only drugs, including XPHOZAH, in the bundle pending appeal.

| | |
|---|---|
| Dated:  December 13, 2024 | Respectfully submitted, |

                                                                  */s/ Michael E. Bern*
Michael E. Bern  (DC Bar No. 994791)
Christine C. Smith (DC Bar No. 1658087)
Delia Tasky (DC Bar No. 1724285)
Alexander G. Siemers (DC Bar No. 900067465)
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email:   michael.bern@lw.com
         christine.smith@lw.com
         delia.tasky@lw.com
         alex.siemers@lw.com

Nicholas L. Schlossman
(DC Bar No. 1029362)
Latham & Watkins LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel: (737) 910-7300
Fax: (737) 910-7301
Email:   nicholas.schlossman@lw.com

*Attorneys for Plaintiffs Ardelyx, Inc., American Association of Kidney Patients*

James E. McCollum, Jr. (DC Bar. No. 398117)
Amit K. Sharma (D.C. Bar No. 503604)
The McCollum Firm, LLC
7309 Baltimore Avenue, Suite 117
College Park, MD 20740
Tel: (301) 537-0661
Fax: (301) 864-4351
Email:   jmccollum@jmlaw.net
         asharma@jmlaw.net

*Attorneys for Plaintiff National Minority Quality Forum*